**MOTLEY RICE LLC**
Mark I. Labaton (Bar No. 159555)
mlabaton@motleyrice.com
1100 Glendon Avenue, 14th Floor
Los Angeles, California  90024
Telephone: (310) 500-3488
Facsimile: (310) 824-2870

**LABATON SUCHAROW LLP**
Christopher J. Keller
ckeller@labaton.com
Eric J. Belfi
ebelfi@labaton.com
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

*[Additional counsel appear on signature page]*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| RICHARD GAMMEL, Individually and on Behalf of All Others Similarly Situated, | Case No. 8:11-cv-01404-AG-RNB |
| | <u>CLASS ACTION</u> |
| Plaintiff, | **THE INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| vs. | |
| HEWLETT-PACKARD COMPANY, LEO APOTHEKER and CATHERINE A. LESJAK, | |
| Defendants. | DATE:  December 12, 2011<br>TIME:  10:00 a.m.<br>COURTROOM:  10D<br>JUDGE:  Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND.............................................................................. 3

ARGUMENT...................................................................................................... 6

    A.    The Institutional Investor Group Should Be Appointed
           Lead Plaintiff in this Action.................................................... 6

    B.    The Institutional Investor Group is the "Most Adequate
           Plaintiff"................................................................................. 8

           1.    The Institutional Investor Group Has Satisfied
                   the PSLRA's Procedural Requirements ................................... 8

           2.    The Institutional Investor Group Has the Largest
                   Financial Interest in the Relief Sought by the
                   Class..................................................................................... 8

           3.    The Institutional Investor Group Satisfies Rule
                   23's Typicality and Adequacy Requirements........................... 9

                a.    The Claims of the Institutional Investor
                       Group Are Typical of Those of the Class ..................... 10

                b.    The Institutional Investor Group Will
                       Fairly and Adequately Protect the Interests
                       of the Class ................................................................. 11

           4.    The Members of the Institutional Investor Group
                   Are Precisely the Type of Lead Plaintiffs
                   Envisioned by the PSLRA............................................... 12

            5.    The Institutional Investor Group Has
                 Demonstrated its Commitment to Efficient
                 Prosecution of this Action .......................................... 14

    C.    The Court Should Approve the Institutional Investor
           Group's Selection of Lead Counsel ................................. 16

CONCLUSION................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999)..................................................9

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002)................................................*passim*

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .........................................13, 16

*Dolan v. Axis Capital Holdings Ltd.*,
  No. 04-cv-8564, 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ..........................17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................11

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010)................................................15

*Morrison v. Nat'l Australia Bank Ltd.*,
  130 S. Ct. 2869 (2010) ................................................2

*In re NPS Pharms., Inc. Sec. Litig.*,
  No. 2:06-cv-570, 2006 WL 6627948 (D. Utah Nov. 17, 2006)..........................18

*Perlmutter v. Intuitive Surgical, Inc.*,
  No. 10-CV-03451-LHK, 2011 WL 566814
  (N.D. Cal. Feb. 15, 2011) ................................................9, 11, 12, 13

*Richardson v. TVIA, Inc.*,
  No. C 06 06304 RMW, 2007 WL 1129344
  (N.D. Cal. Apr. 16, 2007)................................................12

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
  No. C 08-0856 MMC, 2008 WL 2220601
  (N.D. Cal. May 27, 2008)................................................12

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ................................................10

INSTITUTIONAL INVESTOR GROUP'S MPA ISO OF ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

ii

*Sofran v. LaBranche & Co., Inc.*,
    220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................ 16

*In Spectranetics Corp. Sec. Litig.*,
    No.08-cv-2048, 2009 WL 1663953 (D. Colo. June 15, 2009) ......................... 15

*In re Surebeam Corp. Sec. Litig.*,
    No. 03-cv-1721, 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ......................... 11

*Yanek v. Staar Surgical Co.*,
    No. CV 04-8007 SJO (CWx), 2004 WL 5574358
    (C.D. Cal. Dec. 15, 2004) ................................................................... 15, 17

*Zucker v. Zoran Corp.*
    No. C06-04843, 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006) ....................... 10

## DOCKETED CASES

*In re American International Group, Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y. 2004) ........................................................... 17

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-5036 (C.D. Cal. 2006) ........................................................... 17

*In re Countrywide Financial Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal. 2007) ........................................................... 17

*Eshe Fund v. Fifth Third Bancorp*,
    No. 08-cv-421, slip op. (S.D. Ohio Dec. 16, 2008) ................................... 15

*In re HealthSouth Corp. Sec. Litig.*,
    No. 03-cv-1501 (N.D. Ala. 2003) ........................................................... 18

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007) ................................. 18

*Morris v. Smith Micro Software Inc.*
    No. SACV 11-0976-AG, slip op. (C.D. Cal. Oct. 17, 2011) ..................... 10, 11

