1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  CHRISTOPHER P. SEEFER (201197)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  chriss@rgrdlaw.com
        – and –
6  DARREN J. ROBBINS (168593)
   BRIAN O. O'MARA (229737)
7  655 West Broadway, Suite 1900
   San Diego, CA  92101
8  Telephone:  619/231-1058
   619/231-7423 (fax)
9  darrenr@rgrdlaw.com
   bomara@rgrdlaw.com
10
   [Proposed] Lead Counsel for Plaintiff
11
                    UNITED STATES DISTRICT COURT
12
                  CENTRAL DISTRICT OF CALIFORNIA
13
                        SOUTHERN DIVISION
14
   RICHARD GAMMEL, Individually and )  No. SACV-11-01404-AG(RNBx)
15 on Behalf of All Others Similarly   )
   Situated,                           )  CLASS ACTION
16                                      )
                          Plaintiff,    )  MEMORANDUM OF POINTS AND
17                                      )  AUTHORITIES IN SUPPORT OF
        vs.                             )  THE MOTION FOR APPOINTMENT
18                                      )  OF JOSEPH J. KOWALCZYK,
   HEWLETT-PACKARD COMPANY, et )  INDIVIDUALLY AND AS TRUSTEE
19 al.,                                 )  FOR THE JOSEPH J. KOWALCZYK
                                        )  TRUST U/A/D DECEMBER 20, 1985,
20                        Defendants.   )  AS LEAD PLAINTIFF AND
                                        )  APPROVAL OF SELECTION OF
21 _____ )  LEAD COUNSEL

22                                         DATE:     December 19, 2011
                                           TIME:     10:00 a.m.
23                                         CRTRM:    10D
                                           JUDGE:    Hon. Andrew J. Guilford
24

25

26

27

28

665712_1

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT................................................................. 1

II.   STATEMENT OF FACTS..................................................................... 1

III.  ARGUMENT ....................................................................................... 4

     A.    Kowalczyk Is the "Most Adequate Plaintiff" and Should Be
          Appointed Lead Plaintiff.................................................................... 4

          1.    The PSLRA's Lead Plaintiff Provisions.................................... 4

          2.    Kowalczyk Satisfies the PSLRA's "Lead Plaintiff"
               Requirements ........................................................................ 6

     B.    The Court Should Approve Kowalczyk's Selection of Counsel .......... 8

IV.  CONCLUSION ................................................................................... 10

665712_1

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Apple v. LJ Int'l, Inc.*,

5

   No. CV 07-6076-GAF .................................................................................................7

6

*Bassin v. Decode Genetics, Inc.*,

   230 F.R.D. 313 (S.D.N.Y. 2005) ..............................................................................5

7

*Borochoff v. Glaxosmithkline PLC*,

8

   246 F.R.D. 201 (S.D.N.Y. 2007) ..............................................................................9

9

*Cortese v. Radian Group, Inc.*,

   No. 07-3375, 2008 U.S. Dist. LEXIS 6958 (E.D. Pa. Jan. 30, 2008) .......................9

10

*Ferrari v. Gisch*,

11

   225 F.R.D. 599 (C.D. Cal. 2004) ..............................................................................8

12

*In re Cardinal Health, Inc. Sec. Litig.*,

13

   226 F.R.D. 298 (S.D. Ohio 2005) .............................................................................9

14

*In re Cavanaugh*,

   306 F.3d 726 (9th Cir. 2002) .................................................................................1, 7

15

*In re Enron Corp.*, *Sec. Litig.*,

16

   206 F.R.D. 427 (S.D. Tex. 2002) ..............................................................................9

17

*Schriver v. Impac Mortg. Holdings, Inc.*,

   No. SACV 06-31-CJC ...............................................................................................9

18

*Takeda v. Turbodyne Techs., Inc.*,

19

   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ......................................................................7

20

21

**STATUTES, RULES AND REGULATIONS**

22

15 U.S.C.

23

   §§78u-4(a)(1) ..............................................................................................................4

24

   §78u-4(a)(3)(A)(i) ......................................................................................................5

   §§78u-4(a)(3)(A) ........................................................................................................5

25

   §78u-4(a)(3)(B) ...................................................................................................1, 5, 6

   §78u-4(a)(3)(B)(iii) ....................................................................................................5

26

   §78u-4(a)(3)(B)(iii)(I) ................................................................................................6

   §78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................................8

27

   §78u-4(a)(3)(B)(v) .....................................................................................................8

28

- ii -

665712_1

1

2                                                                                      **Page**

