MORGAN, LEWIS & BOCKIUS LLP
ROBERT E. GOODING, JR. (SBN 50617)
JENNIFER R. BAGOSY (SBN 223145)
5 Park Plaza, Suite 1750
Irvine, CA  92614
Tel:   949.399.7000
Fax:   949.399.7001
E-mail:  rgooding@morganlewis.com
           jbagosy@morganlewis.com

MARC J. SONNENFELD (Admitted *Pro Hac Vice*)
KAREN PIESLAK POHLMANN (Admitted *Pro Hac Vice*)
1701 Market Street
Philadelphia, PA  19103-2921
Tel:  215.963.5000
Fax:  215.963.5001
E-mail:  msonnenfeld@morganlewis.com
           kpohlmann@morganlewis.com

GIBSON, DUNN & CRUTCHER, LLP
DEAN J. KITCHENS (82096)
DANIEL S. FLOYD (123819)
DAVID HAN (247789)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Tel:  213.229.7000
Fax:  213.229.7520
E-mail:  dkitchens@gibsondunn.com
           dfloyd@gibsondunn.com
           dhan@gibsondunn.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| RICHARD GAMMEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY, LÉO APOTHEKER and CATHERINE A. LESJAK,<br><br>Defendants. | Case No. SACV11-01404 AG (RNBx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:       Hon. Andrew J. Guilford<br>Dept.:        Courtroom 10D<br>Hearing<br>Date:         August 6, 2012<br>Time:         10:00 a.m.<br>Complaint Filed:  Feb. 10, 2012 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S NTC OF MTN &
MTN TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on Monday, August 6, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-referenced Court, located at 411 West Fourth Street, Santa Ana, California 92701, in the courtroom of the Honorable Andrew J. Guilford, Defendant Hewlett-Packard Company ("HP" or the "Company") will and hereby does move the Court to dismiss the claims of Plaintiffs Richard A. Gammel and the Lead Plaintiffs (collectively, "Plaintiffs") contained in Plaintiffs' First Amended Class Action Complaint for Violations of the Federal Securities Laws (the "FAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

HP's Motion to Dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Joint Request for Judicial Notice in Support of Motions to Dismiss First Amended Complaint, the pleadings and papers on file herein, and any other matters that may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 5, 2012.

| | | |
|---|---|---|
| Dated: | April 11, 2012 | MORGAN, LEWIS & BOCKIUS LLP |
| | | By  /s/ Robert E. Gooding, Jr. |
| | | ROBERT E. GOODING, JR. |
| Dated: | April 11, 2012 | GIBSON, DUNN & CRUTCHER LLP |
| | | By  /s/ Dean J. Kitchens |
| | | DEAN J. KITCHENS |
| | | Attorneys for Defendant Hewlett-Packard Company |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S NTC OF MTN &
MTN TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................ 1

II. FACTUAL ALLEGATIONS ............................................................. 3

 A. Background ............................................................................... 3

 B. HP's Development Of webOS ................................................. 4

 C. HP's Decision To Discontinue webOS Devices .................... 5

 D. Plaintiffs' Claims ................................................................... 5

III. ARGUMENT ..................................................................................... 6

 A. Section 10(b) Claims Are Subject To Stringent Pleading
  Standards That Are Especially Difficult To Satisfy Given
  Plaintiffs' Implausible Theory That HP Devoted Significant
  Resources To webOS While Allegedly Not Being Committed
  To It ........................................................................................... 6

 B. Plaintiffs Do Not Adequately Plead How Any Challenged
  Statement Was Materially False Or Misleading When Made ............. 8

  1. Numerous Statements Are Immaterial, Inactionable
   Puffery ......................................................................... 8

  2. Forward-Looking Statements Are Not Actionable ................. 10

  3. The FAC Fails To Plead A False Statement ............................ 11

   a. Plaintiffs Repeat A Litany Of Reasons To Show
    Falsity Instead Of Pleading Specific Facts Showing
    What Was False About Each Statement When
    Made ................................................................... 11

   b. Statements About PCs And Printers Are Not
    Sufficiently Alleged To Be False When Made
    Because The FAC Shows HP *Was* Working On
    Them ................................................................... 12

   c. Statements Regarding Overall webOS
    Development And The TouchPad Are Not
    Sufficiently Alleged To Be False When Made ............. 15

    (1) These Claims Are Insufficient For The Same
     Reasons The PCs And Printers Claims Fail ........ 15

    (2) The Statements About The TouchPad And
     webOS Overall Are Not False Simply
     Because HP Discontinued webOS Products ........ 17

 C. The Confidential Witnesses Upon Whom Plaintiffs Base Their
  Claims Are Unreliable Because They Lack Personal
  Knowledge, Rely on Hearsay, And Provide Unsupported
  Personal Opinions And Statements Criticizing Management ............ 18

  1. The FAC Fails To Plead That The CWs Were In Positions
   That Would Give Them Personal Knowledge .......................... 19

   a. The Limited Facts Of Which CW1 Has Personal
    Knowledge Show That HP *Was* Developing
    webOS For PCs And Printers .......................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

i

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

# TABLE OF CONTENTS

Page

b.    CW2 Had No Direct Involvement With webOS Until Late June 2011, And Then Worked On Commercial Sales, Not Product Development Or Retail Sales .................................................................... 20

c.    CW3 Was Responsible For Hardware And Has No Basis For Personal Knowledge Of Development Of webOS Software, PCs, Printers, Or Marketing Data ..... 21

d.    The FAC Contains No Description Of CW4's Job Responsibilities, And Thus There Is No Foundation For CW4's Personal Knowledge .................................... 22

2.    The CWs Inappropriately Rely Upon Hearsay To Compensate For Their Lack Of Personal Knowledge ............... 22

3.    The CWs' Personal Opinions And Views Of Management Should Be Disregarded .............................................................. 23

D.    The FAC Does Not Plead A Strong Inference Of Scienter ................ 25

1.    The Standards For Pleading Scienter Are Extremely High ...... 25

2.    Plaintiffs Fail To Plead Facts Showing Forward-Looking Statements Were Made With Actual Knowledge Of Falsity ................................................................................ 26

3.    Plaintiffs Cannot Plead Scienter With Hindsight Or Based On Temporal Proximity .......................................................... 28

4.    The "Core Business" Allegations Do Not Support Scienter ................................................................................ 29

5.    General Allegations Regarding "Access" Or "Monitoring" Do Not Establish Scienter .................................. 30

6.    The Competing Inference That HP Believed In webOS And Worked To Develop It But Made A Business Decision Based On Market Forces Is More "Cogent And Compelling" Than Plaintiffs' Implausible Theory That HP Spent Billions On A Technology To Which It Was Not Committed ........................................................................ 30

IV.    CONCLUSION ................................................................................ 32

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

ii

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Berkla v. Corel Corp.*
66 F. Supp. 2d 1129 (E.D. Cal. 1999) .................................................. 14

*Brodsky v. Yahoo! Inc.*
630 F. Supp. 2d 1104 (N.D. Cal. 2009)................................................. 12

*DiLeo v. Ernst & Young*
901 F.2d 624 (7th Cir. 1990) .......................................................... 8, 18

*Dura Pharms., Inc. v. Broudo*
544 U.S. 336 (2005) ......................................................................... 7

*Frazier v. VitalWorks, Inc.*
341 F. Supp. 2d 142 (D. Conn. 2004) ............................................... 16

*In re Am. Apparel, Inc. S'holder Litig.*
No. 10-06352, 2012 WL 1131684 (C.D. Cal. Jan. 13, 2012) ..................... *passim*

*In re Apple Computer, Inc. Sec. Litig.*
243 F. Supp. 2d 1012 (N.D. Cal. 2002), *aff'd*, 127 F. App'x 296 (9th Cir.
2005) ................................................................................. *passim*

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*
355 F. Supp. 2d 1069 (N.D. Cal. 2005)............................................... 8

*In re Cutera Sec. Litig.*
610 F.3d 1103 (9th Cir. 2010) .......................................................... 26

*In re Daou Sys. Inc., Sec. Litig.*
411 F.3d 1006 (9th Cir. 2005) ................................................... 18, 23

*In re Downey Sec. Litig.*
No. CV 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .............. *passim*

*In re Impac Mortg. Holdings Inc. Sec. Litig.*
554 F. Supp. 2d 1083 (C.D. Cal. 2008)............................................... 8

*In re NVE Corp. Sec. Litig.*
551 F. Supp. 2d 871 (D. Minn. 2007), *aff'd* 527 F.3d 749 (8th Cir. 2008) ....... 27

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iii

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

# TABLE OF AUTHORITIES

**Page**

*In re Oracle Corp. Sec. Litig.*
627 F.3d 376 (9th Cir. 2010) ............................................................................. 6

*In re Siebel Sys., Inc. Sec. Litig.*
No. C 04-0983, 2005 WL 3555718 (N.D. Cal. Dec. 28, 2005), *aff'd sub nom, Wollrab v. Siebel Sys., Inc.*, 261 F. App'x 60 (9th Cir. 2007) ................ 16