*Waldrep v. ValueClick Inc.*
    No. CV 07-5411-DDP (C.D. Cal. 2007) ................................................. 14

INSTITUTIONAL INVESTOR GROUP'S MPA ISO OF ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

iii

1

## STATUTES

2

15 U.S.C. § 78u-4(a) *et seq.* ...............................................................................*passim*

3

Fed. R. Civ. P. 23(a) *et seq.* .........................................................................9, 10, 11

4

5

## OTHER AUTHORITIES

6

H.R. Conf. Rep. No. 104-369 (1995),

7

   *reprinted in* 1995 U.S.C.A.A.N. 730..........................................................3, 16

8

S. Rep. No. 104-98 (1995),

9

   *reprinted in* 1995 U.S.C.C.A.N. 679..........................................................3, 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSTITUTIONAL INVESTOR GROUP'S MPA ISO OF ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

iv

1    The Institutional Investor Group, composed of Arkansas Teacher Retirement

2  System ("Arkansas Teacher"), Union Asset Management Holding AG ("Union"),

3  Labourers' Pension Fund of Central and Eastern Canada ("Labourers' Pension

4  Fund"), and the LIUNA National (Industrial) Pension Fund and LIUNA Staff &

5  Affiliates Pension Fund (collectively, the "LIUNA Funds"), respectfully submits

6  this Memorandum of Points and Authorities in support of its Motion, pursuant to

7  Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"),

8  15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform

9  Act of 1995 (the "PSLRA"), for the entry of an order: (1) appointing the

10 Institutional Investor Group as Lead Plaintiff for a proposed Class consisting of all

11 investors who purchased the common stock of Hewlett-Packard Company ("HP"

12 or the "Company") during the period from November 22, 2010, to August 18,

13 2011, inclusive (the "Class Period"); and (2) approving the Institutional Investor

14 Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") and Motley

15 Rice LLC ("Motley Rice") as Co-Lead Counsel on behalf of the Class.

16                              **PRELIMINARY STATEMENT**

17    Pending before the Court is a securities fraud class action complaint naming

18 HP, a worldwide provider of information technology-related hardware, software,

19 and services, Léo Apotheker ("Apotheker"), the Company's former President and

20 Chief Executive Officer ("CEO"), and Catherine A. Lesjak ("Lesjak"), the

21 Company's Chief Financial Officer ("CFO") (collectively, "Defendants").  The

22 Complaint alleges that, during the Class Period, Defendants repeatedly

23 misrepresented key elements of the Company's business plan and product

24 development schedule, artificially inflating the price of its stock.  When these

25 misrepresentations were revealed to the public, HP's share prices fell more than 20

26 percent—its largest decline in more than 20 years.

27    The Institutional Investor Group respectfully submits that, pursuant to the

28 Exchange Act, as amended by the PSLRA, it should be appointed Lead Plaintiff on

behalf of the putative Class.  Each member of the Institutional Investor Group is a large and sophisticated institutional investor with ample resources and capability to oversee complex litigation, and, as summarized in the chart below, the Institutional Investor Group collectively has a truly massive financial stake in the pending litigation, whether measured under the first-in-first-out ("FIFO") or last-in-first-out ("LIFO") loss calculation methodology.

| FUND NAME | FIFO | LIFO |
|---|---|---|
| Arkansas Teacher | $11,682,495.77 | $1,059,344.34 |
| Union | $10,414,709.14 | $11,353,957.78 |
| Labourers' Pension Fund | $1,913,325.55 | $1,832,018.31 |
| LIUNA Funds | $1,699,408.54 | $1,699,408.54 |
| **Total Losses of Institutional Investor Group** | **$26,862,032.00** | **$15,944,728.97** |

In light of these significant losses, the Institutional Investor Group has a very large financial interest in prosecuting this case—an interest believed to be greater than that of any competing movant.  Each constituent member of the Institutional Investor Group also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the proposed Class.  Like the other members of the putative Class, the members of the Institutional Investor Group seek recovery of losses incurred as a result of declines in the share price of  HP stock purchased on the New York Stock Exchange (the "NYSE") in the United States. *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010) (holding that Section 10(b) applies to securities registered on a U.S. stock exchange, irrespective of the nationality of the shareholder).

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

2

In a case of this scale, it is essential that any lead plaintiff applicant be large and sophisticated enough to play a meaningful role in managing potentially sprawling litigation.  Here, each member of the Institutional Investor Group is the type of investor whose participation in securities class actions the PSLRA was meant to foster.  *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685.  Indeed, each member of the Institutional Investor Group has experience prosecuting securities class actions on behalf of injured investors. *See* Certifications, Ex. A to the Decl. of Mark I. Labaton ("Labaton Decl."), submitted herewith.