3  **RULES**

4  Federal Rules of Civil Procedure

        Rule 23 ........................................................................................................1, 5, 6
5        Rule 23(a)...................................................................................................6, 7
        Rule 23(a)(3)....................................................................................................7
6        Rule 23(a)(4)....................................................................................................8

7

8
   **SECONDARY AUTHORITIES**
9
   7 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
10       §22.24, at 107-08 (4th ed. 2002)..........................................................................8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

665712_1

## I.   PRELIMINARY STATEMENT

This is a securities class action brought on behalf of all those who purchased or otherwise acquired the common stock of Hewlett-Packard Company ("HP" or the "Company") between November 22, 2010 and August 18, 2011 (the "Class Period").

Joseph J. Kowalczyk, individually and as trustee for the Joseph J. Kowalczyk Trust u/a/d December 20, 1985 ("Kowalczyk"), now submits this memorandum of law in support of his motion for an order: (i) appointing Kowalczyk as lead plaintiff; and (ii) approving Kowalczyk's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the class. 15 U.S.C. §78u-4(a)(3)(B).

This Motion is made on the grounds that Kowalczyk is the "most adequate plaintiff" as defined by the PSLRA.  *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).  Kowalczyk suffered losses of approximately $415,168 during the Class Period and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See id*. at 729; O'Mara Decl., Ex. C.[1]  Finally, Kowalczyk has selected counsel with the experience necessary to vigorously and efficiently prosecute this litigation on behalf of the class.  *See* O'Mara Decl., Ex. D.

## II.   STATEMENT OF FACTS

HP is a provider of products, technologies, software, solutions and services to individual consumers, small- and medium-sized businesses and large enterprises, including customers in the government, health and education sectors.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results.  As a result of

---

[1]   References to the "O'Mara Decl." are to the exhibits attached to the Declaration of Brian O. O'Mara in Support of the Motion for Appointment of Joseph J. Kowalczyk, Individually and as Trustee for the Joseph J. Kowalczyk Trust u/a/d December 20, 1985, as Lead Plaintiff and Approval of Selection of Lead Counsel, submitted concurrently herewith.

- 1 -

665712_1

1    defendants' false statements, HP's stock traded at artificially inflated prices during the

2    Class Period, reaching a high of $48.99 per share on February 16, 2011.

3         HP is the leading provider of commercial and consumer personal computers

4    ("PCs") through its Personal Services Group ("PSG") segment, commanding nearly

5    20% of the PC market worldwide.  The PSG segment is HP's largest business segment

6    from a revenue perspective, generating over 30% of HP's revenues.  In July 2010, HP

7    completed its acquisition of Palm Inc., a provider of smartphones powered by the

8    Palm webOS mobile operating system, for $1.2 billion.  Palm was failing at the time

9    of the acquisition.  HP's primary motive for the acquisition was to purchase webOS

10   and "to double down on webOS," with the Palm acquisition being portrayed as a game

11   changing event.

12        During the Class Period, defendants highlighted HP's ownership of both

13   hardware and software, which differentiated the Company from other high tech

14   companies, as a defining aspect of the Company's value proposition, enabling the

15   Company's business model to benefit from scale and leadership in its core businesses.

16   Defendants further represented that webOS, HP's crown jewel from the Palm

17   acquisition, was going to play an integral role in the Company's strategy going

18   forward, including running on HP's new TouchPad tablet PC as well as on all of the

19   Company's PCs by 2012.  Defendants further reconfirmed the strategic importance of

20   PCs to the Company.

21        On August 18, 2011, HP issued a press release announcing disappointing third

22   quarter fiscal 2011 financial results, as well as a major change of direction for the

23   Company.  The Company reported net earnings of $1.9 billion, or $0.93 diluted

24   earnings per share ("EPS), and net revenue of $31.2 billion for the third quarter ended

25   July 31, 2011.  The Company additionally issued revised guidance for fiscal year

26   2011, reducing its revenue guidance to a range of $127.2 to $127.6 billion, versus

27   previous guidance of $129 to $130 billion, and its diluted EPS guidance to a range of

28   $3.59 to $3.70 per share, versus previous guidance of at least $4.27 per share.

665712_1

1    HP further announced several major shifts in its long-term business model.

2 First, it was purchasing enterprise content management and search vendor Autonomy

3 Corporation plc for $10.3 billion, agreeing to pay a 64% premium for the company

4 over its prior closing day price.  Second, the Company announced it was exploring

5 strategic alternatives for its PSG segment, including potentially selling or spinning off

6 its profitable PC division.  Third, the Company announced that it "will discontinue

7 operations for webOS devices, specifically the TouchPad and webOS phones."