*In re Sierra Wireless, Inc. Sec. Litig.*
482 F. Supp. 2d 365 (S.D.N.Y. 2007) ............................................................. 27

*In re Silicon Graphics Sec. Litig.*
183 F.3d 970 (9th Cir. 1999), *overruled in part on other grounds, S. Ferry LP # 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .............................................. 30

*In re Syntex Corp. Sec. Litig.*
95 F.3d 922 (9th Cir. 1996) ............................................................................. 11

*In re Vantive Corp. Sec. Litig.*
283 F.3d 1079 (9th Cir. 2002), *overruled in part on other grounds*, S. Ferry LP # 2 v. Killinger, 542 F.3d 776 (9th Cir. 2008) .................... 7, 12, 18, 30

*In re Wet Seal, Inc. Sec. Litig.*
518 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................. 9, 30, 31

*Kane v. Madge Networks N.V.*
No. 96-20652, 2000 WL 33208116 (N.D. Cal. May 26, 2000) ........................ 24

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
540 F.3d 1049 (9th Cir. 2008) ..................................................................... 8, 26

*Pittleman v. Impac Mortg. Holdings, Inc.*
No. SACV 07-0970, 2009 WL 648983 (C.D. Cal. Mar. 9, 2009), *aff'd sub nom. Sharenow v. Impac Mortg. Holdings, Inc.*, 385 F. App'x 714 (9th Cir. 2010) ................................................................................................ *passim*

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*
No. 10-03451, 2011 WL 3501733 (N.D. Cal. Aug. 10, 2011) ........................ 10

*Ronconi v. Larkin*
253 F.3d 423 (9th Cir. 2001) ................................................................. *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iv

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

# TABLE OF AUTHORITIES

**Page**

*Sharenow v. Impac Mortg. Holdings, Inc.*,
  385 F. App'x 714 (9th Cir. 2010)................................................................. 32

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  No. 4:00-CV-355-Y, 2002 WL 32453742 (N.D. Tex. Mar. 31, 2002),
  *aff'd in part, rev'd in part on other grounds*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) ...........................................................................*passim*

*TSC Indus., Inc. v. Northway, Inc.*
  426 U.S. 438 (1976) ................................................................................... 7

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*
  655 F.3d 1039 (9th Cir. 2011) ................................................................... 25

*Wozniak v. Align Tech. Inc.*
  No. C 09-3671, 2012 WL 368366 (N.D. Cal. Feb. 3, 2012).................. 9, 18, 24

*Yourish v. Cal. Amplifier*
  191 F.3d 983 (9th Cir. 1999) .................................................................... 17

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009)................................................................*passim*

**FEDERAL STATUTES**

15 U.S.C. § 78j(b), Securities and Exchange Act of 1934 § 10(b) ................ 6, 7, 10

15 U.S.C. § 78u-4(b)(1)(B) ...................................................................... 7

15 U.S.C. § 78u-4(b)(2).......................................................................... 25

15 U.S.C. § 78u-5(c)(1) .......................................................................... 26

**RULES**

Fed. R. Civ. P. 9(b).................................................................................. 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

v

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The FAC alleges a theory of fraud that is implausible and unsupported.  The Plaintiffs' theory is that, having spent more than $1 billion to acquire Palm, Inc. ("Palm") and its mobile operating system, webOS, in July 2010, HP devoted substantial time and resources to webOS hardware and software development, created a new business unit for webOS, developed and marketed a tablet (the TouchPad) and smartphones using webOS, and repeatedly highlighted its hopes for webOS – all while concealing that HP was *not* committed to webOS.  This theory makes no sense, and the facts alleged in support of it are woefully inadequate.

Plaintiffs seek to manufacture a claim out of the unfortunate accident of timing that HP introduced the TouchPad on July 1, 2011, only a few months after Apple unveiled the "dominant iPad 2" – a product the FAC acknowledges was "an immediate success."  TouchPad sales proved disappointing, and, on August 18, 2011, HP announced its decision to discontinue webOS-based devices based on marketing and competitive pressures in a rapidly changing environment.  Nonetheless, Plaintiffs attempt to assert a securities fraud claim based on HP's change in business strategy.  In doing so, they attack vague expressions of corporate optimism and forward-looking statements about HP's plans and intentions for webOS without any allegations that would establish that HP acted with actual knowledge that the challenged statements were false when made.  The FAC should be dismissed for at least three reasons:

*First*, the FAC fails to plead with particularity a materially false statement or omission.  Many challenged statements (such as statements that the product would be "perfect") are mere "puffery" – vague optimistic statements that are inactionable on their face because they would not have affected a reasonable investor's decision.  Other challenged statements are forward-looking statements about the Company's intentions, hopes, plans and visions for its newly acquired software technology,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

without any facts alleging that HP was not committed to webOS and was not moving forward with the plans it announced.  As to all of the challenged statements, Plaintiffs have not explained why *each* statement was false when made because they simply repeat a litany of almost identical reasons why every statement was false regardless of the content of the challenged statement or when it was made.  Given the evolving development of webOS, Plaintiffs' failure to show *when* the purported problems that form the basis of their claims arose is a significant flaw.  Nor do Plaintiffs adequately plead what was false about the challenged statements, relying on impermissibly vague facts to support their claims (*e.g.*, statements about "many" bugs).  The few particularized facts pled actually show that HP *was* developing webOS, contrary to Plaintiffs' claims.  This leaves Plaintiffs with only HP's decision to discontinue webOS devices after devoting significant time, money and promotional effort to webOS, but that decision alone does not show that prior statements were false when made.  This claim amounts to no more than impermissible pleading of fraud by hindsight.

*Second*, Plaintiffs do not adequately allege that HP was not committed to webOS and was not moving forward with the plans it announced.  Virtually all of the factual allegations that supposedly demonstrate the "truth" according to Plaintiffs are based on statements attributed to four confidential witnesses ("CWs").  For the reasons discussed below, these individuals, four former HP or Palm employees, lack personal knowledge and are unreliable sources as to many of their allegations.  Moreover, their assertions frequently consist of personal opinions (*e.g.*, the price was too high) or contentions that they would have managed webOS development differently (*e.g.*, with more time and resources, the product would have been better).  None of this amounts to securities fraud; at most, it reflects internal differences of opinion among managers, hardly uncommon in the business world.  If anything, the CWs' statements show that HP *was* developing webOS for PCs and printers and *was* working on the TouchPad.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

2

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

*Third*, the FAC fails to plead scienter.  Plaintiffs must allege particularized facts establishing a "strong inference" that HP acted with *actual knowledge* that the challenged forward-looking statements were false *when made*, but the FAC does not begin to plead particularized facts showing such knowledge.  The CWs do not establish that HP or any of the Individual Defendants knew that the webOS technology, the TouchPad, or the application of webOS to PCs or printers would fail at any given point in time.  Plaintiffs cannot rely simply on the fact that HP quickly changed course in its business strategy in the face of a rapidly changing competitive environment, or infer scienter from the Individual Defendants' employment positions or supposed access to information.  In the end, whether the allegations are viewed individually or holistically, Plaintiffs fail to plead a "cogent and compelling" inference of scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  The theory that HP intended to successfully develop and sell webOS-based products but discontinued its anticipated plans in the face of strong competition is far more compelling than Plaintiffs' implausible theory that HP spent billions to develop and promote webOS and webOS devices while supposedly not being committed to the venture.

No matter whether evaluated under the lens of materiality, falsity, or scienter, the FAC fails to plead securities fraud, and this Court should dismiss Plaintiffs' efforts to manufacture a securities fraud claim out of a business decision.

## II.  FACTUAL ALLEGATIONS[1]

### A.  Background

HP is the world's largest information technology company and the world's leading vendor of PCs as well as printers.  ¶25.  During the putative class period,

---

[1]  HP accepts as true the FAC's well-pled factual allegations but reserves its right to challenge these averments should any claims survive this motion.  *In re Am. Apparel, Inc. S'holder Litig.*, No. 10-06352, 2012 WL 1131684, at *1 (C.D. Cal. Jan. 13, 2012).  Citations to "¶ ___" refer to the numbered paragraphs of the FAC.  Throughout this Memorandum, all emphasis is added, and all citations are omitted in any quote unless noted otherwise.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

3

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

Léo Apotheker was HP's President, Chief Executive Officer ("CEO") and a member of the HP Board of Directors, ¶26; Catherine Lesjak was HP's Executive Vice President and Chief Financial Officer, ¶27; and Todd Bradley was HP's Executive Vice President, Personal Systems Group.  ¶28.