The individual members of the Institutional Investor Group have also demonstrated their commitment to working cohesively to efficiently prosecute this Action by conferring before this motion was filed to establish a clear and well-coordinated litigation strategy for this case.  This plan, as reflected in the accompanying Joint Declaration submitted by the Institutional Investor Group, establishes protocols for joint decision-making and close oversight of proposed Co-Lead Counsel.  *See* Joint Decl. of the Institutional Investor Group (the "Joint Decl."), submitted herewith.

Finally, the Court should approve the Institutional Investor Group's selection of Labaton Sucharow and Motley Rice as Co-Lead Counsel on behalf of the proposed Class.  In a case against one of the largest manufacturers in the world, represented by a law firm employing more than a thousand attorneys, the claims of the proposed Class will be best protected by the pooled experience and resources of Labaton Sucharow and Motley Rice, which have the expertise necessary to handle litigation of this scale.

## FACTUAL BACKGROUND

HP is a leading provider of commercial and consumer personal computers ("PCs") through its Personal Services Group segment, which accounts for nearly

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG -RNB

3

20 percent of the worldwide personal computer market.  The Company is headquartered in Palo Alto, California, and its stock is listed on the NYSE under the ticker symbol "HPQ."

In April 2010, HP announced the $1.2 billion purchase of Palm, Inc. ("Palm"), manufacturer of the Palm Pilot, one of the first widely adopted personal digital devices and developer of the celebrated webOS operating system.  When HP announced its purchase of Palm, HP asserted that it would "rapidly accelerate the growth of the [webOS] platform."  Commentators and financial analysts were bullish on the Palm-HP union, noting that "with the proper hardware, webOS could easily make for an absolutely incredible . . . experience."

Following the purchase of Palm, HP and its executives made numerous public statements highlighting the Company's plan to leverage webOS as the cornerstone of its product strategy.  For example, on February 7, 2011, HP announced the first HP devices using webOS and promised that webOS would be used for numerous devices, including cellular smartphones, tablets, PCs, and printers, "taking the webOS to other connected devices, including printers, and some form factors you haven't seen before."  The Company announced developers large and small, including Facebook and Selfware Games, as well as content providers like Time Magazine and hybrid providers like DreamWorks, were moving to webOS.  The Company also announced its first webOS devices planned for release in the spring and summer of 2011, including a tablet and two smartphones.  These disclosures drove HP's stock to its Class Period high by February 16, 2011, when HP common stock closed at $48.99 per share.

HP and its executives also frequently told the market that its webOS strategy was working.  For example, on February 22, 2011, noting that "the enthusiasm and anticipation for the webOS exceeds even our most optimistic expectations," CEO Apotheker stated that webOS would be "providing a differentiated seamless experience across our tablets, smartphones, printers, PCs, and future form factors."

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

4

1    During that same February 22, 2011 call, CFO Lesjak highlighted HP's

2    development of webOS, noting that "[w]e've been working with the developer

3    community to build up the application ecosystem and are pleased with the progress

4    so far.  WebOS provides a differentiated platform that over time will redefine the

5    user experience across HP device solutions from consumer to enterprise, and from

6    smartphones to tablets to other devices."

7        Then, on March 14, 2011, Apotheker highlighted HP's strategy to "build

8    webOS into a leading connectivity platform.  As the world's No. 1 maker of PCs

9    and printers, HP has the potential to deliver 100 million webOS-enabled devices a

10    year into the marketplace, and HP plans to use that scale along with leading

11    development tools to build a robust developer community that is eager to access

12    every segment of the market and every corner of the globe. . . .  HP already has a

13    globally distributed installed base in both the consumer and enterprise, and ships

14    two printers and PCs a second, which will be webOS enabled—this huge, growing

15    installed base of devices provides enormous opportunity upon which to build HP-,

16    customer- and ecosystem-driven innovation."  Defendants made similar statements

17    during a May 17, 2011 conference call addressing its financial results for the

18    second quarter of fiscal year 2011, and again during a June 2, 2011 conference

19    call.

20        However, unbeknownst to the public, by late 2010, the Company had

21    effectively abandoned its plan to leverage the webOS system to launch an

22    integrated family of consumer products.  In an effort to bolster its share prices, the

23    Company concealed this abrupt change in strategy and continued to assure

24    investors that webOS was a crucial part of its business plan.

25        It was not until the late afternoon of August 18, 2011, that HP began to

26    disclose the truth of its changed plans in a press release warning of changes to

27    come, precipitating a sharp drop in share prices.  Then, on the morning of August

28    19, 2011, HP issued its earnings announcement for the third quarter of 2011 and

dropped a real bombshell.  The Company disclosed that it would cease

development of webOS-based products.  The "ecosystem" touted just weeks

before that would include PCs, printers, tablets, phones, and other devices was

being abandoned.  Instead, HP announced, it would consider licensing webOS or

selling it off, substantially—if not completely—throwing away the $1.2 billion it

paid for Palm less than eighteen months earlier.