8    As news began to leak into the market, on August 18, 2011, HP's stock

9 declined $1.88 per share, to close at $29.51 per share, a one-day decline of nearly 6%

10 on volume of over 96 million shares.  The next day, HP's stock collapsed as the

11 market fully digested the news of the Company's dismal results and outlook and the

12 serious changes in its strategic vision.  On August 19, 2011, HP's stock price

13 plummeted to its lowest level in 6 years, trading as low as $22.75 per share before

14 closing at $23.60.  This represented a decline of $5.91 per share, or 20%, on volume

15 of 129 million shares.  This was the largest one-day decline in HP's history since the

16 Black Monday stock market crash of October 1987.

17    On August 19, 2011, CRN published an article entitled "HP Partners Startled by

18 TouchPad's Demise, Uncertain WebOS Future."  The article provided in part:

19       Chris Barnes, vice president of research and solutions development at

20       Gap Intelligence, a San Diego-based research firm that follows HP,

21       wonders if the HP brass really believed the WebOS talking points.

22       "WebOS was such a linchpin of the company's overarching strategy; it

23       was the virtual glue that tied together phones, PCs, tablets, printers,"

24       Barnes said. "It really makes you wonder whether HP's senior leadership

25       ever really believed its own story about developing its own self-

26       supporting ecosystem, vis-a-vis Apple.  [It] sounds more like they were

27       dishing out the Kool-Aid but secretly drinking iced tea."

28

665712_1

1    The true facts, which were known by the defendants but concealed from the

2 investing public during the Class Period, were as follows:

3    (a)    HP's business model was not working.  The Company was unable to

4 leverage its extensive portfolio and scale of products and services in a strategically

5 beneficial manner.

6    (b)    WebOS, the TouchPad and the PC business were not central to HP's

7 business model and webOS would not be integrated across the Company's entire

8 product line.

9    (c)    The TouchPad hardware was inefficient, limiting the degree of

10 effectiveness of the webOS operating system.  In fact, webOS operated twice as fast

11 when loaded onto Apple's iPad 2 tablet compared to the TouchPad.

12    (d)    Based on the foregoing, defendants lacked a reasonable basis for their

13 positive statements about HP's turnaround, revenue growth rates, market share, new

14 product introductions, diluted EPS, and the Company's ability to deliver upon its

15 long-term growth model.

16    (e)    As a result of defendants' false statements, HP stock traded at artificially

17 inflated levels during the Class Period.  However, after the above revelations seeped

18 into the market, the Company's shares were hammered by massive sales, sending

19 them down 52% from their Class Period high.

20 **III.    ARGUMENT**

21    **A.    Kowalczyk Is the "Most Adequate Plaintiff" and Should Be
        Appointed Lead Plaintiff**

22

23        **1.    The PSLRA's Lead Plaintiff Provisions**

24    The PSLRA governs the appointment of a lead plaintiff in "each private action

25 arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class

26 action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§78u-4(a)(1)

27 and (a)(3)(B)(i).  First, the plaintiff who files the initial action must publish a notice to

28 the class, within 20 days of filing the action, informing class members of their right to

- 4 -

665712_1

1    file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here,

2    the first notice regarding the pendency of this action was published on *Business Wire*,

3    a national, business-oriented newswire service, on September 13, 2011.[2]  *See* O'Mara

4    Decl., Ex. A.  Within 60 days after publication of the notice, any person who is a

5    member of the proposed class may seek to be appointed as lead plaintiff, whether or

6    not they have previously filed a complaint in the action.  15 U.S.C. §§78u-4(a)(3)(A)

7    and (B).

8         Second, the PSLRA provides that, within 90 days after publication of the

9    notice, the court shall consider any motion made by a class member and shall appoint

10   as lead plaintiff the member or members of the class that the court determines to be

11   most capable of adequately representing the interests of class members.  15 U.S.C.

12   §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides

13   that:

14        [T]he court shall adopt a presumption that the most adequate plaintiff in

15        any private action arising under this [Act] is the person or group of

16        persons that –

17             (aa)   has either filed the complaint or made a motion in response to a

18             notice . . .;

19             (bb) in the determination of the court, has the largest financial interest in

20             the relief sought by the class; and

21             (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules

22             of Civil Procedure.

23   15 U.S.C. §78u-4(a)(3)(B)(iii).