### B.   HP's Development Of webOS

HP purchased Palm in July 2010 to acquire webOS, which it felt would "'enhance HP's ability to participate more aggressively in the highly profitable, $100 billion smartphone and connected mobile device market.'"  ¶44; *see also* ¶¶5, 39, 41.  "Thus, with one strategically [sic] acquisition, HP gave itself a golden opportunity" to "enter the high-growth area of mobile computing" where it "could compete directly with Apple."  ¶8.  HP created a new global business unit ("GBU") for Palm that was responsible for webOS development, which it re-named the "webOS GBU" on July 11, 2011.  ¶73, n.14.  This GBU was part of HP's Personal System Group ("PSG") business segment, which during the putative class period was HP's largest business and included two other GBUs – desktops and laptops/notebooks.  ¶¶28, 63, 98.

There were "approximately 1,000 HP employees in the Palm GBU working on webOS smartphones and tablets."  ¶72.  HP also had personnel in other business units working on webOS.  "[T]here was a small team in Fort Collins, Colorado that was part of PSG's Desktop GBU and was exploring options regarding putting webOS on PCs."  ¶70.  "[T]here was [also] a very small group of HP employees (no more than 10) in San Diego who were brainstorming ways of putting webOS on printers."  ¶72.  HP hosted two media events focusing on webOS: the first occurred on February 9, 2011 (¶50), and the second on March 14, 2011.  ¶56.

Meanwhile, however, Apple released the "dominant iPad 2," which went on sale in the U.S. on March 11 and "was an immediate success."  ¶¶9, 79.  A few months later, on July 1, 2011, HP released the TouchPad.  ¶77.  Thus, HP engaged

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

4

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

in an intense development effort that within a year introduced HP's first tablet, which faced "dominant" competition that did not exist when development began.

## C.   HP's Decision To Discontinue webOS Devices

On August 18, 2011, HP announced that "it would 'discontinue operations for webOS devices, specifically the TouchPad and webOS phones.  The devices have not met internal milestones and financial targets.  HP will continue to explore options to optimize the value of webOS software going forward.'"  ¶182.  HP also revised its guidance downward, which allegedly "was the result of the webOS shutdown."  ¶183 (quoting Aug. 18, 2011 Tr.).

Apotheker explained that "[d]ue to market dynamics, significant competition, and a rapidly changing environment . . . continuing to execute our current device approach in this market space is no longer in the best interests of HP and HP shareholders."  Aug. 18, 2011 Tr. at 3.[2]  Apotheker and Lesjak emphasized webOS's positive aspects.  *Id.* ("many developers feel the operating system is elegantly designed and is a respected platform."); *id.* at 6 ("the software was met by strong reviews").  However, "sales of the TouchPad are not meeting our expectations."  *Id.* at 2; *see also id.* at 6 ("the TouchPad and our webOS phones have not met our financial targets and other milestones that were set").  The FAC avers that ultimately HP wrote off "more than $3 billion in webOS wind-down costs" in addition to losing its $1.2 billion investment in Palm.  ¶¶15, 203, 204.  After the announcement, HP's stock price declined, and this suit followed.  ¶186.

## D.   Plaintiffs' Claims

Plaintiffs purport to bring claims on behalf of a putative class of purchasers of HP stock from November 22, 2010 through August 18, 2011.  ¶1.  They challenge as materially false at least twenty-nine statements made by the Individual Defendants in press releases, conference calls, presentations, and interviews

---

[2]  *See* Ex. 9 to Defendants' Joint Request for Judicial Notice ("RJN") at 300.  HP may refer to the full text of documents cited in the FAC.  RJN at 1-2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

5

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

relating to the development and "future of webOS" and the TouchPad.  The bulk of
the challenged statements are vague assertions of corporate optimism or forward-
looking statements concerning HP's intentions or future plans.[3]  Plaintiffs allege
two reasons why the challenged statements were supposedly false.  First, they
contend that "no webOS-enabled PCs or printers existed, no such products were in
development at HP . . . there were no operational plans to develop such products
[and] . . . [Defendants] had no present intention or commitment to execute [the]
plans . . . to . . . extend webOS across a connected, four-branched 'ecosystem.'"
¶62.  Second, Plaintiffs plead that the TouchPad "had serious flaws, and that the
webOS operating system – and therefore HP's innovative 'ecosystem' – was not
remotely 'ready for prime time.'"  ¶77.  Plaintiffs cite to no admissions that webOS
or any of the devices were defective products.  Instead, they rely upon statements
by four former employees and two internal HP documents to plead that the
supposed "truth" was different from HP's portrayals.  ¶¶62-91, 95.

## III.   ARGUMENT

### A.   Section 10(b) Claims Are Subject To Stringent Pleading Standards That Are Especially Difficult To Satisfy Given Plaintiffs' Implausible Theory That HP Devoted Significant Resources To webOS While Allegedly Not Being Committed To It

Problems with a product do not equal securities fraud.  *In re Oracle Corp.
Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010) ("the fact that Oracle's forecast [of
sales for software products that were ultimately defective] turned out to be incorrect
does not retroactively make it a misrepresentation.").  Rather, a claim for a
violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §
78j(b), requires plaintiffs to allege, *inter alia*, (1) a material misrepresentation or

---

[3]  Plaintiffs frequently cite lengthy quotes that span more than a page.  *See, e.g.*,
¶117.  HP understands that Plaintiffs are only challenging the highlighted language
in the quotes.  *E.g.*, ¶¶117, 139.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

6

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

omission; and (2) scienter, *i.e.*, a "wrongful state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Materiality means a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

Section 10(b) claims are subject to Federal Rule of Civil Procedure 9(b)'s requirement to plead fraud with particularity and the PSLRA's more "[e]xacting pleading requirements." *Tellabs*, 551 U.S. at 313; *see also Pittleman v. Impac Mortg. Holdings, Inc.*, No. SACV 07-0970, 2009 WL 648983, at *2 (C.D. Cal. Mar. 9, 2009) (Guilford, J.) (noting PSLRA's intent to "'filter at the earliest stage . . . lawsuits that have no factual basis'" and "'to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight'"), *aff'd sub nom. Sharenow v. Impac Mortg. Holdings, Inc.*, 385 F. App'x 714 (9th Cir. 2010). Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); *Pittleman*, 2009 WL 648983, at *2 ("'complaint must specify . . . times, dates, places and benefits received and other details of the fraudulent activity'"). When a complaint, like this one, spans months of statements – particularly forward-looking statements about a company's intentions – plaintiff must include particularized facts showing a statement was false *when made*. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) (criticizing plaintiffs' failure to allege facts showing why statement would have been misleading at each of the several points during the putative class period when it was made), *overruled in part on other grounds*, *S. Ferry LP # 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).

It is especially difficult to state a claim where, as here, Plaintiffs advocate an implausible theory pursuant to which HP allegedly spent more than $1 billion and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

7

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

had hundreds of employees working to develop software to which it was supposedly not "committed."  "People sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud. One who believes that another has behaved irrationally has to make a strong case."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).  Plaintiffs do not come even close here.

**B.     Plaintiffs Do Not Adequately Plead How Any Challenged Statement Was Materially False Or Misleading When Made**

"The PSLRA has exacting requirements for pleading 'falsity'. . . .  A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  The FAC fails to comply with this high standard, a flaw that is particularly fatal given the implausibility of its underlying theory.  In light of the irrational conduct Plaintiffs attribute to Defendants, the factual support showing that HP was acting contrary to its representations to the market should be especially strong.  It is not.

**1.     Numerous Statements Are Immaterial, Inactionable Puffery**

Many challenged statements are immaterial as a matter of law.  "[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable. . . ."  *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008).  "[T]he defining question is 'whether the statement is so "exaggerated" or "vague" that no reasonable investor would rely on it when considering the total mix of available information.'"  *Id.*  Statements that are "'not capable of objective verification'" are inactionable.  *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087-88 (N.D. Cal. 2005).

HP made many positive statements about webOS during the putative class period, suggesting a genuine belief in the product rather than an intent to mislead.  Numerous challenged statements, including the following, are mere puffery:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

8

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

- We have a "unique position in the market to expand" and "fantastic opportunities" to grow our "leadership position."  ¶¶111, 112; *see also* ¶¶57, 114, 117, 139, 143, 152 (remarks about webOS's "future" and "opportunity").

- Describing an anticipated "ecosystem" of products that would create an "enormous opportunity."  ¶114; *see also* ¶¶55, 117, 130, 139, 147, 152, 153, 157, 168, 177 (comments about the potential "ecosystem" and "connected devices"/"connectivity").

- "I am very pleased with our February 9 announcement"; we look "forward to providing a differentiated seamless experience"; webOS, "over time, will redefine the user experience across HP's device solutions." ¶¶128, 132; *see also* ¶¶130, 139, 153, 177 (comments about the "differentiated" webOS experience).

- "So web OS is an unbelievably attractive and stunning technology. . . . But going forward we don't intend to play in the junior league."  ¶143; *see also* ¶¶55, 58, 117, 128, 139, 152, 157 (comments describing webOS's attractiveness as an operating system).

- "[W]e will not release a product that isn't perfect."  ¶158.