The August 18, 2011 disclosures triggered a 20 percent drop in the price of

HP stock, which closed at $23.60 per share on August 19, 2011, its biggest one

day decline in more than 20 years, on volume of 128 million shares, shrinking the

Company's market capitalization by approximately $11 billion.  The Company's

misconduct and the revelations thereof have caused HP's stockholders to incur

billions of dollars in losses.

## <u>ARGUMENT</u>

**A.  The Institutional Investor Group Should
Be Appointed Lead Plaintiff in this Action**

The Institutional Investor Group meets every prerequisite for appointment as

Lead Plaintiff in this Action.  The PSLRA provides a straightforward procedure

for selecting lead plaintiff for "each private action arising under [the Exchange

Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil

Procedure."  15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting

forth procedure for selecting lead plaintiff); *In re Cavanaugh*, 306 F.3d 726, 729

(9th Cir. 2002) (same).  Section 21D(a)(3)(A)(i) of the PSLRA provides that

within 20 days after the date on which a class action is filed, the plaintiff shall

cause to be published, in a widely circulated national business-oriented publication

or wire service, a notice advising members of the purported plaintiff class:

> (I)   of the pendency of the action, the claims asserted
>
> therein, and the purported class period; and

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

6

          (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

          shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30.

Under the sequential procedure set forth by the Ninth Circuit in *Cavanaugh*, this presumption may be rebutted only by proof that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *Id.* at 741; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the Institutional Investor Group meets each of these statutory prerequisites.

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

7

### B.   The Institutional Investor Group is the "Most Adequate Plaintiff"

The Institutional Investor Group respectfully submits that it is the presumptive "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

#### 1.   The Institutional Investor Group Has Satisfied the PSLRA's Procedural Requirements

The Institutional Investor Group has filed this motion to serve as lead plaintiff in a timely manner.  On September 13, 2011, the plaintiff in the first-filed action against HP published a notice of that action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i).  *See* Labaton Decl. Ex. B.  The notice advised Class members of the existence of the lawsuit and described the claims asserted therein.  The notice also advised Class members of their right to file a motion to be appointed as lead plaintiff within 60 days of the date of the notice, i.e., on or before November 14, 2011.  The Institutional Investor Group has filed its motion within 60 days of the notice.  Therefore, this Motion is filed within the time period prescribed by the PSLRA.

#### 2.   The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

In selecting the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,  2011 WL 566814, at *2 (N.D. Cal. Feb. 15, 2011) (citing *Cavanaugh*, 306 F.3d at 529-30); *see also Garber v. Juniper Networks, Inc.*, No. C-06-04327 JW, 2006 WL 3365547, at *1-2 (N.D. Cal. Nov. 20, 2006) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

During the Class Period, members of the Institutional Investor Group purchased HP common stock on the NYSE at artificially inflated prices, and

1    suffered collective losses of $26,862,032 on a FIFO basis and $15,944,728 on a

2    LIFO basis.  *See* Labaton Decl., Exs. A, C (Certifications and Loss Analysis,

3    respectively).  The Institutional Investor Group is presently unaware of any other

4    movant with a larger financial interest in the outcome of the Action.

5    Consequently, and because it also satisfies Rule 23's typicality and adequacy

6    requirements, the Institutional Investor Group is entitled to the legal presumption

7    that it is the most adequate plaintiff.

8              **3.      The Institutional Investor Group Satisfies**
9                      **Rule 23's Typicality and Adequacy Requirements**

10           In addition to the largest financial interest requirement, the PSLRA also

11   directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule

12   23 . . . ."  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc).  With respect to the

13   qualifications of a class representative, Rule 23(a) generally requires that its claims

14   be typical of the claims of the class and that the representative will fairly and

15   adequately protect the interests of the class.  With respect to class certification,

16   Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is

17   impracticable; (2) there are questions of law or fact common to the class; (3) such

18   claims are typical of those of the class; and (4) the representative will fairly and

19   adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  However, "[a]t

20   the lead plaintiff selection stage, all that is required is a 'preliminary showing' that

21   the lead plaintiff's claims are typical and adequate."  *Aronson v. McKesson HBOC,*

22   *Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999) (quoting *Wenderhold v. Cylink*

23   *Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999)); *see also Morris v. Smith Micro*

24   *Software Inc.* ("*Smith Micro*"), SACV 11-0976 AG (ANx), slip op. at 3 (C.D. Cal.

25   Oct. 17, 2011) ("When considering a motion to appoint a lead plaintiff under the

26   PSLRA, courts focus primarily on the typicality and adequacy prongs of Rule

27   23.") (citing *Cavanaugh*, 306 F.3d at 730), attached as Labaton Decl. Ex. D.