24

25   _____

26   [2]    *Business Wire* is "a national, business oriented newswire service, as required by
27   15 U.S.C. §78u-4(a)(3)(A)(i)." *Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 314
     (S.D.N.Y. 2005).

28

- 5 -

665712_1

**2.      Kowalczyk Satisfies the PSLRA's "Lead Plaintiff" Requirements**

**a.      Kowalczyk's Motion Is Timely**

Kowalczyk has timely filed its motion, within 60 days of the September 13, 2011, publication of notice, and has signed and filed a certification evidencing, among other things, his willingness to serve as a representative party on behalf of the class. *See* O'Mara., Ex. A.  Accordingly, Kowalczyk has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have his application for appointment as lead plaintiff considered by the Court.

**b.      Kowalczyk Has the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, Kowalczyk purchased 25,272 shares of HP common stock and suffered losses exceeding $415,168 in connection therewith.  *See* O'Mara Decl., Ex. C.  To Kowalczyk's knowledge, this represents the largest financial interest in the relief sought by the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**c.      Kowalczyk Satisfies Federal Rule of Civil Procedure Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

- 6 -

665712_1

1    While the PSLRA dictates that a lead plaintiff meet the requirements of Rule

2 23(a), "[a]t this stage of the litigation, 'nothing more than a preliminary showing is

3 required' with respect to typicality and adequacy." *Apple v. LJ Int'l, Inc.*, No. CV 07-

4 6076-GAF (JWJx) 2008 U.S. Dist. LEXIS 12618, at \*16 (C.D. Cal. Feb. 8, 2008)

5 (citation omitted).  Consequently, in deciding a motion to serve as lead plaintiff, the

6 court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and

7 defer examination of the remaining requirements until the lead plaintiff moves for

8 class certification. *See Cavanaugh*, 306 F.3d at 730.

9    Rule 23(a)(3) requires that the claims or defenses of the representative parties

10 are typical of those of the class.  Typicality exists where the plaintiffs' claims arise

11 from the same event or course of conduct and are based on the same legal theories as

12 the claims of all the class members. *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d

13 1129, 1136-37 (C.D. Cal. 1999).  The questions of law and fact common to the

14 members of the class which predominate over questions which may affect individual

15 class members include, among others, the following:

- Whether defendants violated the Securities Exchange Act of 1934;

- Whether defendants omitted and/or misrepresented material facts;

- Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

- Whether defendants knew or recklessly disregarded that their statements were false and misleading.

There is a well-defined community of interest in the questions of law and fact involved in this case, of which Kowalczyk is a part.  Kowalczyk, in concert with the other members of the class, alleges that defendants violated the securities laws by publicly disseminating materially false and misleading statements, as well as statements which omitted material facts, about HP during the Class Period.  As a result of defendants' fraudulent representations and omissions, Kowalczyk, as well as

- 7 -

665712_1

1    all other members of the class, purchased HP securities at artificially inflated prices

2    and were damaged thereby.  Because the claims asserted by Kowalczyk are premised

3    on the same legal and remedial theories and are based on the same types of

4    misrepresentations and omissions as the class's claims, typicality is satisfied.  *See* 7

5    Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §22.24, at 107-08 (4th

6    ed. 2002) ("The majority of class action decisions support the view that when it is

7    alleged that the same unlawful conduct was directed at or affected both the named

8    plaintiff and the class sought to be represented, the typicality requirement is met.").

9          Under Rule 23(a)(4), a representative party must also "fairly and adequately

10   protect the interests of the class."  *Id.*  A lead plaintiff is adequate when there exist

11   both "'common interests between the proposed lead plaintiffs and the class, and a

12   willingness on the part of the proposed lead plaintiff[s] to vigorously prosecute the

13   action.'"  *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004) (citation omitted)

14   (alteration in original).  Kowalczyk is an adequate representative.  As evidenced by

15   his injuries, Kowalczyk's interests are clearly aligned with the members of the class

16   who also suffered damages due to defendants' wrongdoing and there is no evidence of

17   any antagonism between Kowalczyk's interests and those of the other members of the

18   class.  Moreover, Kowalczyk's substantial losses motivate him to pursue this case

19   with vigor and he has retained competent and experienced counsel to assist in this

20   process.

21          **B.     The Court Should Approve Kowalczyk's Selection of
                         Counsel**

22

23          The PSLRA vests authority in the lead plaintiff to select and retain counsel to

     represent the class, subject to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The

24
     court should not disturb lead plaintiff's choice of counsel unless necessary to "protect

25
     the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  Kowalczyk has

26
     selected Robbins Geller as lead counsel for the class.