- "WebOS is ready for prime time"; "we are a disruptor in a number of markets" and webOS will "disrupt the market;" ¶¶161, 164-65; *see also* ¶¶49, 114, 161, 163 (comments touting webOS).

- "We're very happy with the ramp, we'll continue to invest very aggressively . . . so they should be concerned about what we'll do competitively."  ¶178; *see also* ¶¶173-74 (comments about the launch and future of webOS).

These are precisely the types of statements that courts have found inactionable.  *See, e.g.*, *Wozniak v. Align Tech., Inc.*, No. C 09-3671, 2012 WL 368366, **4-5 (N.D. Cal. Feb. 3, 2012) (dismissing claims based on statements that company was "very pleased with our progress" and "confident"); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1167-69 (C.D. Cal. 2007) (dismissing claims based on phrases such as "significant improvement," "personally very excited," and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

9

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

"building on [our] progress"; noting rejection of claims based on phrases such as "strong," "robust," "well positioned," and "solid").  Also, no reasonable investor could possibly have relied upon the hyperbolic comment that the TouchPad would be "perfect."  In *Apple*, the court characterized as puffery "most of the many statements" challenged, which included language that the Apple Cube was "drop dead," "incredibly functional," the "whole thing is perfect," and "'[t]here will be a million copies of this out there.'"  *In re Apple Computer, Inc. Sec. Litig*., 243 F. Supp. 2d 1012, 1018 (N.D. Cal. 2002), *aff'd*, 127 F. App'x 296 (9th Cir. 2005).

Plaintiffs' efforts to base claims on these comments are especially weak given that the majority, if not all, are "aspirational" statements regarding the future. *Am. Apparel,* 2012 WL 1131684, at *20.  The *American Apparel* court, citing numerous cases, noted that "[t]he repeated use of words like 'pursuing,' 'looking to build,' 'going to be' and 'committed to' indicate that the company was articulating goals it was trying to meet, not making factual statements about current status."  *Id.* Accordingly, claims based on statements about HP's "commitment" to webOS (¶117; *see also* ¶¶136, 139, 171, 178) should be dismissed as inactionable "'feel good monikers' that hope springs eternal."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 WL 3501733, at *11 (N.D. Cal. Aug. 10, 2011).

### 2.    Forward-Looking Statements Are Not Actionable

Plaintiffs also challenge a litany of forward-looking statements in an attempt to state a Section 10(b) claim, including the following:

- HP's positive description of "the future of webOS," including HP's "fantastic opportunity" to "grow our leadership position [with webOS]."  ¶¶111, 112, 114;

- HP's stated "commitment to extend the WebOS footprint even further" and description of its "plans to bring WebOS to . . . the personal computer."  ¶117; *see also* ¶¶128, 130-31, 143, 153, 161-63, 171, 177-78 (statements about HP's intent and commitment to extend webOS to other products);

- HP's "getting ready to roll out webOS on a massive scale."  ¶136; *see also*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

10

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

¶¶139, 143, 147, 153, 157, 161-63, 168, 173-74 (comments about HP's intent to bring webOS to millions of HP products and create one ecosystem); and

• HP's expectation that the TouchPad "should be a huge market" for them. ¶177.

Such aspirational statements referring to HP's plans and future hoped-for performance fall squarely within the PSLRA's safe harbor for forward-looking statements concerning management objectives. As discussed below, such statements are not actionable if Plaintiffs fail to supply particularized facts to show that Defendants made the forward-looking statements with *actual knowledge* that they were false or misleading *when made. See infra* §III.D.2.

### 3. The FAC Fails To Plead A False Statement

The specific facts necessary to show falsity are woefully lacking here.

#### a. Plaintiffs Repeat A Litany Of Reasons To Show Falsity Instead Of Pleading Specific Facts Showing What Was False About Each Statement When Made

The FAC fails to explain why *each* challenged statement was false *when it was made.* It quotes news articles, press releases, analyst transcripts, and other sources,[4] but lacks particularity showing specifically what was wrong with each statement. Instead, the FAC merely repeats one of three generic reasons for falsity.

The first asserts that statements were false because "as alleged in greater detail in Part IV.D. above, Defendants had no such webOS-enabled PCs or printers in development, no operational plans to develop such products, and no present intention or commitment to build an ecosystem of multiple connected webOS devices." *See* ¶¶115, 132, 133, 137, 140, 145, 148, 154, 159; *see also* ¶118. The second reason contends that statements were false because "as alleged in greater detail in Part IV.E. above, development of the TouchPad was seriously hampered

---

[4] Statements by analysts and in media reports (*e.g.*, ¶¶51-53, 59, 93, 100, 102, 115, 135, 149-51, 156) are not actionable because no Defendant put any imprimatur on them. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

11

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

by missed milestones, delays and software problems." *See* ¶¶120, 132, 134, 138, 142, 145, 148. The third reason provides no basis for falsity, but merely claims the challenged statement is false for the "same reasons." *See* ¶¶119, 120, 121.

Such generic reasons do not suffice under the PSLRA. *Vantive*, 283 F.3d at 1086. In *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D. Cal. 2009), the court held that where the allegations of falsity referred back to the same paragraph (which itself repeated and referred back to other allegations of CW statements), "[t]his repetition necessarily means that Plaintiffs' allegations of falsity are not particular to the public statements Plaintiffs identify . . . this technique does not satisfy the requirements under the PSLRA." *See also Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, No. 4:00-CV-355-Y, 2002 WL 32453742, at *8 (N.D. Tex. Mar. 31, 2002) (rejecting allegations where "the list [of reasons the statements were allegedly false] is cut and pasted almost verbatim and always begins the same"), *aff'd in part, rev'd in part on other grounds*, 365 F.3d 353 (5th Cir. 2004).

> b. **Statements About PCs And Printers Are Not Sufficiently Alleged To Be False When Made Because The FAC Shows HP *Was* Working On Them**

Plaintiffs challenge statements relating to plans to put webOS on PCs and printers[5] as supposedly false because "Defendants had no such webOS-enabled PCs or printers in development, no operational plans to develop such products, and no present intention or commitment to build an ecosystem of multiple connected webOS devices." *See, e.g.*, ¶132. These claims fail for several reasons.

First, the FAC itself pleads that HP *did* have teams developing webOS for PCs and printers. ¶¶70-72; *see also infra* §III.C.1.a. CW1's admission that HP *was* working on webOS for PCs and printers seriously undermines this claim.

Second, the single internal "roadmap" document Plaintiffs refer to on this

---

[5] *See, e.g.*, ¶¶117, 128, 131, 136, 138, 139, 143, 146, 152, 157, 161, 162, 177.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

12

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

point (¶68) does not show that PCs and printers were not being developed. Plaintiffs contend that because webOS for PCs and printers are not listed in the roadmap, no such projects existed, but the document shows no such thing.  The document is incomplete – CW1 describes it as an "abstraction" and notes that some smartphones were not referenced.  ¶¶68-69.  CW1 states that it  "dates from the late spring," *id.*, which could be any month from April to June; it cannot show any statement before its preparation was false.  CW1 also fails to identify which GBU prepared it; CW1's purported authentication of the document suggests that it was from the Palm GBU, which had no responsibilities for products other than the ones listed on the document (smartphones and tablets).  ¶72.  The omission of PCs and printers means nothing unless this document was prepared by the GBU tasked with their development.  Finally, and perhaps most significantly, the document specifically notes, "More to Come."  ¶68.  Thus, it suggests, rather than refutes, that HP intended to develop webOS for other products beyond those listed.  For all these reasons, the absence of a reference to webOS PCs and printers in the roadmap does not demonstrate that such a project did not exist, either in another GBU or even within the Palm GBU.  *Ronconi v. Larkin*, 253 F.3d 423, 432-33 (9th Cir. 2001) (rejecting allegation that statement was misleading when pleaded facts were not necessarily inconsistent with challenged statement).

Third, Plaintiffs' claims about PCs and printers are based entirely on CW1's and CW2's generalized assertions that there was no such development.  Those assertions fail because, in addition to the witnesses' unreliability, as discussed below, their testimony is impermissibly vague.  *In re Downey Sec. Litig*., No. CV 08-3261, 2009 WL 2767670, at *3 (C.D. Cal. Aug. 21, 2009) ("the statements of a confidential witness are disregarded if lacking in specificity"); *see also Pittleman*, 2009 WL 648983, at *8 (rejecting CW averments that defendant "'had so many bad loans . . . that the division was closed,'" and "'the majority of loans that were being recommended for rejection were regularly approved for sale to investors'" because

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

13

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

the CW "[did] not say which loans were recommended for rejection, why they were recommended for rejection, or who approved them for sale"). The CWs here omit critical facts. CW1's claim that "many project managers" were "surprised and even horrified" upon hearing Bradley's and Apotheker's statements regarding webOS PCs and printers (¶64), as well as CW2's claim that Bradley's CNBC appearance "elicited" a "strong reaction" in his group (¶75), fail to state *what* was said, *who* said it, and *when*. *See also* ¶75 ("there was a stir in the marketplace" (CW2)). CW1 and CW2 also do not provide facts showing what was happening at various points during the putative class period, which begins in November 2010. For example, CW1 refers to "pronouncements" "in and after February 2011." ¶64. *See also* ¶66 (CW1 looked at script of February 9, 2011 webOS event and formed an opinion about it at an unstated time before or after the event); ¶70 (discussing PC group's work without any time frame (CW1)); ¶72 (discussing printer group's work without providing dates (CW1)); ¶75 (claiming there were "many" calls from commercial customers at undefined times regarding webOS for PCs (CW2)).