28

As detailed below, each of the members of the Institutional Investor Group satisfies the typicality and adequacy requirements of Rule 23(a), and is qualified to be appointed as Lead Plaintiff in this Action.

### a.   The Claims of the Institutional Investor Group Are Typical of Those of the Class

The typicality requirement of Rule 23(a)(3) is satisfied when the plaintiff "(1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues." *Zucker v. Zoran Corp.*, No. C 06-04843 WHA, 2006 WL 3591156, at *3 (N.D. Cal. Dec. 11, 2006). Rule 23(a) requires only that resolution of the common questions affect all, or a substantial number of, class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000).

Here, the legal and factual bases for the claims of the Institutional Investor Group are typical of the claims of the members of the class, in that members of the Group and other class members must show:

(a)   whether Defendants' actions violated the federal securities laws;

(b)   whether Defendants caused HP to issue false and misleading statements;

(c)   whether Defendants' conduct caused the market price of HP securities to be artificially inflated during the Class Period and thereby caused the losses suffered by class members; and

(d)   whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

Because there are well-defined common questions of law and fact involved in this Action, the claims asserted by the Institutional Investor Group, whose members are not subject to any unique defenses, are typical of the claims of the members of the proposed class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998) ("Under [Rule 23's] permissive standards, representative claims are

1    'typical' if they are reasonably co-extensive with those of absent class members;

2    they need not be substantially identical.").  These shared claims, which are based

3    on the same legal theories and arise from the same events and course of conduct as

4    the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.  *In re Surebeam*

5    *Corp. Sec. Litig.*, No. 03-cv-1721, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5,

6    2004) (reciting typicality standard).

7             **b.    The Institutional Investor Group Will Fairly**

8                  **and Adequately Protect the Interests of the Class**

9             The adequacy of representation requirement of Rule 23(a)(4) is satisfied

10   when a representative party establishes that it "will fairly and adequately protect

11   the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "A lead plaintiff is adequate

12   when there are 'common interests between the proposed lead plaintiff and the

13   class, and a willingness on the part of the proposed lead plaintiff to vigorously

14   prosecute the action.'"  *Smith Micro*, SACV 11-0976 AG (ANx), slip op. at 3

15   (quoting *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004)).  "The test for

16   adequacy asks whether the class representative and his counsel 'have any conflicts

17   of interest with other class members' and whether the class representative and his

18   counsel will 'prosecute the action vigorously on behalf of the class.'"  *Perlmutter*,

19   2011 WL 566814, at *13 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th

20   Cir. 2003)).  The adequacy requirement is met if no conflicts exist between the

21   representative's interests and those of the class, and the representative's attorneys

22   are qualified, experienced and generally able to conduct the litigation.  *Richardson*

23   *v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16,

24   2007).

25           The Institutional Investor Group will fairly and adequately represent the

26   interests of the proposed Class.  The interests of the Institutional Investor Group

27   are not antagonistic to those of the Class and are clearly aligned with its members.

28   As detailed above, the claims of the Institutional Investor Group share

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

11

1  substantially similar questions of law and fact with the claims of members of the

2  proposed Class, and its claims are typical of the claims of members of the Class.

3       In addition, the Institutional Investor Group has selected counsel that is

4  highly experienced in prosecuting securities class actions such as this vigorously

5  and efficiently to serve as co-lead counsel.  *See* Labaton Decl. Exs. E-F (Firm

6  Resumes of Labaton Sucharow and Motley Rice, respectively).  The Institutional

7  Investor Group suffered substantial losses due to Defendants' alleged fraud and,

8  therefore, has a sufficient interest in the outcome of this case to ensure vigorous

9  prosecution of the Action.  Accordingly, the Institutional Investor Group satisfies

10  the adequacy requirement.

11
12
13
    **4.**       **The Members of the Institutional Investor Group Are Precisely the Type of Lead Plaintiffs Envisioned by the PSLRA**

14       In addition to satisfying the requirements of Rule 23, the members of the

15  Institutional Investor Group, as large, sophisticated institutional investors, are the

16  exactly the type of investor Congress sought to encourage to assume a more

17  prominent role in securities litigation with the enactment of the PSLRA's lead

18  plaintiff provisions.  *See In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-

19  0856 MMC, 2008 WL 2220601, at *3 (N.D. Cal. May 27, 2008) (noting that "by

20  enacting the PSLRA, Congress sought to increase the participation of institutional

21  investors in securities class actions"); *see also Perlmutter*, 2011 WL 566814, at

22  *13 ("Th[e] decision to appoint . . . an institutional investor[] also comports with

23  the PSLRA's goal to increase the likelihood that institutional investors would

24  serve as lead plaintiffs.").  Congress noted in the PSLRA Statement of Managers

25  Report that the PSLRA was formulated "to increase the likelihood that institutional

26  investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors

27  and other class members with large amounts at stake will represent the interests of

28  the plaintiff class more effectively than class members with small amounts at

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

12

1   stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting

2   S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 and

3   H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733)).

4          Each member of the Institutional Investor Group answers the PSLRA's call

5   for exceptionally qualified investors to lead this litigation.  Established in March

6   1937 to provide retirement benefits to the thousands of current and former

7   employees of the Arkansas education community, Arkansas Teacher had more

8   than $9.8 billion in assets held in trust for pension benefits as of June 30, 2010.