27

28

665712_1

1    Robbins Geller is a 180-lawyer law firm that is actively engaged in complex

2  litigation, emphasizing securities, consumer, and antitrust class actions. *See Cortese*

3  *v. Radian Group, Inc.*, No. 07-3375, 2008 U.S. Dist. LEXIS 6958, at *18 (E.D. Pa.

4  Jan. 30, 2008) ("'The firm is comprised of probably the most prominent securities

5  class action attorneys in the country.'") (citation omitted); O'Mara Decl., Ex. D.

6  Robbins Geller possesses extensive experience litigating securities class actions and

7  has successfully prosecuted numerous securities fraud class actions on behalf of

8  injured investors, including *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298,

9  308 (S.D. Ohio 2005) ("the Court finds that [Robbins Geller] will represent deftly the

10  class's interests") and *In re Enron Corp.*, *Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002).

11  Robbins Geller's securities department includes numerous trial attorneys and many

12  former federal and state prosecutors, and utilizes an extensive group of in-house

13  experts to aid in the prosecution of complex securities issues. *See* O'Mara Decl., Ex.

14  D.

15    Thus, the Court may be assured that in the event this Motion is granted, the

16  members of the class will receive the highest caliber of legal representation available

17  from Robbins Geller. *See Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31-

18  CJC (RNBx) 2006 U.S. Dist. LEXIS 40607, at *36 (C.D. Cal. May 1, 2006) ("There

19  is no real dispute among the movants regarding [Firm's] qualifications to prosecute

20  this action."); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y.

21  2007) (Robbins Geller is "a firm which is well qualified and has successfully served

22  as lead counsel or co-lead counsel in numerous complex securities class actions.").

23  Accordingly, the Court should approve Kowalczyk's selection of counsel.

24

25

26

27

28

665712_1

1 **IV.   CONCLUSION**

2      For all the foregoing reasons, Kowalczyk respectfully requests that the Court:

3 (i) appoint him as Lead Plaintiff; and (ii) approve his selection of Robbins Geller as

4 Lead Counsel.

5 DATED:  November 14, 2011         ROBBINS GELLER RUDMAN
                                               & DOWD LLP

6                                        DARREN J. ROBBINS
                                       BRIAN O. O'MARA

8                                        s/ BRIAN O. O'MARA

9                                         BRIAN O. O'MARA

10                                        655 West Broadway, Suite 1900
                                       San Diego, CA  92101

11                                        Telephone:  619/231-1058
                                       619/231-7423 (fax)

13                                        ROBBINS GELLER RUDMAN
                                       & DOWD LLP

14                                        CHRISTOPHER P. SEEFER
                                       Post Montgomery Center
                                       One Montgomery Street, Suite 1800
                                       San Francisco, CA  94104
                                       Telephone:  415/288-4545
                                       415/288-4534 (fax)

17                                        [Proposed] Lead Counsel for Plaintiff

- 10 -

665712_1

## CERTIFICATE OF SERVICE

1

2       I hereby certify that on November 14, 2011, I authorized the electronic filing of

3 the foregoing with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the attached Electronic

5 Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6 document or paper via the United States Postal Service to the non-CM/ECF

7 participants indicated on the attached Manual Notice List.

8       I certify under penalty of perjury under the laws of the United States of America

9 that the foregoing is true and correct.  Executed on November 14, 2011.

10

                          s/ BRIAN O. O'MARA

11                    BRIAN O. O'MARA

12                    ROBBINS GELLER RUDMAN
                         & DOWD LLP

13                    655 West Broadway, Suite 1900
                    San Diego, CA  92101-3301

14                    Telephone:  619/231-1058
                    619/231-7423 (fax)

15

                    E-mail:      bomara@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

665712_1

# Mailing Information for a Case 8:11-cv-01404-AG -RNB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennifer R Bagosy**
  jbagosy@morganlewis.com,krosello@morganlewis.com

- **Jill M Baisinger**
  jbaisinger@morganlewis.com

- **Monique E Cho**
  mcho@morganlewis.com

- **Robert Elliot Gooding , Jr**
  rgooding@morganlewis.com,krosello@morganlewis.com

- **Catherine J Kowalewski**
  katek@rgrdlaw.com,tcraig@rgrdlaw.com

- **Karen Pieslak Pohlmann**
  kpohlmann@morganlewis.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Laura Danielle Smolowe**
  laura.smolowe@mto.com,myrna.perez@mto.com

- **Marc J Sonnenfeld**
  msonnenfeld@morganlewis.com

- **David C Walton**
  davew@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)