Even the two challenged statements that include at least vague time frames are not adequately alleged to be false. In June 2011, Apotheker stated that webOS would be available on PCs during some month in *2012*. ¶162.[6] This is consistent with CW1's assertion that it typically takes a year to bring a product to market. ¶70. Plaintiffs also challenge Apotheker's statement that there would be a "beta version" running on PC browsers by the end of 2011. ¶143. Beta testing occurs *before* software is released to the public. *See, e.g.*, *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1135 n.9 (E.D. Cal. 1999). No particularized facts show that HP

---

[6] Plaintiffs creatively truncate a statement by Bradley that they quote in full in ¶117, to claim in ¶50 that Bradley said HP "'plans to bring WebOS to the HP device that has the biggest reach of all: the personal computer,' which he said would occur 'later this year.'" ¶50. The full cite quotes Bradley as actually saying that HP would" introduce that WebOS to our millions of PC customers later this year." ¶117. The full version does *not* say that webOS would be *put on PCs* later that year, nor did analysts understand HP to have made that commitment. ¶122 (Wells Fargo report noting "HP did not provide a timeline for a PC version.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

14

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

did not intend to develop versions of the browser for testing by the end of 2011.[7]

### c. Statements Regarding Overall webOS Development And The TouchPad Are Not Sufficiently Alleged To Be False When Made

Plaintiffs also attack various statements about the TouchPad and webOS generally[8] as false because "development of the TouchPad was seriously hampered by missed milestones, delays, and software problems." *See, e.g.*, ¶¶134, 145, 148.

### (1) These Claims Are Insufficient For The Same Reasons The PCs And Printers Claims Fail

Plaintiffs' claims relating to overall webOS development and the TouchPad suffer from many of the same flaws that infect their claims regarding PCs and printers. As with PCs and printers, the FAC's own allegations show that HP *was* committed to developing the TouchPad. HP had created an entire GBU devoted to Palm and webOS development. ¶63. There were "approximately 1,000 HP employees" working on webOS tablets and smartphones. ¶72. The July 1, 2011 email cited in the FAC contains numerous positive statements about future plans for webOS. *See, e.g.*, ¶88 ("'webOS has the potential for greatness'"; "'it's a marathon not a sprint'"). Plaintiffs do not plead with particularity that HP did *not* have a commitment to webOS overall and the TouchPad.

As with the flaws in their claims about PCs and printers, Plaintiffs' alleged "facts" regarding the TouchPad's problems are too vague to satisfy the PSLRA. The CWs repeatedly use general terms such as "many." *See, e.g.*, ¶78 ("many 'bugs'" as of February 9 (CW2)); ¶82 (in February or March 2011, Apotheker

---

[7] The analyst reports cited by Plaintiffs confirm that the statement contained no firm commitment. ¶149 (Morgan Stanley report) ("with other WebOS enabled devices, like PCs and Printers, shipping *in the future*"); ¶151 (Stern Agee report) ("HPQ hinted of a capability to run webOS apps on its PCs *in the future*").

[8] These include ¶¶139, 153, 173, which specifically addressed the TouchPad, and other statements generally describing the webOS system, including ¶¶111, 114, 117, 128-29, 131, 136, 139, 143, 146, 152, 157, 161, 163, 168-69, 173-74, 177.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

15

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

imposed "many" deadlines (CW3)); ¶86 (the TouchPad had "many missed milestones and many significant . . . bugs" (CW2)); ¶86 ("many customers" returned the TouchPad "owing to the Wi-Fi bug and many others" (CW2)).  Except for the Wi-Fi bug and possibly the calendar bug, which is not described with any specificity, Plaintiffs "do not allege any facts concerning the type of bugs [webOS] experienced." *Frazier v. VitalWorks, Inc.*, 341 F. Supp. 2d 142, 155 (D. Conn. 2004).  "That a new program has kinks does not make a positive statement about the program false.  If that were the case, the federal securities laws would prevent software companies from making any positive statements about new software." *In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718, at *4 (N.D. Cal. Dec. 28, 2005), *aff'd sub nom, Wollrab v. Siebel Sys., Inc.*, 261 F. App'x 60 (9th Cir. 2007). None of the vague references to "bugs" or "problems" with the TouchPad amount to more than a recognition that software development inevitably involves continual refinement and working out of technical issues.  "Problems and difficulties are the daily work of business people.  That they exist does not make a lie out of any of the alleged false statements." *Ronconi*, 253 F.3d at 434, *see also Frazier*, 341 F. Supp. 2d at 153 n.4 ("one would be hard pressed to find a software program on the market without at least some technical glitches").

Once again, key dates are again missing from Plaintiffs' version of the "truth."  *See, e.g.*, ¶86 (no date for CW2's conversation with the head software engineer about bugs).  The timing of alleged problems is particularly important because the TouchPad was developed over the entire length of the putative class period.  Plaintiffs do not even attempt to show that any statements made at the beginning of the putative class period in November 2010 were false; there are *no* allegations regarding any supposed problems until, at the very earliest, February 9, 2011. ¶78 (CW1).  Later, Plaintiffs do not allege with specificity *when* certain bugs were identified or how they were addressed (or not addressed).  For example, the specific dates when Apotheker imposed deadlines or raised a problem with the

TouchPad's calendar function are not alleged.  ¶¶82-83.  The FAC does not claim that the calendar function problem was unresolved.  ¶83.  Plaintiffs try to treat the software update on August 1, 2011 as a concession of flaws, but the FAC just vaguely describes "improvements" and "enhance[ments]."  ¶95.  It never states that the update addressed the vague "bugs" to which the CWs referred.  The July 1, 2011 email does not refer to "bugs" but generally states that there are things to improve while emphasizing the TouchPad's quality.  ¶88.[9]

The issue of timing is even more significant because, approximately halfway through the putative class period, the market in which the TouchPad would be sold completely changed with the introduction and immediate success of the iPad 2 in March 2011.  ¶79.  Plaintiffs' allegations draw no distinction between actions before this event and afterward.  *See, e.g.*, ¶82 (CW3 describes meeting in "February or March 2011," a key time frame given the iPad 2's release in March).  Without facts about what was happening both before and after this transformative event, Plaintiffs do not show that the challenged statements were false when made.

(2) **The Statements About The TouchPad And webOS Overall Are Not False Simply Because HP Discontinued webOS Products**

Many of the grounds for asserting falsity as to the statements concerning webOS and the TouchPad implicitly or explicitly rely on HP's decision to discontinue webOS devices.  But mere temporal proximity of statements and later disclosures does not suffice to plead falsity.  *Ronconi*, 253 F.3d at 437; *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) (without other particularized factual allegations, the temporal proximity of an allegedly false statement and the "truth" is inadequate to plead falsity).  "'The story in this complaint is familiar in

---

[9] Plaintiffs' focus on this email is somewhat perplexing because it emphasizes the high potential of webOS and expresses a belief that webOS will ultimately be comparable to the highly successful MacOS platform.  ¶88.  Thus, if anything, it demonstrates HP's belief in and commitment to webOS.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

17

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

1   securities litigation.  At one time the firm bathes itself in a favorable light.  Later

2   the firm discloses that things are less rosy.  The plaintiff contends that the

3   difference must be attributable to fraud.'"  *Vantive*, 283 F.3d at 1085 n.2 (quoting

4   *DiLeo*, 901 F.2d at 627); *Wozniak*, 2012 WL 368366, at *12 ("[I]t is clearly

5   insufficient for plaintiffs to say that a later, sobering revelation makes an earlier,

6   cheerier statement a falsehood.").  At bottom, Plaintiffs plead nothing more than the

7   fact that HP's webOS devices did not succeed.  This fails to establish securities

8   fraud; it is impermissible fraud by hindsight.  *Pittleman*, 2009 WL 648983, at *2.

9       In sum, Plaintiffs' failure to support their falsity claims with particularized

10  facts is fatal to their claims, especially given their implausible theory of liability.