9   Arkansas Teacher is a combination contributory/non-contributory retirement

10  system governed by Arkansas' retirement law and provides retirement, disability,

11  and survivor benefits to employees of Arkansas public schools and educationally

12  related agencies.  Because Arkansas Teacher has served as a lead plaintiff in other

13  securities actions, its experience will benefit the Class.  *See* Arkansas Teacher

14  Certification, Labaton Decl. Ex. A.  For example, Arkansas Teacher successfully

15  prosecuted *In re Williams Securities Litigation*, 02-cv-72 (N.D. Okla.), in which

16  Arkansas Teacher was specifically selected by the court to replace lead plaintiffs

17  who had withdrawn for undisclosed reasons, resulting in a recovery of $311

18  million for the class.

19         Union, based in Frankfurt, Germany, manages assets of approximately €169

20  billion, or approximately $230.6 billion, as of September 30, 2011, and has more

21  than 2,400 employees.  Union obtained valid assignments of claims that were

22  executed prior to Union's motion for appointment as lead plaintiff.  *See* Union

23  Assignment, Labaton Decl. Ex. G.  Because Union has served as a lead plaintiff in

24  other securities actions, its experience will benefit the Class.  *See* Union

25  Certification, Labaton Decl. Ex. A.

26         Labourers' Pension Fund is a multi-employer pension plan based in the

27  Province of Ontario, Canada, that was established in February 1972.  Since its

28  inception, the Fund has grown to have approximately $2.5 billion in assets, more

1  than 37,500 members, and more than 14,600 pensioners and beneficiaries.

2  Because Labourers' Pension Fund has served as a lead plaintiff in other securities

3  actions, its experience will benefit the Class.  *See* Labourers' Pension Fund

4  Certification, Labaton Decl. Ex. A.

5      The LIUNA Funds have more than 27,000 members and 16,000 pensioners.

6  The LIUNA Funds, which are headquartered in Washington D.C., had

7  approximately $1.8 billion in assets under administration as of January 1, 2011.

8  Because the LIUNA Funds have served as a lead plaintiff in other securities

9  actions, their experience will benefit the Class.  For example, the LIUNA Funds

10  served as lead plaintiff in *Waldrep v. ValueClick, Inc.*, Case No. CV 07-5411 DDP

11  (AJWx) (C.D. Cal.) and achieved a $10 million settlement for the class.

12      The members of the Institutional Investor Group are sophisticated

13  institutional investors with sufficient resources to adequately litigate the Action

14  and supervise Class counsel.  The members of the Institutional Investor Group

15  understand the fiduciary duties of a lead plaintiff.  Moreover, because Arkansas

16  Teacher, Union, Labourers' Pension Fund, and the LIUNA Funds each have

17  served as a lead plaintiff in other securities class actions, *see* Certifications,

18  Labaton Decl. Ex. A, their experience will benefit the Class.  Thus, as

19  demonstrated herein, the Institutional Investor Group is the very personification of

20  the lead plaintiff contemplated by the PSLRA.

21      **5.    The Institutional Investor Group Has Demonstrated**

22      **Its Commitment to Efficient Prosecution of this Action**

23      As courts in this district have recognized, the aggregation of the losses of

24  the members of a group, and the appointment of a group of class members as lead

25  plaintiff, is appropriate under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see,*

26  *e.g.*, *Yanek v. Staar Surgical Co.*, No. CV 04–8007 SJO (CWx), 2004 WL

27  5574358, at *4-5 (C.D. Cal. Dec. 15, 2004).  The Institutional Investor Group has

28  demonstrated its commitment to working cohesively as a group in the prosecution

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

14

of the Action by executing the Joint Declaration.  *See*, *e.g.*, *In Spectranetics Corp. Sec. Litig.*, 08-cv-2048, 2009 WL 1663953, at *6 (D. Colo. June 15, 2009) (appointing group of investors as lead plaintiff because "the certifications and declarations submitted by the members of the [group] demonstrate that [the group members] can and will work together to oversee the litigation, and to monitor the work of counsel"); *Eshe Fund v. Fifth Third Bancorp*, No. 08-cv-421, slip op. at 9 (S.D. Ohio Dec. 16, 2008) (appointing group of investors who "presented sufficient information [in a joint declaration] to show that they are willing to work together in the best interests of the proposed class"), attached as Labaton Decl. Ex. H; *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (noting that appointment of a lead plaintiff group is appropriate "where there is evidence that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers") (internal quotations and citations omitted).  The Joint Declaration advises the Court of the Institutional Investor Group's sophistication, ability, and inclination to oversee the litigation, past and continued meetings with each other and the counsel they selected together, and the Group's procedures and protocols for decision-making.  *See* Joint Decl. ¶¶ 6-14.  As set out in the Joint Declaration, a close relationship already exists between Labourers' Pension Fund and the LIUNA Funds, which share a common Trustee on their boards.  *Id.* at ¶ 5.