11      **C.**     **The Confidential Witnesses Upon Whom Plaintiffs Base Their**

12              **Claims Are Unreliable Because They Lack Personal Knowledge,**

13              **Rely on Hearsay, And Provide Unsupported Personal Opinions**

14              **And Statements Criticizing Management**

15      The primary sources of support for Plaintiffs' irrational theory that HP

16  invested heavily in a technology while not believing in it are the four confidential

17  witnesses, who are former HP or Palm employees.  The FAC suggests that the CWs

18  are highly placed sources within senior management who were close to the

19  Individual Defendants and who had intimate knowledge of HP's plans across all

20  business units regarding webOS development.  However, a close reading of the

21  FAC shows that the CWs make sweeping and generalized assertions about matters

22  far beyond any personal knowledge they are alleged to have.

23      Without this personal knowledge, the CWs are not reliable and should be

24  disregarded.  The Ninth Circuit requires a plaintiff to "provid[e] sufficient detail

25  about a confidential witness' position within the defendant company to provide a

26  basis for attributing the facts reported by that witness to the witness' personal

27  knowledge."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir.

28  2009) (citing *In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005));

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

18

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

*see also id*. at 996 (complaint must contain particularized "facts supporting its assumptions that the confidential witnesses were in a position to be personally knowledgeable of the information alleged."). Given the importance that Plaintiffs attach to the CWs and the standards imposed by the Ninth Circuit, a detailed review of the specific allegations relating to each one is necessary – and reveals deep flaws in the claims Plaintiffs try to construct based upon them.

      1.    **The FAC Fails To Plead That The CWs Were In Positions That Would Give Them Personal Knowledge**

          a.    **The Limited Facts Of Which CW1 Has Personal Knowledge Show That HP *Was* Developing webOS For PCs And Printers**

CW1 is the primary source for the claim that HP was not developing webOS for PCs and printers and was not committed overall to webOS. But no particularized facts support CW1's assertions that he knew everything about webOS development throughout all of HP. ¶71. CW1, who was three reporting levels below Bradley, was only a "vice president" of software engineering in the Palm GBU starting October 2010. ¶63. He did not work for the desktop GBU or the printer group, which developed webOS for PCs and printers. ¶¶45, 63, 70. CW1 admits that his group was "not involve[d]" in the PC and printer development efforts. ¶66. The Palm GBU focused on development of webOS for the TouchPad and smartphones. ¶45. No particularized facts show CW1 would know anything – let alone everything – about webOS development in other GBUs.

Plaintiffs do not plead that CW1 interacted with the PC group or had any firsthand information about its activities or any other basis to support his assertion that "the 'tablet emulator' option [for PC] never got as far as development of a written product roadmap." ¶70. As to printers, even CW1 admits that another employee was the liaison. ¶72. Having acknowledged the work of the two groups – which he opines was preliminary (¶¶66-71) – CW1 disingenuously

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

19

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

focuses on the lack of plans for webOS PCs and printers within the Palm GBU, even though the Palm GBU was not primarily responsible for those projects. *See, e.g.*, ¶67 (alleging that "[n]o one within CW1's webOS software team or the Palm GBU was developing webOS for PCs or printers"); ¶¶67-69 (claiming a Palm GBU internal "Plan" meant that "PCs or printers with webOS on them were never Plans of Record"). These allegations should be disregarded because no facts show that CW1 has any factual basis for his speculation about what anyone in other GBUs – or indeed in any area beyond his stated job responsibilities, TouchPad software development – was doing. ¶63. Since CW3 and CW4 do not address PCs or printers, and CW2 has no personal knowledge of these areas, *see infra* §III.C.1.b, CW1's lack of reliability means that no particularized facts show that HP was not developing – and did not intend to develop – webOS for PCs and printers.

Even CW1's statements regarding the TouchPad software (his alleged area of responsibility) are sorely lacking. The FAC alleges that CW1 left HP on an unspecified date in July 2011. ¶63. Thus, CW1 is not in a position to claim that certain discussions "never" happened (*e.g.*, ¶¶67, 69-70, 72) or to opine that no beta version would be running on PCs at the end of the year. ¶71. The failure to plead when in July CW1 left HP invalidates all his assertions about post-July 1, 2011 release events, including why the TouchPad was "unsuccessful," ¶81. *Downey*, 2009 WL 2767670, at *9 (rejecting CWs' opinions about postdeparture events).

> b.   **CW2 Had No Direct Involvement With webOS Until Late June 2011, And Then Worked On Commercial Sales, Not Product Development Or Retail Sales**

CW2 also makes factual assertions beyond his personal knowledge. CW2 was "a Vice President of Marketing and Strategy in the Solution Partners Organization area of PSG" from 2000 until June 20 or 21, 2011, after which he transferred to the Palm GBU. ¶73. The FAC fails to describe any of CW2's job responsibilities before June 2011, what "CW2's team" did, and how CW2 or "other

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

20

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

employees within CW2's area in PSG" could know about HP's efforts to develop webOS for PCs before late June.  ¶¶73-75.  Thus, for example, CW2 lacks the personal knowledge to assert that as of the January CNBC appearance, "there were no such development efforts or plans [for webOS PCs] within HP."  ¶75.  The FAC pleads that later, between some date in *May and June*, CW2 was "in close communication" with Palm GBU's Vice President of Enterprise Development, but this statement concedes that CW2's information was secondhand.  ¶76.

Further, because CW2's job in the Palm GBU was to "sell[] the TouchPad and other mobile devices on the webOS platform to large *corporate* clients" (¶74), his responsibilities did not provide him with personal knowledge regarding anything about retail customers for the TouchPad, such as the number of retail TouchPad returns, the reasons for the returns, what an average retail customer expected at Best Buy, or why the "'entire webOS initiative . . . failed.'"  ¶¶86, 90.  No facts show that CW2 worked on retail accounts or had access to information about retail consumers.  Because CW2's speculations about retail consumers' expectations form the basis for his conclusion that webOS was "not ready for prime time" (¶90), that statement also lacks a basis in personal knowledge.  The FAC does not allege that CW2 was involved in development or conferred with anyone working on PCs or printers; nor does it provide any reason why CW2 would know whether anyone was developing webOS for PCs or printers, much less know the status of those projects.  Finally, CW2 makes comments regarding what "senior management realized" and what "senior management decided" regarding commercial application of the TouchPad, without identifying "senior management," when he learned this information, or when these events occurred.  ¶87.

c.   **CW3 Was Responsible For Hardware And Has No Basis For Personal Knowledge Of Development Of webOS Software, PCs, Printers, Or Marketing Data**

CW3, the Senior Vice President of Hardware Engineering in the Palm GBU

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

21

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

starting July 2010, claims to have "observed a consensus within CW3's team that the product could not compete with the iPad because it lacked the thousands of apps that Apple offered at the same price point." ¶¶ 82, 85. He also asserts that the TouchPad's "software was a little buggy and the hardware quality was middling." *Id.* Yet, CW3 and his team were responsible for hardware, not software or apps (¶82), and CW3 did not claim to have access to marketing information. ¶85. CW3 also states that, during a February or March 2011 meeting, Bradley and Rubinstein agreed to Apotheker's deadlines to "appease" him. ¶82. CW3 provides no factual basis for his speculation about Bradley's and Rubinstein's motives for agreeing to the deadlines. CW3 says nothing about webOS development for PCs and printers.

### d. The FAC Contains No Description Of CW4's Job Responsibilities, And Thus There Is No Foundation For CW4's Personal Knowledge

CW4 was a Director and then Senior Director of webOS in the Palm GBU starting July 2010. ¶83. The FAC contains *no* description of CW4's responsibilities, *id.*, and "a job title by itself will seldom provide an adequate description of the CW's basis for his or her knowledge." *Apple*, 243 F. Supp. 2d at 1027. There is no factual support for CW4's assertion that "Apotheker focused his attention on the webOS division," ¶83, or any of his views about software development and the TouchPad. ¶84. CW4 makes no allegations about webOS PCs and printers.

### 2. The CWs Inappropriately Rely Upon Hearsay To Compensate For Their Lack Of Personal Knowledge

Many of the CWs' statements consist of vague, often multilevel hearsay, which renders them unreliable. "[T]he fact that a confidential witness reports hearsay does not automatically disqualify his statement," but reliance on hearsay "may indicate that a confidential witnesses' report is not sufficiently reliable, plausible, or coherent to warrant further consideration...." *Zucco*, 552 F.3d at 998

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

22

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

1    n.4 (citing *Daou*, 411 F.3d at 1015). Statements from the CWs based on hearsay

2    without specific or personal knowledge should be rejected. *Id.*, 552 F.3d at 997-98;

3    *Downey*, 2009 WL 2767670, at *10.

4        CW2 often describes what others told him, not what he personally knew.

5    *See, e.g.*, ¶75 (CW2 asked an individual about an issue and recounted his reply);

6    ¶76 (the Enterprise Development VP "told CW2" some information); *id.* ("HP did

7    not come up with a 'plausible story' to tell customers in response to their inquiries

8    concerning webOS-based PCs until July"); ¶86 ("CW2 recalled having meetings

9    with the head software engineer about this Wi-Fi bug prior to the TouchPad's

10    release; the head software engineer . . . told CW2 that the bug was number 4 or 5 on

11    a list" and he had been told to "focus on clearing up the top three bugs on the list").