The members of the Institutional Investor Group have conferred with each other and counsel in connection with the filing of their joint motion for lead plaintiff, and to discuss management of the litigation.  *See id.* ¶ 7.  Importantly, the Institutional Investor Group, not its counsel, decided to file a joint motion for appointment as lead plaintiff.  *See id.* ¶¶ 7-8.  Moreover, after filing their joint lead plaintiff motion, the members of the Institutional Investor Group established appropriate protocols for managing the litigation with each other and counsel to "ensure this litigation proceeds efficiently, effectively, and in a non-duplicative

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL CASE NO. 8:11-cv-1404-AG-RNB

15

1   manner in accordance with the best interests of the proposed Class."  *Id.* ¶ 14.

2   Thus, the Court can be assured that the Institutional Investor Group will effectively

3   monitor and direct its counsel.

4          The PSLRA is clear that once the court determines that the movant with the

5   largest financial interest is adequate and typical, it should appoint that movant as

6   lead plaintiff.  *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402

7   (S.D.N.Y. 2004) (quoting *Cavanaugh*, 306 F.3d at 732).  Having established that it

8   has the largest financial interest in the relief sought by the Class and that it satisfies

9   the requirements of Rule 23, the Court should appoint the Institutional Investor

10  Group as Lead Plaintiff in the Action.

### C.   The Court Should Approve the Institutional Investor Group's Selection of Lead Counsel

13         The PSLRA vests authority in the lead plaintiff to select and retain lead

14  counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-

15  4(a)(3)(B)(v).  "[T]he court should generally employ a deferential standard in

16  reviewing the lead plaintiff's choices."  *Cendant*, 264 F.3d at 274.  Courts should

17  not disturb the lead plaintiff's choice of counsel unless necessary to "protect the

18  interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369 at 35, *reprinted in*

19  1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a

20  lawyer in whom a litigant has confidence is an important client prerogative and we

21  will not lightly infer that Congress meant to take away this prerogative from

22  securities plaintiffs.  And, indeed, it did not.  While the appointment of counsel is

23  made subject to the approval of the court, the Reform Act clearly leaves the choice

24  of class counsel in the hands of the lead plaintiff.").  The Institutional Investor

25  Group has selected Labaton Sucharow and Motley Rice, highly-qualified counsel,

26  to serve as Co-Lead Counsel for the Class.  *See*, *e.g.*, *Dolan v. Axis Capital

27  Holdings Ltd.*, No. 04-cv-8564, 2005 WL 883008, at *5 (S.D.N.Y. Apr. 13, 2005)

28  (appointing co-lead plaintiffs and counsel because that structure would allow

1   plaintiffs and counsel to "pool financial resources, knowledge and experiences,

2   and may also reap the 'benefits of joint decision-making' when pressed with

3   difficult choices"); *Yanek*, 2004 WL 5574358, at *7 (appointing co-lead counsel

4   that the court determined were "qualified and competent").  The Institutional

5   Investor Group explained the basis for its selection in its Joint Declaration, noting

6   the ways in which a co-lead counsel structure will benefit the Class in this Action.

7   *See* Joint Decl. ¶ 13.

8        Labaton Sucharow has excelled as lead counsel in numerous important

9   actions on behalf of defrauded investors.  Labaton Sucharow is lead counsel in *In*

10  *re American International Group, Inc. Securities Litigation*, No. 04-cv-8141

11  (S.D.N.Y. 2004), in which it recently achieved settlements-in-principle totaling

12  approximately $1 billion.  In addition, Labaton Sucharow is lead counsel in *In re*

13  *Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.

14  2007), which resulted in a settlement of $624 million—the largest securities fraud

15  settlement arising from the financial crisis of 2007 to 2008.  Labaton Sucharow

16  also serves as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No.