12        CWs 1, 3, and 4 also base their statements on vague hearsay from others.

13    *See, e.g.*, ¶64 ("[CW1] stated that s(he) and Palm GBU personnel s(he) worked

14    with, including many project managers and Rubinstein himself, were surprised and

15    even horrified upon hearing such pronouncements"); ¶83 (alleging that before the

16    TouchPad's release, "Rubinstein came to [CW4] with a problem with the

17    TouchPad's calendar function that Apotheker had specifically raised with

18    Rubinstein"); ¶84 (recounting a meeting in which webOS directors' opinions

19    regarding the TouchPad release were discussed; alleging that the "consensus" was

20    that July 1 was too soon (CW4)); ¶85 ("CW3 observed a consensus within CW3's

21    team that the [TouchPad] could not compete with the iPad because it lacked the

22    thousands of apps that Apple offered at the same price point.").

23        **3.**    **The CWs' Personal Opinions And Views Of Management**

24            **Should Be Disregarded**

25        The CWs often express personal opinions and assertions that they would

26    have run webOS differently, but such statements are analogous to comments about

27    "initial feedback" contending that a new product was "negative, 'poor,' or that an

28    unspecified number of users found it 'ineffective,'" which are insufficient to show

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

23

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

falsity.  *Wozniak*, 2012 WL 368366, at *6; *see also Downey*, 2009 WL 2767670, at *9 (stating that confidential witness statements based on "speculation" are "disregarded").  "The second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud."  *Downey*, 2009 WL 2767670, at *11.  These disagreements common to business are not securities fraud.

The CWs' baseless opinions cannot establish that any specific statement was "false" when made.  CW1's musings as to "how Bradley could possibly make such an assertion" about webOS PCs (¶66), his view that the tablet emulator option being developed by another GBU was "'worlds away'" from developing a product to be sold (¶70), and his belief that the TouchPad's "software was not ready and the price point was too high" (¶81) are vague opinions that are neither supported by concrete facts nor based on personal knowledge.  CWs 2 and 3's opinions that the TouchPad "was bound to fail" and "could not compete with the iPad" (CW3 ¶85) and that "webOS was 'not . . . ready for prime time'" (CW2 ¶90) merely show that they shared a pessimistic outlook – they are not facts revealing securities fraud.[10] CW1 had strong views about others, characterizing Apotheker as a "loose cannon" (¶64) and complaining that the Palm GBU liaison with the printer group "did little work and was completely ineffective" (¶72).  These critiques are not facts, let alone the particularized facts necessary to establish securities fraud.  CW1's opinion that "plan" only meant "Plan of Record," or "POR," (¶65), should be disregarded as no facts establish that anyone else used "plan" only to mean "POR."  Indeed, no facts show that anyone – let alone Defendants – shared *any* of the CWs' opinions.

Further, the Court should reject allegations that merely reflect the CWs' personal disagreements with HP's approach to webOS development.  *See, e.g.*, ¶70 (CW1's belief that the PC group should have explored webOS-based browsers for

---

[10]  HP was not required to adopt the CWs' views and disparage its products or "predict that [its] future operations [would] fail."  *Kane v. Madge Networks N.V.*, No. 96-20652, 2000 WL 33208116, at *8 (N.D. Cal. May 26, 2000).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

24

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

PCs), ¶81 (CW2's belief that resources were diverted from the TouchPad to smartphones and CW1's belief that his team needed more time), ¶82 (CW3's belief that Apotheker's deadlines were "unattainable"), ¶84 (CW4's belief that the July 1 TouchPad launch was "definitely premature"), ¶85 (CW3 implied that software "bugs" should have been corrected before the TouchPad was released).

In sum, Plaintiffs attempt to construct a theory of fraud on a foundation of sand – statements from former (possibly disgruntled) employees who believe that they knew everything about webOS and could have run the webOS business better themselves. Given that three of the four CWs appear to have joined HP as part of the Palm acquisition, their unhappiness is predictable; they may believe that HP killed their webOS "baby." But their displeasure does not show there was a hidden "truth" HP concealed, nor does it provide any basis for a claim of securities fraud.

## D. The FAC Does Not Plead A Strong Inference Of Scienter

### 1. The Standards For Pleading Scienter Are Extremely High

The PSLRA's heightened standards require particularized facts establishing a "strong inference that the defendant acted with the required state of mind." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1051 (9th Cir. 2011) (citing 15 U.S.C. § 78u-4(b)(2)). A "strong inference" is one that is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Courts in the Ninth Circuit first consider whether any of the allegations, standing alone, creates a strong inference of scienter, and if no individual allegation is sufficient, the court conducts a "holistic" review to determine whether combined they satisfy the PSLRA. *See, e.g., Am. Apparel*, 2012 WL 1131684, at *22. To a large extent, a failure to plead a material false statement also constitutes a failure to plead scienter. *Id.* at *23 (describing these as a "'single inquiry, because falsity and scienter are generally inferred from the same set of facts'").

Plaintiffs must plead facts raising the requisite strong inference of either

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

25

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

"knowing or intentional conduct" or reckless conduct, and recklessness must "reflect[] some degree of intentional or conscious misconduct." *Id.* at *17. "[P]laintiffs proceeding under the PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Metzler*, 540 F.3d at 1066.

This Court has held that plaintiffs must plead scienter on the part of at least one of the individual defendants to plead scienter as to HP. *Pittleman*, 2009 WL 648983, at *3. Plaintiffs fail, however, even to attempt to parse out the scienter allegations for each particular statement made by each particular individual.

> ### 2. Plaintiffs Fail To Plead Facts Showing Forward-Looking Statements Were Made With Actual Knowledge Of Falsity

Claims based on HP's description of its future plans and intentions should be dismissed because the FAC does not plead particularized facts establishing *actual knowledge* of falsity as to each statement, which is required for forward-looking statements. *Ronconi*, 253 F.3d at 429 (citing 15 U.S.C. § 78u-5(c)(1)); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010); *Zucco*, 552 F.3d at 995 (even if reliable, CW statements "must themselves be indicative of scienter").

No allegations show that the CWs had direct interaction with the Individual Defendants other than CW3's vague comments about one meeting during an uncertain time frame in which unknown topics were discussed. *Zucco*, 552 F.3d at 1000 (finding a lack of scienter based on executives' attendance at meetings where complaint did not allege that adverse facts were discussed). CW1 and CW2 do not claim ever to have interacted with any of the Individual Defendants. CW1 speculates on various issues but offers no factual support for his conclusions. *See supra* §III.C.1.a. (CW1 is at least three reporting levels below Bradley. ¶63.) CW2's imagination is not fact, and this Court should reject the allegation that Apotheker and Bradley must have known of a Wi-Fi "bug" because CW2 "could

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

26

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

not imagine a bug 'of that magnitude' not being known at the top." ¶86.  *Downey*, 2009 WL 2767670, at \*10 (rejecting as "sheer speculation" confidential witness's statement that the Board "'would have known that the market and its loans were going to implode'" because they studied "'trends'").  CW4 does not describe any interaction with the Individual Defendants.  He alleges that Rubinstein came to him at some point before the TouchPad's release with a calendaring problem that Apotheker had raised.  ¶83.  Apotheker's knowledge of this problem, however, does not show scienter because no facts demonstrate that Apotheker knew the problem would not be resolved.  *Apple*, 243 F. Supp. 2d at 1026 n.7 (CEO's acknowledgment of the Cube's problems did not show knowledge of falsity of public statements touting the Cube because CEO also said that he expected the problems to be fixed); *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 884 (D. Minn. 2007) ("to allege that Defendants knew their statements were false, Plaintiffs must allege that Defendants knew the difficulties in [product] technological development were insurmountable or particularly significant" and "[k]nowledge that there were some obstacles to development . . . is not sufficient to show knowledge of falsity"), *aff'd* 527 F.3d 749 (8th Cir. 2008); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007) (mechanical difficulties are expected with a new technical product and faulting plaintiffs for not alleging that problems were "insurmountable" or that defendants "believed that they doomed the product offering.").

This leaves only CW3, who reported to Rubenstein, ¶82, who reported to Bradley.  ¶63.  CW3 describes one meeting in "February or March 2011" to "review the webOS product lines."  ¶82.  CW3 states that Apotheker, Lesjak, and Bradley were all present, but he does not include any allegations about what was said at the meeting, and the FAC does not even plead that "problems" were discussed.  CW3 states that Apotheker "imposed many deadlines leading to the release of the Touchpad" and, "[r]eferring to webOS," stated: "'If this thing is not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

27

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

working out by the end of the year, I'm gonna shut it down.'" *Id.* (emphasis omitted).  There is no suggestion that Apotheker's comment about "shut[ting] it down" was anything but hyperbole or that it was connected to any particular issue.  No facts show what Apotheker meant by "it" – was it all of webOS, or the TouchPad, or webOS for PCs and printers, or perhaps the smartphones or something else entirely?  Nor does CW3 plead facts showing that any Individual Defendants knew or should have known that fixing any problems that may have been discussed or meeting Apotheker's deadlines "was impossible."  *Apple*, 243 F. Supp. 2d at 1026 n.7.  CW3 *personally* considered Apotheker's deadlines for the TouchPad unattainable, but he does not allege that anyone else shared his opinion.  No facts support CW3's claim that Bradley "acquiesced" to "appease" Apotheker (¶82), and CW3 does not allege that he expressed his concerns to anyone.  Nor does he state what happened after this meeting, which occurred relatively early in the putative class period, or whether any issues discussed in the meeting were resolved.