17  06-cv-5036 (C.D. Cal. 2006), the largest accounting restatement arising from

18  options backdating.  Labaton Sucharow achieved a cash settlement of $160.5

19  million for the class—at the time, the second-largest cash settlement in an options

20  backdating case.  Labaton Sucharow also served as co-lead counsel in *In re*

21  *HealthSouth Corp. Securities Litigation*, No. 03-cv-1501 (N.D. Ala. 2003), the

22  largest securities fraud arising out of the healthcare industry, which resulted in a

23  total settlement amount of $804.5 million for the class.  Labaton Sucharow is

24  currently serving as the court-appointed lead or co-lead counsel in the securities

25  fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage

26  Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman Sachs

27  Group, Inc., among other significant investor litigations.  In *In re Monster*

28  *Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1

1  (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as

2  lead counsel, stating that "the Labaton firm is very well known to . . . courts for the

3  excellence of its representation." *See also* Labaton Sucharow Firm Resume,

4  Labaton Decl. Ex. E.

5      Motley Rice has substantial experience in the prosecution of shareholder

6  and securities class actions. As the court in *In re NPS Pharmaceuticals, Inc.*

7  *Securities Litigation*, No. 2:06-cv-570, 2006 WL 6627948, at *4 (D. Utah Nov. 17,

8  2006), noted, "[Motley Rice has] expertise and experience in the prosecution of

9  shareholder and securities class actions and, as a result, [is] adequate to represent

10  the interests of the class." *See* Motley Rice Firm Resume, Labaton Decl. Ex. F.

11  Thus, the Court may be assured that by granting this motion, the Class will receive

12  the highest caliber of legal representation.

13      Not only are Labaton Sucharow and Motley Rice each well-qualified and

14  experienced law firms in their own right, but they have a successful track record of

15  working together cooperatively as co-lead counsel.

16                              **CONCLUSION**

17      For the foregoing reasons, the Institutional Investor Group respectfully

18  requests that the Court: (1) appoint the Institutional Investor Group as Lead

19  Plaintiff; and (2) approve its selection of Labaton Sucharow and Motley Rice as

20  Co-Lead Counsel.

21

22  Dated: November 14, 2011          Respectfully submitted,

23                              By:  */s/ Mark I. Labaton*

24                                  Mark I. Labaton (Bar No. 159555)
                                     mlabaton@motleyrice.com
25                                  **MOTLEY RICE LLC**
                                     1100 Glendon Avenue, 14th Floor
26                                  Los Angeles, California 90024
27                                  Telephone: (310) 500-3488
                                     Facsimile: (310) 824-2870
28

Ann K. Ritter
aritter@motleyrice.com
James M. Hughes
jhughes@motleyrice.com
Vincent I. Parrett
vparrett@motleyrice.com
William S. Norton
bnorton@motleyrice.com
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

Christopher J. Keller
ckeller@labaton.com
Eric J. Belfi
ebelfi@labaton.com
Michael W. Stocker (Bar No. 179083)
mstocker@labaton.com
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

Stephen R. Basser
sbasser@barrack.com
Samuel M. Ward
sward@barrack.com
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, California  92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874

Daniel E. Bacine
dbacine@barrack.com
**BARRACK, RODOS & BACINE**

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

*Additional Counsel to the LIUNA Funds*

INSTITUTIONAL INVESTOR GROUP'S MPA ISO ITS MOT. FOR
APP'T AS LEAD PL. & APPROVAL OF SELECTION OF COUNSEL
CASE NO. 8:11-cv-1404-AG-RNB

20

**PROOF OF SERVICE VIA ELECTRONIC POSTING
PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA
<u>LOCAL RULES AND ECF GENERAL ORDER NO. 08-02</u>**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1100 Glendon Avenue, 14th Floor, Los Angeles, California 90024.

On November 14, 2011, I caused to be the served the following documents:

1.    Notice of Motion and Motion of the Institutional Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Counsel;

2.    Memorandum of Points and Authorities in Support thereof;

3.    Declaration of Mark I. Labaton in Support thereof;

4.    Joint Declaration of the Institutional Investor Group in Support thereof, and

5.    Certification and Notice of Interested Parties,

by posting these documents to the ECF Website of the U.S. District Court for the Central District of California, for receipt electronically by the parties on the attached Service List and by mail upon those parties so listed.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 14, 2011, at Los Angeles, California.

_s/ Kathy Montenegro_
Kathy Montenegro

# SERVICE LIST

## VIA ELECTRONIC NOTICE

- **Catherine J. Kowalewski**
  davew@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David C. Walton**
  davew@rgrdlaw.com

- **Jennifer R. Bagosy**
  jbagosy@morganlewis.com

- **Jill M. Baisinger**
  jbaisinger@morganlewis.com

- **Karen Pieslak Pohlmann**
  kpohlmann@morganlewis.com

- **Marc J. Sonnenfeld**
  msonnenfeld@morganlewis.com

- **Monique E. Cho**
  mcho@morganlewis.com

- **Robert Elliot Gooding, Jr**
  rgooding@morganlewis.com

- **Laura Danielle Smolowe**
  laura.smolowe@mto.com

## VIA U.S. PRIORITY MAIL

None