There are no other allegations or documents that show that any defendant had "actual knowledge" that HP's predictions or future plans were false when they were made.  Neither the "roadmap" nor the internal email is alleged to have been copied to any of the Individual Defendants (¶¶68-69, 88-89), and even if they were, they do not show that HP's statements about its plans were false.  Indeed, the July 2011 email displays optimism.  Plaintiffs try to portray the email as an "admission" of problems, but it states that any existing problems "will be addressed" and compares webOS to the "MacOS X – a platform that would go on to change the landscape of Silicon Valley in ways that no one could have imagined."  ¶88 (emphasis omitted).

Since Plaintiffs lack facts directly showing actual knowledge of their absurd scheme, they attempt to infer scienter using several approaches, all of which fail.

> 3.  **Plaintiffs Cannot Plead Scienter With Hindsight Or Based On Temporal Proximity**

Just as Plaintiffs cannot plead a false statement based on hindsight, they

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

28

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

cannot show scienter based on fraud by hindsight. *Pittleman*, 2009 WL 648983, at *2. Likewise, the temporal proximity of HP's August announcement to some of its earlier statements is not alone indicative of scienter. *Ronconi*, 253 F.3d at 437.

### 4. The "Core Business" Allegations Do Not Support Scienter

Plaintiffs try to plead scienter by averring that PSG and webOS were HP's "'core businesses'" during the class period (¶97), but the "core operations" inference applies only in "'exceedingly rare' cases where an event is so prominent that it would be 'absurd' to suggest that key officers lacked knowledge of it." *Pittleman*, 2009 WL 648983, at *3 (finding "vague allegations of violations" of guidelines were not sufficient for "core operations inference" to apply); *Am. Apparel*, 2012 WL 1131684, at *26 n.212 (describing cases rejecting attempts to rely on "core operations" doctrine where allegations lacked requisite specificity).

It is not enough for Plaintiffs to plead that Defendants were aware of *webOS*; rather, they have to plead with particularity that the specific events occurring in webOS development were so "prominent" that the Individual Defendants "must have" been aware of them. Virtually no allegations, however, show what problems must have been known by which individuals at specific times and how those problems would have made the speakers aware that their statements were false.

In an effort to rely upon the "core operations" inference, the FAC conflates PSG with the webOS GBU. Even if PSG were part of HP's "core business," Plaintiffs have not adequately alleged that *webOS* and its development were "core." The allegations plead only that the PSG business segment overall was important to HP. ¶¶97-99; *see also* ¶99 (statement that webOS was a "PC *adjacency*"). Nothing shows that webOS alone was as important as the PSG unit. One analyst used the term "core" in describing the "ecosystem" but did not suggest that it was key to HP's overall business. ¶100 ("webOS platform [i]s the [] core unifying layer for connected devices . . . WebOS is the foundation for the HP connected ecosystem.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

29

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

The other statement used by Plaintiffs to support this theory ("we are all about webOS") is meaningless puffery, not facts showing that webOS was "core."  *Id.*

### 5.   General Allegations Regarding "Access" Or "Monitoring" Do Not Establish Scienter

Plaintiffs also try to plead scienter by averring that the Individual Defendants "monitored" webOS.  ¶¶104, 108.  However, at best, the FAC asserts that the Individual Defendants could have had *access* to information about webOS, which is not equivalent to obtaining that information.  *Apple*, 243 F. Supp. 2d at 1026; *Am. Apparel*, 2012 WL 1131684, at *24; *Wet Seal*, 518 F. Supp. 2d at 1175 ("[M]ere access to contradictory information, even combined with allegations of a hands-on management style, is not enough to show deliberate recklessness.").  Where plaintiffs attempt to establish scienter by demonstrating that defendants had access to information that contradicts the challenged statements, plaintiffs must include adequate corroborating details, such as a sufficient description of their contents, the sources of their information with respect to the reports or data, how they learned of the reports or data, who drafted them, or which officers received them.  *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *overruled in part on other grounds, S. Ferry*, 542 F.3d 776; *Vantive*, 283 F.3d at 1087-88.  The FAC does not contain that information as to any of the Individual Defendants.

### 6.   The Competing Inference That HP Believed In webOS And Worked To Develop It But Made A Business Decision Based On Market Forces Is More "Cogent And Compelling" Than Plaintiffs' Implausible Theory That HP Spent Billions On A Technology To Which It Was Not Committed

The final reason Plaintiffs' scienter allegations fail is that the FAC hardly pleads a "cogent and compelling" inference of scienter.  *Tellabs*, 551 U.S. at 314.  Courts "must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  The inference that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

30

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

1    defendant acted with scienter need not be irrefutable . . . . Yet the inference [that the

2    defendants acted with scienter] . . . must be more than merely 'reasonable' or

3    'permissible….'"  *Id*. at 310.

4            Here, Plaintiffs' theory of liability is irrational.  According to the FAC, the

5    various Individual Defendants and HP as a whole supposedly lied about every

6    aspect of webOS for nine months *after* having spent over $1 billion to acquire this

7    software.  Further, according to Plaintiffs' theory, HP invested enormous resources

8    in developing webOS and incurred charges of over $3 billion to wind down the

9    project – all while supposedly not being committed to webOS.  Plaintiffs offer no

10   explanation as to why any – much less all – of the Defendants would have engaged

11   in such conduct.  Although Plaintiffs are not required to plead motive, they have a

12   more difficult task when there is no reason why Defendants would have engaged in

13   the alleged fraud.  *Wet Seal*, 518 F. Supp. 2d at 1178 (stating that the "lack of *any*

14   tangible personal benefit here further weighs" against scienter).

15           In contrast, the "plausible nonculpable explanations for defendant[s']

16   conduct," *i.e.*, that HP believed in webOS, are far more compelling than Plaintiffs'

17   theory.  Simply put, optimism is a more plausible explanation here than is fraud.

18   *Id.* at 1164.  HP devoted significant efforts to these products after the Palm

19   acquisition.  Plaintiffs contend that HP had over $3 billion invested in webOS.

20   ¶¶15, 203.  HP had created an entire GBU for Palm and webOS development.  ¶63.

21   There were "approximately 1,000 HP employees" working on webOS tablets and

22   smartphones.  ¶72.  The FAC describes "internal roadmap document[s]," including

23   one reproduced in the FAC, setting forth a schedule for release of various webOS

24   products with "more to come" in the future.  ¶¶67-68.  As already noted, HP had

25   separate groups working on different aspects of webOS development, including

26   PCs and printers.  ¶¶70, 72.  The July 1, 2011 email cited in the FAC contains many

27   positive statements about future plans for webOS.  *See, e.g.*, ¶88 ("webOS has the

28   potential for greatness"; "'it's a marathon not a sprint'").  Given these allegations,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS

the most cogent explanation for HP's actions relating to webOS is that HP genuinely intended and hoped for webOS products to succeed, but, unfortunately, they did not. The FAC even acknowledges that competition from "Apple's dominant iPad 2" hurt TouchPad sales. ¶¶9, 79. Difficulties obtaining market share against a "dominant" competitor's new product are far more compelling an explanation than Plaintiffs' theory.

Whether viewed individually or holistically, the FAC does not make the "strong case" necessary to conclude that Defendants acted with scienter with respect to webOS. "At bottom, a non-fraudulent inference . . . is more compelling than an inference that [the company's] officers intended to defraud investors." *Sharenow*, 385 F. App'x at 717. Thus, the FAC should be dismissed.

## IV.  **CONCLUSION**

For all the reasons set forth above and in the Individual Defendants' briefs, HP respectfully requests that this Court grant its motion to dismiss.

Dated:         April 11, 2012              MORGAN, LEWIS & BOCKIUS LLP

                                           By  /s/ Robert E. Gooding, Jr.
                                                ROBERT E. GOODING, JR.

Dated:         April 11, 2012              GIBSON, DUNN & CRUTCHER LLP

                                           By  /s/ Dean J. Kitchens
                                                DEAN J. KITCHENS

                                           Attorneys for Defendant
                                           Hewlett-Packard Company

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

32

CASE NO. SACV11-01404 AG (RNBX)
DEF. HP'S MPA ISO
MTN TO DISMISS