1   MORGAN, LEWIS & BOCKIUS LLP
    ROBERT E. GOODING, JR. (SBN 50617)
2   JENNIFER R. BAGOSY (SBN 223145)
    5 Park Plaza, Suite 1750
3   Irvine, CA  92614
    Tel:   949.399.7000
4   Fax:   949.399.7001
    E-mail:  rgooding@morganlewis.com
5   E-mail:  jbagosy@morganlewis.com

6   MARC J. SONNENFELD (Admitted *Pro Hac Vice*)
7   KAREN PIESLAK POHLMANN (Admitted *Pro Hac Vice*)
8   1701 Market Street
    Philadelphia, PA  19103-2921
9   Tel:  215.963.5000
    Fax:  215.963.5001
10  E-mail:  msonnenfeld@morganlewis.com
    E-mail:  kpohlmann@morganlewis.com
11
    [*Additional counsel appear on signature page*]
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  RICHARD GAMMEL, Individually and       Case No. SACV11-01404 AG (RNBx)
    on Behalf of All Others Similarly
17  Situated,                              **OMNIBUS REPLY IN SUPPORT
                                           OF DEFENDANTS' MOTIONS
18              Plaintiff,                  TO DISMISS FIRST AMENDED
                                           CLASS ACTION COMPLAINT**
19         vs.
                                           Judge:  Hon. Andrew J. Guilford
20  HEWLETT-PACKARD COMPANY,               Dept.: Courtroom 10D
    LÉO APOTHEKER and                      Hearing Date:  August 6, 2012
21  CATHERINE A. LESJAK,                   Time:  10:00 a.m.

22              Defendants.

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

MONIQUE E. CHO (SBN 251949)
300 South Grand Avenue
Los Angeles, CA  90071-3132
Tel:  213.612.2500
Fax:  213.612.2501
E-mail:  mcho@morganlewis.com

GIBSON, DUNN & CRUTCHER, LLP
DEAN J. KITCHENS (SBN 82096)
DANIEL S. FLOYD (SBN 123819)
DAVID HAN (SBN 247789)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: 213.229.7000
Fax: 213.229.7520
E-mail:  dkitchens@gibsondunn.com
         dfloyd@gibsondunn.com
         dhan@gibsondunn.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................. 1

II.   PLAINTIFFS' FRAUD CLAIMS FAIL BECAUSE DEFENDANTS ONLY INDICATED AN INTENT TO PUT WEBOS ON PCS OR PRINTERS, NOT A PROMISE TO DO SO BY A SPECIFIC DATE ......... 5

III.  PLAINTIFFS FAIL TO SHOW THAT DEFENDANTS' STATEMENTS WERE FALSE WHEN MADE ............................ 7

    A.   Plaintiffs Must Allege Particularized Facts ........................... 7

    B.   Plaintiffs Fail To Identify How Statements About The Ongoing webOS Development Process Were False When Made ..................... 9

    C.   Plaintiffs Fail To Show That Any Problems With The TouchPad Were So Large And Insurmountable As To Render Statements About That Product False When Made................................ 12

    D.   Plaintiffs Cannot Rely On The CWs To Show That Statements Were False When Made................................................ 13

        1.    The CWs Lack Sufficient Personal Knowledge To Be Reliable Witnesses ................................................ 14

        2.    Defendants Raised Obvious Flaws With Plaintiffs' Inferences Based On Facts In The FAC; They Have Not Raised Factual Challenges ........................................ 16

        3.    The CWs Improperly Rely On Hearsay ................................ 17

    E.   Temporal Proximity By Itself Does Not Establish Falsity ................ 19

    F.   Generalized Positive Statements About webOS Are Inactionable Puffery................................................................ 20

        1.    No Facts Preceding Or Following The Defendants' Generalized Optimistic Statements Render Them Actionable ....................................................... 21

        2.    No Facts Show That Development Problems Contradicted The Challenged Generalized Positive Statements ................... 24

IV.  THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE BECAUSE THEY ARE FORWARD-LOOKING AND PLAINTIFFS DO NOT PLEAD THE REQUIRED SCIENTER, WHICH IS ACTUAL KNOWLEDGE OF FALSITY ................................... 26

    A.   Plaintiffs' Claims Are Based On Forward-Looking Statements ........ 26

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

i

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

B.    Plaintiffs Fail To Plead Actual Knowledge, Which Is The Requisite Scienter ........................................................... 28

V.    THE COMPETING INFERENCE THAT DEFENDANTS BELIEVED IN WEBOS AND WORKED TO DEVELOP IT BUT MADE A BUSINESS DECISION BASED ON MARKET FORCES IS MORE "COGENT AND COMPELLING" THAN PLAINTIFFS' IMPLAUSIBLE THEORY ........................................................... 35

VI.    FURTHER ARGUMENTS DEMONSTRATE THAT PLAINTIFFS FAIL ADEQUATELY TO PLEAD SCIENTER AS TO ANY OF THE INDIVIDUAL DEFENDANTS ........................................................... 36

A.    There Is No Strong Inference Of Scienter As To Ms. Lesjak ........... 36

B.    There Is No Strong Inference Of Scienter As To Mr. Apotheker ...... 39

C.    There Is No Strong Inference Of Scienter As To Mr. Bradley .......... 40

VII.    THERE CAN BE NO CLAIM BASED ON FORWARD-LOOKING STATEMENTS THAT WERE IDENTIFIED AS SUCH AND ACCOMPANIED BY MEANINGFUL CAUTIONARY LANGUAGE ..... 42

VIII.    THE FAC FAILS TO ALLEGE A SECTION 20(A) CLAIM .................... 45

A.    Plaintiffs Have Not Shown That Ms. Lesjak Exercised The Requisite Control ........................................................... 45

B.    Plaintiffs Have Not Shown That Mr. Bradley Exercised The Requisite Control ........................................................... 47

IX.    CONCLUSION ........................................................... 48

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

ii

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Razor Audio, Inc.*,
   No. Civ. S-10-1215, 2012 WL 530427 (E.D. Cal. Feb. 17, 2012).......................45

*Allison v. Brooktree Corp.*,
   999 F. Supp. 1342 (S.D. Cal. 1998) ...............................................................10, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................7

*Beaver Cnty. Ret. Bd. v. LCA-Vision, Inc.*,
   No. 1:07-CV-750, 2009 WL 806714 (S.D. Ohio Mar. 25, 2009) ...................8, 43

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................7

*Beloit Corp. v. Emett & Chandler Cos., Inc.*,
   No. 90-55154, 1991 WL 153459 (9th Cir. Aug. 14, 1991)..................................22

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ......................................................................32, 39

*Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*,
   No. C 11-01016, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012) ...............41, 42, 44

*City of Roseville Emps. Ret. Sys. v. Nokia Corp.*,
   No. 10 CV 00967, 2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011)........................10

*Crosbie v. Endeavors Techs., Inc.*,
   No. SA CV 08-1345, 2009 WL 3464135 (C.D. Cal. Oct. 22, 2009) ..................15

*Desai v. Gen. Growth Props., Inc.*,
   654 F. Supp. 2d 836 (N.D. Ill. 2009)...............................................................43

*Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*,
   353 F.3d 1125 (9th Cir. 2004) ....................................................................43, 44

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ...........................................................................10

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010) ..............................................................7

*Glazer Capital Mgmt., L.P. v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ......................................................................38, 41

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ...........................................................................35

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) .........................................................................28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iii

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) ...................................................................45

*In re Am. Apparel, Inc. S'holder Litig.*,
   No. CV 10-06352, 2012 WL 1131684 (C.D. Cal. Jan. 13, 2012) ..............10, 21

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
   No. MDL 11-2302, 2012 WL 1983341 (C.D. Cal. May 31, 2012).....................15

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) ...................................................................25

*In re Cadence Design Sys., Inc., Sec. Litig.*,
   654 F. Supp. 2d 1037 (N.D. Cal. 2009) ......................................................38

*In re Cadence Design Systems, Inc. Sec. Litig.*,
   692 F. Supp. 2d 1181 (N.D. Cal. 2010) ......................................................17

*In re CDnow, Inc. Sec. Litig.*,
   138 F. Supp. 2d 624 (E.D. Pa. 2001) .........................................................36

*In re Citrix Sys., Inc. Sec. Litig.*,
   No. 00-6796, 2001 U.S. Dist. LEXIS 25351 (S.D. Fla. Sept. 28, 2001)..............35

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................................27

*In re Copper Mountain Sec. Litig.*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) ....................................................43, 44

*In re Cornerstone Propane Partners, L.P., Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ......................................................33

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................20, 26, 43, 44

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...................................................................38

*In re Discovery Labs. Sec. Litig.*,
   No. 06-1820, 2006 WL 3227767 (E.D. Pa. Nov. 1, 2006)..............................27

*In re Dot Hill Sys. Corp. Sec. Litig.*,
   No. 06-CV-228, 2009 WL 734296 (S.D. Cal. Mar. 18, 2009)...........................27

*In re Downey Sec. Litig.*,
   No. CV 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ......16, 18, 41, 45

*In re Foundry Networks, Inc. Sec. Litig.*,
   No. C 00-4823, 2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) .......................30

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................42, 45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iv

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

## TABLE OF AUTHORITIES

Page(s)

1

2    *In re Immersion Corp. Sec. Litig.,*
      No. C 09-4073, 2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ...........................33
3
     *In re Impac Mortg. Holdings, Inc. Sec. Litig.,*
4      554 F. Supp. 2d 1083 (C.D. Cal. 2008) ........................................................20, 42

5    *In re Infonet Servs. Corp. Sec. Litig.,*
      310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...............................................................28
6
     *In re Int'l Rectifier Corp. Sec. Litig.,*
7      No. CV 07-02544, 2008 WL 4555794 (C.D. Cal. May 23, 2008).......................47

8    *In re LeapFrog Enters., Inc. Sec. Litig.,*
      527 F. Supp. 2d 1033 (N.D. Cal. 2007) ...............................................................27
9
     *In re Lockheed Martin Corp. Sec. Litig.,*
10     272 F. Supp. 2d 944 (C.D. Cal. 2003) .................................................................27

11   *In re McKesson HBOC, Inc. Sec. Litig.,*
      126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...............................................................34
12
     *In re Metawave Commc'ns Corp. Sec. Litig.,*
13     298 F. Supp. 2d 1056 (W.D. Wash. 2003) .............................................13, 23, 46

14   *In re Nuvelo, Inc., Sec. Litig.,*
      No. C07-4056, 2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) .............................44
15
     *In re NVE Corp. Sec. Litig.,*
16     551 F. Supp. 2d 871 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008)...10, 30

17   *In re Praecis Pharm., Inc. Sec. Litig.,*
      No. 04-12581, 2007 WL 951695 (D. Mass. Mar. 28, 2007)................................36
18
     *In re Scottish Re Grp. Sec. Litig.,*
19     524 F. Supp. 2d 370 (S.D.N.Y. 2007) ..................................................................34

20   *In re Siebel Sys., Inc. Sec. Litig.,*
      No. C 04-0983, 2005 WL 3555718 (N.D. Cal. Dec. 28, 2005),
21     *aff'd sub nom, Wollrab v. Siebel Sys., Inc.,*
      261 F. App'x 60 (9th Cir. 2007).....................................................................24, 30
22
     *In re Silicon Storage Tech., Inc.,*
23     No. C 05-0295, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ............................34

24   *In re Splash Tech. Holdings, Inc. Sec. Litig.,*
      160 F. Supp. 2d 1059 (N.D. Cal. 2001)................................................................27
25
     *In re Splash Tech. Holdings, Inc. Sec. Litig.,*
26     No. C 99-00109, 2000 WL 1727377 (N.D. Cal. Sept. 29, 2000).........................44

27   *In re Tibco Software, Inc.,*
      No. C 05-2146, 2006 WL 1469654 (N.D. Cal. May 25, 2006)...............28, 41, 44
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

v                    CASE NO. SACV11-01404 AG (RNBX)
                     OMNIBUS REPLY ISO MTNS TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*In re Toyota Motor Corp. Sec. Litig.,*
   No. CV 10-922, 2011 WL 2675395 (C.D. Cal. July 7, 2011)..............................45

*In re Vantive Corp. Sec. Litig.,*
   283 F.3d 1079 (9th Cir. 2002),
   *abrogated in part on other grounds by S. Ferry LP, #2 v. Killinger,*
   542 F.3d 776 (9th Cir. 2008) ....................................................................9

*In re VeriFone Holdings, Inc. Sec. Litig.,*
   No. C 07-6140, 2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ...........................45

*In re VISX, Inc. Sec. Litig.,*
   Nos. C-00-0649, C-00-0815, 2001 WL 210481 (N.D. Cal. Feb. 27, 2001),
   *aff'd,* 298 F.3d 893 (9th Cir. 2002)..........................................................19

*Janus Capital Grp., Inc. v. First Derivative Traders,*
   131 S. Ct. 2296 (2011) ..............................................................................9

*Luxpro Corp. v. Apple Inc.,*
   No. C 10-03058, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011) ........................18

*Maiman v. Talbott,*
   No. SACV 09-0012, 2010 U.S. Dist. LEXIS 142712
   (C.D. Cal. Aug. 9, 2010)......................................................................32, 37

*Mallen v. Alphatec Holdings, Inc.,*
   No. 10-cv-1673, 2012 WL 987314 (S.D. Cal. Mar. 22, 2012) ...........................11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
   540 F.3d 1049 (9th Cir. 2008) ..............................................................9, 35

*Middlesex Ret. Sys. v. Quest Software, Inc.,*
   No. CV 065-6863, 2008 WL 7084629 (C.D. Cal. July 10, 2008).......................34

*Morris v. Smith Micro Software,*
   No. SACV 11-976 AG (ANx), slip op. at 10 (C.D. Cal. May 21, 2012) .............32

*No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,*
   320 F.3d 920 (9th Cir. 2003) ...................................................................28

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
   380 F.3d 1226 (9th Cir. 2004) ..................................................................38

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ...................................................................47

*Petrie v. Electronic Game Card Inc.,*
   No. SACV 10-00252, 2011 WL 165402 (C.D. Cal. Jan. 12, 2011).....................46

*Pittleman v. Impac Mortgage Holdings, Inc.,*
   No. SACV 07-0970, 2009 WL 648983 (C.D. Cal. Mar. 9, 2009),
   *aff'd, Sharenow v. Impac Mortgage Holdings, Inc.,*
   385 F. App'x 714 (9th Cir. 2010)....................................................8, 10, 25, 45

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

vi

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

*Plumbers Union Local No. 12 Pension Fund v. Ambassadors Group*,
  717 F. Supp. 2d 1170 (E.D. Wash. 2010)..............................................................33

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ...............................................................10, 30, 41

*S. Ferry LP, # 2 v. Killinger*,
  399 F. Supp. 2d 1121 (W.D. Wash. 2005),
  *vacated in part on other grounds*, 542 F.3d 776 (9th Cir. 2008) ...........22, 23, 24

*S. Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008). ..................................................................32, 33

*Silva v. U.S. Bancorp*,
  No. 5:10-cv-01854, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011).......................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................8, 35, 40, 42

*Wozniak v. Align Tech., Inc.*,
  No. C-09-3671, 2012 WL 368366 (N.D. Cal. Feb. 3, 2012)........................24, 28

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999) ...........................................................................30

*Zucco Partners v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ....................................................................passim


**Statutes**

15 U.S.C. § 78u-4(b)(1)....................................................................................8

15 U.S.C. § 78u-4(b)(1)(B)...............................................................................8

15 U.S.C. § 78u-5(c)(1)(A) .............................................................................42

15 U.S.C. § 78u-5(c)(1)(A)(i)..........................................................................43

15 U.S.C. § 78u-5(i)(1)(B) ..............................................................................28

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................7

Fed. R. Civ. P. 8 .............................................................................................18

Fed. R. Civ. P. 9(b)......................................................................................7, 30

Fed. R. Evid. 803(2) .......................................................................................18

Ninth Cir. R. 36-3...........................................................................................22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

vii

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

## I.      INTRODUCTION[1]

In their Omnibus Memorandum Of Points And Authorities In Opposition to Defendants' Motions To Dismiss First Amended Complaint ("Opposition" or "Opp."), Lead Plaintiffs perform an abrupt about-face.  Abandoning the FAC's central theory that HP misled investors because it in fact had no plan or commitment to develop webOS-based products at all, Plaintiffs now recast their claim, asserting that HP misled the market by falsely telling investors that it was committed to constructing an "entire ecosystem" of webOS connected products and "by repeatedly stating webOS PCs and printers would be developed and introduced *within a year*."  Opp. at 3 (emphasis in original).  Over and over, Plaintiffs refer to "the core allegation that Defendants misrepresented *when* webOS PCs and printers would be introduced."  *Id.* at 18 n.7 (emphasis in original); *see also, e.g.*, *id.* at 22 ("the Complaint alleges that Defendants' statements regarding when webOS printers or PCs would be introduced to the market was false"); *id.* at 25 ("Defendants falsely led the market to believe that HP was committed to expanding that ecosystem to include 'millions' of PCs and printers in a specific time frame of a year").  Thus, Plaintiffs acknowledge their claim is both entirely forward-looking and narrowly focused on HP's development of a subset of webOS products.

Plaintiffs' new theory is even more flawed and irrational than the theory advanced in the FAC – and refuted in Defendants' Motions to Dismiss – that HP was never "committed" to webOS or the TouchPad.  The Opposition implicitly concedes that the facts show that HP was committed to developing the TouchPad and other webOS-enabled devices.  *Id*. at 24-25.  But it now contends that Defendants' challenged statements – which span several months during an ongoing

---

[1] Capitalized terms in this Reply have the same meaning as in HP's Motion to Dismiss First Amended Class Action Complaint ("HP Br.") and the Memorandum of Points and Authorities in Support of Individual Defendants' Motion to Dismiss First Amended Class Action Complaint ("Ind. Br.").  Unless otherwise noted, all emphasis is added, and all citations are omitted.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

product development process – were all false, taken collectively, because Mr. Bradley and Mr. Apotheker allegedly promised in early 2011 that webOS would be on PCs and printers by the end of the year but had knowledge that that would be impossible.  They do not even attempt to make such a claim as to Ms. Lesjak.

The arguments advanced in the Opposition are meritless, and the FAC should be dismissed because:

*First*, nowhere in the FAC do Plaintiffs allege that Defendants ever promised webOS would be available on PCs and printers by a date certain.  Plaintiffs' arguments distort the actual statements at issue and instead advance unwarranted inferences based on broadly worded aspirations and goals – not guarantees.  Unfortunately for Plaintiffs, the law does not treat such goals as promises.  If it were otherwise, countless companies would be subject to securities fraud liability for common aspirational statements.  Such statements constitute nothing more than non-actionable puffery.

*Second*, even if some of Defendants' statements about the release of webOS on PCs and printers could be construed to suggest that Defendants promised to deliver them within a specific time frame, Plaintiffs fail to meet their burden of showing how these statements were false when made.  The development of webOS was an ongoing process, and Defendants' purported promises were made early in the putative class period.  Plaintiffs do not plead sufficient facts to show that at the time the supposed "promises" were made and development efforts were ongoing, the promises were unattainable.  The FAC relies on CW allegations for support of the alleged falsity, but those allegations lack the requisite foundation of personal knowledge and other critical details and are based on unreliable hearsay.

*Third*, the FAC does not adequately plead that the promises, to the extent any were made, were knowingly false.  The statements about putting webOS on PCs and printers in the future were forward-looking, and, therefore, Plaintiffs must

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

2

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    plead particularized facts showing *actual* knowledge that such statements were

2    false.  Instead, Plaintiffs concede just the opposite, arguing that "Defendants,

3    seeking to compete in the rapidly growing market for mobile, web-connected

4    devices, knowingly and recklessly made false statements that did not reflect the true

5    stage of development of those devices.  ***When it became apparent that reality***

6    ***could not catch up to their false pronouncements***, Defendants were forced to

7    disclose the truth."  *Id*. at 41 n.17.  By acknowledging that it was not "apparent"

8    until August 18, 2011 that "reality could not catch up" to their statements, Plaintiffs

9    have essentially conceded their inability to plead falsity (much less knowledge of

10   falsity).

11          That leaves Plaintiffs insisting that this Court must accept any theory they

12   advance (pled or unpled), regardless of how far-fetched.  Not so.  Under the

13   PSLRA, courts must dismiss complaints like this one whose fundamental premise is

14   irrational and unsupported by well-pleaded facts.  Plaintiffs contend that "[t]here is

15   nothing 'irrational' in the allegations that Defendants misled investors by

16   announcing a series of products that were not as developed as Defendants

17   represented them to be, so as not to lose competitive advantage."  *Id*. at 3.  But this

18   rationale makes no sense.  Plaintiffs do not even identify the "competitive

19   advantage" HP supposedly gained in the time period HP worked to develop webOS

20   products.  Nor do they allege that any Defendant had any financial or other motive

21   for misleading investors.  In short, having now conceded – as they must – that

22   Defendants *were* committed to the TouchPad and webOS phones, Plaintiffs offer no

23   plausible theory why Defendants would intentionally mislead the market for what

24   would necessarily be a very short period by promising webOS PCs and printers by

25   a date that they knew they could not meet.  The more cogent, compelling and

26   rational inference is that HP was working to develop all webOS products and was

27   forced to re-evaluate and ultimately change its plans based on the market reaction to

28   its initial webOS product launch.  Thus, the Opposition fails to demonstrate any

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

3                     CASE NO. SACV11-01404 AG (RNBX)
                     OMNIBUS REPLY ISO MTNS TO DISMISS

1    claim against any Defendant.

2         Certain flaws in the allegations against each Individual Defendant

3    particularly doom those claims.  Plaintiffs' attempt to lump all Defendants together

4    is improper.  With respect to Ms. Lesjak, the Opposition gives the impression that

5    she is not even a Defendant in this action – which is fitting, as she should not be.

6    Plaintiffs do not quote a single allegedly misleading statement she made because

7    her challenged statements are especially benign, forward-looking and ***do not***

8    ***mention PCs or printers at all, much less a specific time frame for release,*** i.e.*,*

9    Plaintiffs' core allegation.  Instead, the Opposition highlights just three allegations

10   pertaining to Ms. Lesjak:  she is HP's CFO, Opp. at 42, 43, 47; she attended a

11   single meeting in February or March 2011 at which webOS was discussed, *id*. at

12   31, 45; and she has stated that "we" monitor investments, *id*. at 44, 48.  These

13   allegations are patently insufficient to state a claim.

14        As to Mr. Apotheker, the Opposition takes his statements about the timing of

15   the release of webOS on PCs and printers out of context or misstates them entirely.

16   *Id*. at 23-24.  Described accurately, the FAC alleges that Mr. Apotheker did not

17   promise webOS-enabled PCs until ***2012,*** and made no representations about the

18   timing of the release of webOS-enabled printers whatsoever.  Ind. Br. at 13-14.

19   Besides failing to show any false statement by Mr. Apotheker, much less a knowing

20   one, Plaintiffs do not address the FAC's glaring omission of any possible motive,

21   financial or otherwise, for Mr. Apotheker to intentionally harm the company he was

22   charged with leading.  The best the FAC can muster is that Mr. Apotheker was

23   terminated after the webOS shut down, Opp. at 38, but this argument runs counter

24   to clear case law holding that such allegations do not support an inference of

25   scienter.

26        With respect to Mr. Bradley, the Opposition confirms Plaintiffs' inability to

27   plead facts (as opposed to bald conclusions or speculation) to support a strong

28   inference of scienter.  Thus, despite the theory that Mr. Bradley predicted in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

4

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

February 2011 that webOS products would be available by the end of that year, Plaintiffs point to no facts (from CWs or otherwise) showing that Mr. Bradley knew that his February 2011, March 2011 and July 2011 statements were false. Indeed, Plaintiffs' key argument as to the July statements is based on their "temporal proximity" to HP's eventual August 18, 2011 announcement. *Id*. at 28, 39-41. Yet that argument is both contrary to law and contradicted by the ***FAC itself***, which cites and explicitly relies on a news source stating that ***Mr. Bradley only learned of the decision to discontinue webOS on August 14, 2011***. ¶93, attached to the Declaration of Jennifer Bagosy ISO Omnibus Reply ("Bagosy Decl."), filed herewith, as Ex. 1; *see also* Supplemental RJN ISO Omnibus Reply ("Supp. RJN"), filed herewith.

## II.   PLAINTIFFS' FRAUD CLAIMS FAIL BECAUSE DEFENDANTS ONLY INDICATED AN INTENT TO PUT WEBOS ON PCS OR PRINTERS, NOT A PROMISE TO DO SO BY A SPECIFIC DATE

To determine whether Plaintiffs have adequately pled that Defendants made a series of materially false statements, the Court must first identify the challenged statements. Plaintiffs not only fail to plead adequately that the challenged statements were false when made for the reasons described below, but, as an initial matter, they fail to describe correctly the statements at issue. As Plaintiffs' Opposition reveals, their claims in fact hinge upon three (forward-looking) statements that they mischaracterize as commitments to market webOS PCs and printers by a date certain in 2011. *See, e.g.*, Opp. at 18, 20, 22-24, 40 (referring to ¶¶117, 139, 143):

1.   Paragraph 117 (February 9, 2011 statement by Mr. Bradley): "We have a commitment to extend the WebOS footprint even further as the year progresses, taking WebOS to other connected devices, including printers, some form factors you haven't seen before . . . ."; "as we introduce that WebOS to our

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

5

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    millions of PC customers later this year . . . ."[2]

2    2.    Paragraph 139 (March 14, 2011 statement by Mr. Bradley): "Next

3    year, we'll migrate tens of millions of web connected printers into the ecosystem."

4    3.    Paragraph 143 (March 14, 2011 statement by Mr. Apotheker): "There

5    will be a beta version for web OS running on a browser on PCs available at the end

6    of the year and you will see us putting web OS on the (inaudible) technology on

7    PCs, on Windows PCs I should add, starting from that point onwards."

8    Plainly, none of these statements promised that webOS PCs or printers would

9    be on the market by any specific date.  Rather, the first statement referred generally

10   to extending webOS to other devices "as the year progresses" and only mentioned

11   "introduc[ing] that WebOS to our millions of PC customers" without specifying

12   what form that introduction might take.  The second statement referred to putting

13   webOS on printers "[n]ext year," which would be 2012, *not* 2011 as Plaintiffs

14   contend.[3]  The third statement similarly referred only to a "beta version," i.e., a test

15   version, running on PCs at the end of 2011 with HP "putting webOS" on PCs

16   starting after that, i.e., at some point in *2012*.  Mr. Apotheker underscored this point

17   again on June 2, 2011 when, in response to a specific question from an analyst, he

18   gave 2012 – all twelve months of 2012 – as the date for releasing webOS on PCs.

19   He said nothing on June 2 about printers, as Plaintiffs assert.  Opp. at 40; ¶162.[4]

20   _____

21   [2] Plaintiffs refer to Mr. Apotheker's statement "in January 2011 that webOS for
     PCs would be available 'later' in 2011," Opp. at 24 n.10, but the FAC makes no

22   reference to statements by Mr. Apotheker in January 2011.  In addition, Plaintiffs
     argue that Mr. Bradley "announced HP's plans to extend webOS to PCs in January

23   2011," *e.g.*, Opp. at 20, but this statement was actually made in February 2011.

24   ¶117.

25   [3] Notably, nothing Mr. Bradley said after March 2011 could even arguably relate to
     the timing for putting webOS on PCs and printers.

26   [4] Accordingly, even if the Court accepted Plaintiffs' flawed view that any statement

27   in February or March 2011 provided a firm deadline, Mr. Apotheker's June 2011
     statement updated the market and informed investors that the deadline would be

28   2012, *not* 2011.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

6

The few statements that Plaintiffs attribute to Ms. Lesjak **do not even mention PCs or printers, much less a time frame for their release**.  ¶¶130-31, 153, 167-68.  Thus, Defendants never even told, much less promised, the market that webOS would be available on PCs and printers in 2011.

While Plaintiffs suggest that analysts' reactions show that the challenged statements represented a commitment, Opp. at 8, the FAC itself in fact shows the opposite.  One analyst report after the February 9, 2011 statement specifically noted that "HP did not provide a timeline for a PC version," ¶122, implicitly recognizing the general language Mr. Bradley used.  The Court need not accept Plaintiffs' characterization of language as making specific promises where it obviously does not.  *Gissin v. Endres*, 739 F. Supp. 2d 488, 506 n.102 (S.D.N.Y. 2010) (rejecting plaintiffs' characterization of defendants' statements because "[p]laintiffs' conclusory allegations cannot serve as a substitute for the facts, particularly when they are plainly contradicted by the record").  Accordingly, Defendants never made the specific promises that Plaintiffs now contend constitute the "core allegation" underlying their theory of liability.  Opp. at 18 n.7.

### III.   PLAINTIFFS FAIL TO SHOW THAT DEFENDANTS' STATEMENTS WERE FALSE WHEN MADE

Even if Defendants' broad aspirational statements were somehow read to suggest a commitment to a specific time frame, claims based on those statements should still be dismissed.  As demonstrated, Plaintiffs do not adequately plead facts showing that those – or any other – challenged statements were false when made.

### A.   Plaintiffs Must Allege Particularized Facts

Plaintiffs mischaracterize the relevant pleading standards, suggesting that satisfying the standards under Federal Rule of Civil Procedure 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is sufficient.  Opp. at 4-5.  In addition to alleging a plausible claim, however, Plaintiffs must meet both Federal Rule of Civil Procedure 9(b)'s

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

7

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    particularity requirement and the PSLRA's more "[e]xacting pleading

2    requirements." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313

3    (2007).  Thus, while Plaintiffs contend that they need not provide detailed factual

4    allegations, this Court in *Pittleman v. Impac Mortgage Holdings, Inc.*, No. SACV

5    07-0970, 2009 WL 648983, at *2 (C.D. Cal. Mar. 9, 2009), *aff'd, Sharenow v.*

6    *Impac Mortgage Holdings, Inc.*, 385 F. App'x 714 (9th Cir. 2010), as well as the

7    Ninth Circuit and the Supreme Court, require pleading specific facts demonstrating

8    falsity as well as specific facts showing a strong – not merely plausible – inference

9    of scienter in securities fraud cases. HP Br. at 7, 25-26; *see also* 15 U.S.C. § 78u-

10   4(b)(1).

11        Plaintiffs also contend that they may allege falsity collectively.  Opp. at 3

12   ("Viewing those allegations ***collectively***, the Complaint amply establishes the

13   falsity of Defendants' statements"), 20 ("Viewed ***collectively***, these allegations

14   sufficiently plead" falsity) (emphasis on p. 20 in original).  To the contrary, the law

15   requires that the falsity of ***each*** challenged statement be established individually.

16   Plaintiffs have apparently confused the standards for material false statements and

17   scienter.  While scienter allegations concerning a particular Defendant should be

18   considered both individually and collectively, *Tellabs*, 551 U.S. at 326, no such rule

19   applies to falsity, which requires specific facts showing why each challenged

20   statement was false when made.  15 U.S.C. § 78u-4(b)(1)(B) (requiring plaintiff to

21   "specify each statement alleged to have been misleading, [and] the reason or

22   reasons why the statement is misleading"); *see also Beaver Cnty. Ret. Bd. v. LCA-*

23   *Vision, Inc.*, No. 1:07-CV-750, 2009 WL 806714, at *9 n.7 (S.D. Ohio Mar. 25,

24   2009) (rejecting assertion that the court must consider all falsity allegations

25   collectively; "[t]he *Tellabs* quote on which Plaintiff relies pertains to the scienter

26   prong of the PSLRA requirements, ***not the misleading statements prong***").  Thus,

27   Plaintiffs' "collective" approach to establishing falsity does not comport with the

28   PSLRA's standards.  Under the PSLRA, "[a] litany of alleged false statements,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

8

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    unaccompanied by the pleading of specific facts indicating why those statements

2    were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colls.,*

3    *Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

4         Just as falsity cannot be shown collectively, the Individual Defendants cannot

5    be treated as a collective unit under the "group pleading" doctrine.  Plaintiffs in fact

6    concede this point, agreeing that group pleading "is of no import here" because

7    "corporate statements are not being attributed to Individual Defendants that have

8    not personally made" statements, Opp. at 37, thereby disavowing any effort to hold

9    the Individual Defendants responsible for statements they did not make.  Thus, each

10   Individual Defendant's primary liability can only relate to the specific statements

11   that he or she actually made, not statements made by others.  *Janus Capital Grp.,*

12   *Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299 (2011) ("We conclude that

13   JCM cannot be held liable because it did not make the statements in the

14   prospectuses.").  Plaintiffs fail to meet that standard.  Ind. Br. at 2.

15        **B.      Plaintiffs Fail To Identify How Statements About The Ongoing**

16                **webOS Development Process Were False When Made**

17        Most of the facts upon which Plaintiffs rely in an attempt to establish the

18   purported negative "truth" behind each of the allegedly false statements do not

19   include the critical element of timing.  Thus, even if the Court were to credit the

20   alleged problems HP experienced with webOS development – which, for the

21   reasons discussed in the Motions to Dismiss and herein, the Court should not do –

22   Plaintiffs still fail to allege adequately that the supposed problems existed at the

23   time each statement was made or that those problems made the forward-looking

24   statement false when made.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086

25   (9th Cir. 2002), *abrogated in part on other grounds by S. Ferry LP, #2 v. Killinger*,

26   542 F.3d 776 (9th Cir. 2008) ("[A]lthough the complaint alleges that over the

27   fifteen-month class period, [defendant] continually and deliberately misled

28   investors by stating that its sales-cycle was 'holding steady at three to six months,'

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

9                              CASE NO. SACV11-01404 AG (RNBX)
                               OMNIBUS REPLY ISO MTNS TO DISMISS

much of the complaint fails to allege any facts to indicate why this statement would have been misleading at the several points at which it was alleged to have been made."); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352, 2012 WL 1131684, at *21 (C.D. Cal. Jan. 13, 2012); *Pittleman*, 2009 WL 648983, at *3.

When alleging falsity based on problems encountered in the process of product development, it is critical that Plaintiffs show that *at the time each statement was made*, "the problems were so large and insurmountable that the statement was false." *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 895 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008); *see also City of Roseville Emps. Ret. Sys. v. Nokia Corp.*, No. 10 CV 00967, 2011 WL 7158548, at *9 (S.D.N.Y. Sept. 6, 2011) (holding that "Plaintiff has alleged insufficient facts about the timing and significance of the alleged software problems to demonstrate that the omission rendered the statements false or misleading"); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1348 (S.D. Cal. 1998) (cited in Opp. at 10) (granting motion to dismiss explaining that vague statements of optimism were not actionable absent facts that the company "had encountered any insurmountable problems, or the problems were of such magnitude that Defendants knew the projected release dates to be unrealistic, or any other fact that would undermine the tentative and vague nature of these statements").[5]

Thus, it is not enough simply to argue, as Plaintiffs do here, that the HP teams working on webOS for PCs and printers were "small."  Opp. at 2.  Rather, putting aside their mischaracterization of statements, *see* § II, *supra*, Plaintiffs must

---

[5] Plaintiffs assert that "allegations of specific problems undermining a defendant's optimistic claims suffice to explain *how* the claims are false."  Opp. at 5 n.3 citing *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (emphasis in original). *Fecht*, however, was decided pre-PSLRA, and later decisions have held that the existence of problems alone is insufficient to show that forward-looking statements were false when made.  *See, e.g.*, *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Problems and difficulties are the daily work of business people.  That they exist does not make a lie out of any of the alleged false statements.").

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Irvine

10

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

show that as of February 2011, whatever these teams were doing made it "insurmountable" that webOS could be "introduc[ed]" to PCs by the end of 2011. Similarly, Plaintiffs must show that as of March 2011, there were "insurmountable" problems with putting webOS on printers in 2012 or running a "beta version" on PCs by the end of 2011 – nine months away.  Plaintiffs fail to do so.  To the contrary, the allegations in the FAC suggest that HP was making progress in that arena.

As described below, neither CW1 nor CW2 is a reliable source for the FAC's averments about HP's efforts to develop webOS for printers and PCs.  Even if they were, however, the essence of their allegations is that no written plan and only small development efforts existed when Mr. Bradley and Mr. Apotheker made the three challenged statements about putting webOS on PCs and printers.  ¶¶70-72, 75-76.  That is not enough to establish fraud.  Significantly, neither CW1, CW2, nor any other source show how the allegation that no specific plan existed as of February or March 2011 meant the challenged statements were false when made.  CW1 contends that it takes "at least a year from concept to delivery" of "a product that eventually could be sold."  ¶70.  Therefore, the February and March 2011 statements were entirely consistent with a development process that was in its early phases, but would be producing "beta versions" to "introduc[e]" webOS to PCs in nine to ten months, with a product to be sold coming later.  Notably, in June 2011, Mr. Apotheker was unequivocal that webOS would not be available on PCs until sometime during 2012, possibly the twelfth month of 2012 – a time frame entirely consistent with CW1's assertions about the state of development when he left the Company in July 2011, ¶63, and with his assertions about how long development takes.  *Mallen v. Alphatec Holdings, Inc.*, No. 10-cv-1673, 2012 WL 987314, at *13 (S.D. Cal. Mar. 22, 2012) (finding that plaintiffs failed to show a statement to be misleading where "even assuming [the company] was experiencing integration delays at the time, that fact is not inconsistent with [the company's statement]").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

11

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

**C.**   **Plaintiffs Fail To Show That Any Problems With The TouchPad Were So Large And Insurmountable As To Render Statements About That Product False When Made**

Plaintiffs appear to have abandoned their claims relating only to the TouchPad and focus their challenges on statements about HP's "ecosystem," specifically the timing of putting webOS on PCs and printers.  Opp. at 24. Plaintiffs specifically concede that "[t]he Complaint does not allege, as Defendants assert, that HP was not committed to developing the TouchPad *in isolation*."  *Id*. at 24 (emphasis in original).  This concession alone should result in dismissal of any claims relating to statements about the TouchPad.

Nevertheless, Plaintiffs argue that flaws in the TouchPad rendered certain challenged statements false.  *Id.* at 25.  These arguments should be rejected because, as discussed below,[6] they are based on unreliable CWs, and because the allegations about supposed problems with the TouchPad (even if credited as reliable) do not show falsity.  For example, Plaintiffs never respond to Defendants' argument that the FAC lacks any facts showing what supposed bugs still existed at the time of the TouchPad's release, other than the alleged "Wi-Fi bug."  *See, e.g., Silva v. U.S. Bancorp*, No. 5:10-cv-01854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'").  Even as to the "Wi-Fi bug," Plaintiffs have no response to their failure to plead facts showing how or when it was addressed, HP. Br. at 15-17, nor, as discussed below, do Plaintiffs have any response to CW2's lack of personal

---

[6] Plaintiffs contend that CW1 is a reliable source as to alleged software bugs affecting the TouchPad, Opp. at 25-26, but CW1 did not provide any averments about any particular problems with the TouchPad, just the general assertion that the software was not ready because they did not have enough time or resources.  ¶81.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

12

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   knowledge as to any impact of the "Wi-Fi bug" on TouchPad sales.  Nor do

2   Plaintiffs provide any authority supporting their position that the mere release of a

3   software update – a routine occurrence for such products – constitutes an

4   acknowledgement of flaws or even set forth what supposed problems the software

5   update addressed.  Opp. at 26.  Defendants never argued that the update was a

6   "concession of flaws," *id.*; that language in the HP Brief described Plaintiffs'

7   erroneous position.  Ultimately, Plaintiffs' arguments on the TouchPad distill to the

8   contention that the TouchPad was a flawed product rushed to market.  *Id.*  Such a

9   contention depends entirely upon unsupported opinions from unreliable CWs, not

10  specific facts showing falsity.

### D.  Plaintiffs Cannot Rely On The CWs To Show That Statements Were False When Made

13  Plaintiffs do not contest that courts reject unreliable CW statements and grant

14  motions to dismiss when those statements lack a proper foundation.  Nor do they

15  dispute Defendants' argument that the CWs' allegations should be rejected to the

16  extent they consist of the CWs' personal opinions.  Plaintiffs thus implicitly

17  acknowledge they must demonstrate falsity based on particularized facts of which

18  the CWs have personal knowledge – facts that are entirely missing from the FAC.

19  Arguing that the CWs corroborate each other, Opp. at 29, does not save

20  Plaintiffs' claims.  A "shared opinion" is irrelevant where a plaintiff fails to plead

21  the requisite particularity and personal knowledge.  *In re Metawave Commc'ns*

22  *Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1070 (W.D. Wash. 2003).  Likewise, the

23  project roadmap CW1 mentions does not bolster the CWs' reliability.

24  Documentary evidence only corroborates CW testimony when the documents

25  "'provide an adequate basis for believing that the defendants' statements were

26  false.'" *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  The

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

13

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1  roadmap is undated, the author is unidentified,[7] and the FAC does not plead who or

2  even which group created the document.

3      Plaintiffs assert several arguments to meet the relevant standard, none of

4  which is persuasive.

**1.    The CWs Lack Sufficient Personal Knowledge To Be**

**Reliable Witnesses**

7      Plaintiffs' contention that the CWs possess adequate personal knowledge,

8  Opp. at 30-32, misconstrues the challenges raised by Defendants.  The FAC does

9  not establish that any of the four CWs are reliable.  With respect to CW1, while the

10 FAC alleges that CW1 had at least some personal knowledge of webOS and the

11 TouchPad, it fails to aver that CW1 had the required personal knowledge of the

12 ongoing status of the *PC and printer projects*, which were handled by other

13 departments and for which others apparently acted as liaisons.  Plaintiffs offer no

14 response.  *Id*. at 30.  The allegation that CW1 was the guardian of the code (which,

15 incidentally, he only asserts the *printer* group did not possess, *compare* ¶¶70-71

16 *with* ¶72) does not demonstrate CW1's personal knowledge of the day-to-day status

17 of projects in the PC or printer group.  *Zucco*, 552 F.3d at 996 (confidential witness

18 lacked personal knowledge of the company's accounting practices where he did not

19 work in the finance department).

20     Plaintiffs contend that CW2 corroborates CW1, but CW2 also lacks personal

21 knowledge to support his testimony.  Now cornered, Plaintiffs suddenly speculate

22 that CW2 "would have known of product development plans that were critical to

23 sales and marketing strategies," Opp. at 31, but provide no support for this newly

24 stated conjecture.  *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, No. MDL

25

26 [7] Although Plaintiffs contend Defendants engage in "implausible speculation" by
assuming the roadmap is a Palm GBU document, Opp. at 21, they contradict
27 themselves in another part of the Opposition when they state that the FAC alleges
the roadmap "contained financial analytics and projections *for each planned Palm
28 GBU product*."  *Id*. at 19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

14

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

11-2302, 2012 WL 1983341, at *12 n.16 (C.D. Cal. May 31, 2012) (court need not consider new facts in opposition).  Nor do Plaintiffs rebut the fact that because CW2 did not join the Palm GBU department until late June 2011, ¶¶73, 76, his statements about prior events regarding webOS are *all* based on hearsay, not personal knowledge.  Even after June 2011, Plaintiffs do not explain how CW2 had personal knowledge of anything beyond commercial accounts.

As to CW3, the Senior Vice President of Hardware Engineering who was "responsible for webOS *hardware*," ¶82, Plaintiffs speculate he must also have had personal knowledge of the status of webOS *software* development.  Opp. at 31. The FAC does not plead that CW3 had any responsibility for software development – let alone knowledge of its day-to-day status.  Plaintiffs argue that CW3 reported to webOS "visionary" Mr. Rubinstein, who had responsibility for both hardware and software.  *Id.*  But the scope of Mr. Rubinstein's responsibilities, whatever they were, cannot establish the scope of CW3's personal knowledge.  Plaintiffs also ask this Court to assume, *id.* at 31, without any supporting allegations in the FAC, that CW3 would have had access to, and availed himself of, information regarding not only software development, but marketing data as well.  *Crosbie v. Endeavors Techs., Inc.*, No. SA CV 08-1345, 2009 WL 3464135, at *3 (C.D. Cal. Oct. 22, 2009) ("Nor should the court countenance 'new' facts alleged for the first time in opposing papers.").  The assertion that CW3 has additional personal knowledge not mentioned in the FAC is an underlying fact that cannot be pled in Plaintiffs' Opposition.  Lastly, Plaintiffs contend that CW4 corroborates CW3's testimony about a Sunday meeting, Opp. at 31-32, but gloss over the fact that CW3's description of this meeting lacks critical information (such as the month in which the meeting occurred, or whether anyone responded to Mr. Apotheker's deadlines) – information that CW4, who did *not* attend the meeting, cannot provide. Moreover, all Mr. Apotheker purportedly said at that meeting is that he would "shut it down" if "it" was not working by the end of the year, hardly an indication that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

15

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

schedule was not attainable.

Finally, Plaintiffs ask the Court to infer CW4's personal knowledge based on various allegations about different scattered events. For example, Plaintiffs point to the facts that CW4 attended Sunday meetings, reported to CW1 and interacted with Mr. Rubinstein. *Id.* at 32. But Plaintiffs fail to explain how these limited facts provide sufficient basis for CW4's sweeping pronouncements, such as what was important to Mr. Apotheker. Plaintiffs cannot save CW4 by contending that his statements are corroborated by others' allegations about software bugs or by statements by Mr. Apotheker about his involvement, *id.* at 32, because those statements add nothing to CW4's speculation.

### 2. Defendants Raised Obvious Flaws With Plaintiffs' Inferences Based On Facts In The FAC; They Have Not Raised Factual Challenges

Plaintiffs mistakenly contend that Defendants raise factual disputes in their Motions to Dismiss. *Id.* at 33. HP simply noted, based on the facts pled, that the CWs lacked personal knowledge about events that did not occur during the time that they worked in certain positions and therefore could not support arguments or inferences based on supposed events when they were not there. HP Br. at 19-22. Thus, for example, CW1 is not a reliable source for any events that occurred after he left HP in July 2011. Contrary to Plaintiffs' assertion, *Downey* does support Defendants' argument, Opp. at 34 n.14, because *Downey* expressly holds that "CW10 and CW20 have no basis to opine about Downey's underwriting or lending practices after they left the company." *In re Downey Sec. Litig.*, No. CV 08-3261, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009). The fact that the CWs in *Downey* left before the start of the putative class period does not alter the holding that CWs cannot speak to post-departure events, even if they were at HP for part of the putative class period.

Similarly, it is undisputed that CW2 did not work for the Palm GBU until

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

16

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

June 2011 and that the roadmap was not prepared until spring 2011.  Thus, until CW2 worked at the Palm GBU, he is not a reliable source for what happened there. The roadmap cannot be used to show that statements made before its creation were false.  These are straightforward timing issues, not factual disputes.

Further, with respect to CW3, Plaintiffs' conclusory allegation that the "thing" to which Mr. Apotheker allegedly referred in February or March 2011 ("If this thing is not working by the end of the year I'm gonna shut it down," ¶82) related to webOS as a whole, and not just the TouchPad, Opp. at 33, makes no sense.  The FAC states that "[a]t this meeting [where the statement was purportedly made], Apotheker imposed many deadlines leading to *release of the TouchPad* that CW3 viewed as plainly unattainable.  According to CW3, Bradley and Rubinstein agreed to these deadlines in order to appease Apotheker."  ¶82.  As pled in the FAC, the statement was clearly made with respect to the TouchPad.[8]  The fact that Plaintiffs then draw the unsupported inference that Mr. Apotheker was "[r]eferring to webOS" more generally is not even plausible.  Thus, these issues go to the heart of the strength of the inferences that may be drawn based on the CWs' statements; they are not factual disputes.  The Court should focus on what Defendants and the FAC said, not on Plaintiffs' mischaracterizations and unwarranted assumptions.

### 3.    The CWs Improperly Rely On Hearsay

Plaintiffs do not dispute that their CWs report hearsay, which the Ninth Circuit has held is unreliable and insufficient under the PSLRA.  *See, e.g.*, *Zucco*, 552 F.3d at 998 n.4.  In response to the weight of authority against hearsay, Plaintiffs cite *In re Cadence Design Systems, Inc. Securities Litigation*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010).  In *Cadence,* however, the court noted that "[t]he credibility of

---

[8]  The FAC references this statement again in paragraph 12, but this time paraphrases it, stating that "Apotheker decreed internally that he would 'shut down' the entire webOS program if it was not 'working out by the end of the year.'"  ¶12. As is clear from the more specific paragraph 82, Mr. Apotheker was referring to the TouchPad alone.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

17

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

CW12 is problematic," precisely because his statements were "most likely hearsay." *Id*. at 1188. As a result, the court did not simply accept the CW's testimony. Rather, the court held that the CW's allegations "should not be entirely discounted," but only because plaintiffs had submitted a declaration from the CW that persuaded the court that the CW "had access to reliable information about Cadence's activities." *Id*. at 1188-89. Plaintiffs offer no similar indicia of reliability here. *Luxpro Corp. v. Apple Inc.*, No. C 10-3058, 2011 WL 3566616, at *3 (N.D. Cal. Aug. 12, 2011), is also distinguishable because the court held there that hearsay allegations were sufficient only to support the plaintiff's non-securities claims, which were subject to the pleading standard of Federal Rule of Civil Procedure 8 and did not require heightened pleading.

In addition, Plaintiffs argue that the matters reported by the CWs should not be considered hearsay because they are "excited utterances." Opp. at 35-36. Neither CW1's statement that he observed others' reactions of "surprise and horr[or]," ¶64, nor CW2's statement that there was a "strong reaction" within his team, ¶75, are "excited utterance[s]" because no "utterance" was pled. Fed. R. Evid. 803(2) (an excited utterance is "[a] statement relating to a startling event or condition."). Indeed, the heart of the problem with these allegations is that the CWs fail to say what, exactly, their team members said (a "strong reaction" could mean anything, and "were surprised and horrified" could refer to facial expressions rather than statements). This is the reason courts reject CW allegations based on hearsay – not necessarily based on technical hearsay rules, but because such averments lack sufficient facts to be reliable. *Zucco*, 552 F.3d at 997-98 (rejecting confidential witness's hearsay testimony that "some employees were upset about their time being reassigned," and that officers "munged" financials); *Downey*, 2009 WL 2767670, at *10 (rejecting as hearsay confidential witness statements about employees, bragging). Thus, Plaintiffs' other evidentiary arguments, including that these are "present sense impressions," fail because Plaintiffs have not sufficiently

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

18

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    established the reliability of their witnesses.

2    **E.**     **Temporal Proximity By Itself Does Not Establish Falsity**

3       Without documents or CWs to demonstrate falsity, Plaintiffs resort to the

4 contention that the temporal proximity between certain challenged statements and

5 the ultimate decision by HP to change course with respect to webOS shows the

6 statements were false when made. Opp. at 28-29. Plaintiffs' reasoning lacks merit.

7       Factually, the argument fails because it ignores Plaintiffs' own assertion that

8 the "core allegation" for their claim is the statements about the timing of putting

9 webOS on PCs and printers. Those statements were made in February and March

10 2011, *five to six months* before the August 18, 2011 announcement. Plaintiffs refer

11 to a statement by Mr. Bradley in July 2011, *id.* at 28 citing ¶177, but that statement

12 says nothing about the timing for webOS on PCs and printers. It merely notes HP's

13 "intention to enable all of our PC users to access their WebOS environment, their

14 applications on their PCs." ¶177. There is no commitment to timing here.

15 Plaintiffs' argument is also inconsistent with their own theory that the August 19

16 announcement was made only after HP supposedly realized that its development

17 efforts "could not catch up" to the earlier optimistic statements. Opp. at 41 n.17.

18       Legally, Plaintiffs acknowledge – as they must – that temporal proximity

19 without more is insufficient to plead falsity. Opp. at 28-29. Yet that is all they

20 offer. Based on HP's supposed "abrupt reversal, viewed collectively with the

21 Complaint's other allegations," as well as a supposed "implied acknowledgement"

22 in the August 18, 2011 press release, which only mentioned the TouchPad and

23 webOS phones, Plaintiffs seek to draw an "inference" that "there were never any

24 webOS PCs or printers in meaningful development." *Id.* at 28-29. But the facts on

25 which Plaintiffs base their "inference," *id.*, are insufficient to satisfy the legal

26 standard. *See, e.g.*, *In re VISX, Inc. Sec. Litig.*, Nos. C-00-0649, C-00-0815, 2001

27 WL 210481 at *10 (N.D. Cal. Feb. 27, 2001), *aff'd*, 298 F.3d 893 (9th Cir. 2002)

28 (rejecting plaintiffs' argument that temporal proximity supported falsity where they

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Irvine

19

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

pled no facts showing company had made decision before it was announced).

Arguments based on the supposed "abrupt reversal" constitute nothing more than impermissible fraud by hindsight.  As described above, the FAC lacks particularized facts showing that no "meaningful development" had occurred on webOS for PCs and printers.  Moreover, even if no "meaningful development" had occurred as of July 2011, that would not render statements made in February or March 2011 false when made.  Nor would it show Mr. Bradley's July 2011 statements were false when made, since he said nothing about timing.  Mr. Bradley simply noted HP's intention to extend webOS to PCs, and Plaintiffs have conceded that such development was occurring.  The omission of PCs and printers from the August 18, 2011 press release demonstrates nothing about their development; the more plausible and rational inference to be drawn is that HP only discussed products that were on the market and ***not*** that no other products were in development.

## F.   Generalized Positive Statements About webOS Are Inactionable Puffery

Plaintiffs also challenge Defendants' position that generalized positive statements about webOS and the TouchPad are inactionable puffery.  Opp. at 6-11.  Their arguments should be rejected.  As a threshold matter, the Opposition does not dispute that certain statements made on March 14, 2011, May 17, 2011, July 6, 2011 and July 11, 2011 are inactionable statements of optimism and puffery.  *Id.* at 7 (failing to respond to Defendants' arguments regarding ¶¶146, 153, 171, 173-74).  Thus, this Court must dismiss all claims based on those statements.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

Nor does the Opposition challenge that the statements Defendants identify as puffery are, on their face, "vague, generalized assertions of corporate optimism."  *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008); *see also* HP Br. at 8-10.  Indeed, as to Ms. Lesjak, the Opposition does

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

20

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

not even quote any of her challenged statements in its puffery section, presumably because her cursory remarks are quintessentially the kinds of soft statements that are not actionable.  Likewise, certain of the statements Plaintiffs now point to as promising webOS PCs and printers in 2011 (discussed in § II, *supra*) are so broadly worded, so general, and so clearly aspirational, as to constitute non-actionable puffery.  *Compare, e.g.,* ¶117 ("[w]e have a commitment to extend the WebOS footprint even further as the year progresses…") *with Am. Apparel,* 2012 WL 1131684, at *20 (holding that statements like "committed to" are not actionable because they "indicate[] that the company was articulating goals it was trying to meet, not making factual statements about [] current status.").  No reasonable investor would have viewed general aspirational statements about the timing for putting webOS on PCs and printers as definite promises.

Instead, Plaintiffs identify two types of generalized positive statements that they insist are actionable: (1) "statements regarding webOS's 'future and opportunity' and the purported webOS 'ecosystem'"; and (2) the positive statements "we will not release a product that isn't perfect," ¶158, and "webOS is ready for prime time," ¶161.  Opp. at 7, 10.  Plaintiffs contend that facts immediately preceding or following the generalized statements can somehow make them actionable, *id.* at 7, and that internal reports about problems make these statements actionable.  *Id.* at 8.  Neither assertion withstands scrutiny.

1.    **No Facts Preceding Or Following The Defendants'**
       **Generalized Optimistic Statements Render Them**
       **Actionable**

As an initial matter, Plaintiffs rely on outdated and/or distinguishable case law.  They lead with an unpublished, non-citable, pre-PSLRA opinion issued twenty-one years ago.  Opp. at 6 citing *Beloit Corp. v. Emett & Chandler Cos., Inc.*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

21

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

No. 90-55154, 1991 WL 153459 (9th Cir. Aug. 14, 1991).[9]  Plaintiffs then cite

*South Ferry LP, # 2 v. Killinger*, 399 F. Supp. 2d 1121, 1130 (W.D. Wash. 2005),

*vacated in part on other grounds*, 542 F.3d 776 (9th Cir. 2008), for the proposition

that the statements are not actionable if they are "either immediately preceded or

followed by very specific statements of fact that supposedly justify or supply a

foundation for the optimism."  Opp. at 6.  In *South Ferry*, however, the company's

statement about integration was accompanied by specific and detailed historical

facts that "highlighted the importance of [defendant's] ability to integrate its

acquisitions."  *S. Ferry*, 399 F. Supp. 2d at 1130.  Specifically, the court found that

a general positive statement was not puffery because the very next sentence stated

that there were "currently . . . nine different loan origination systems in our

mainstream home lending channel."  *Id.*

Notwithstanding Plaintiffs' attempted characterization, Opp. at 7-8 citing

¶¶117, 130, 139, 143, the statements at issue here are not historical facts, but rather

announcements about products HP planned to introduce that were not yet on the

market and alleged expressions of optimism regarding the timing of development

for those products.  For example, Plaintiffs suggest that Mr. Apotheker's statements

in paragraph 143 – that "the devices we have been able to put on display on

February 9 have in themselves a certain set of characteristics that make them

unique" and that "[t]here is interconnectivity, the fact that they are seamless, they

connect seamlessly to each other" – somehow support their claims regarding PCs

and printers.  Opp. at 7-8.  But these statements quite clearly reference the "devices

. . . put on display on February 9," which were the TouchPad and other webOS

portable devices.  The statements have nothing to do with printers and PCs.

Particularly baseless is the argument as to Ms. Lesjak's statement.

---

[9]  Pursuant to Ninth Circuit Rule 36-3, such unpublished opinions issued before
January 1, 2007 may not be cited except in limited circumstances involving, for
example, claim preclusion, double jeopardy or requests to publish an opinion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

22

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   Ms. Lesjak generally referenced "other devices" or "device solutions" without

2   stating when application of webOS to other devices would occur or what the

3   specific devices might be.  Ind. Br. at 34-35.[10]  Her reference to the TouchPad

4   announcement and the fact that HP was in the process of working with developers

5   hardly transforms into fraud her aspirational statement that "**over time**" webOS

6   "**will redefine the user experience.**"  Contrary to Plaintiffs' arguments, Opp. at 7,

7   and in contrast to the "very specific statements of fact" in *South Ferry* – which, in

8   context, seemed to warrant future success, 399 F. Supp. 2d at 1130 – Ms. Lesjak's

9   statements highlighted the new and developing nature of the webOS venture.

10          These statements do not describe HP's historical experience in a particular

11   area, and the Court should reject Plaintiffs' efforts to characterize examples of

12   products HP intended to roll out in the future as part of its webOS ecosystem as a

13   promise to deliver webOS enabled PCs and printers or any other product.  Plaintiffs

14   have pled no specific facts concerning the webOS "ecosystem," the hopes for the

15   TouchPad, or the timing of webOS PCs and printers that would supply a foundation

16   for treating the statements about timing as anything other than puffery.

17          Even assuming that these statements could be considered "historical facts,"

18   they do not immediately precede or follow the generalized statements Plaintiffs

19   challenge and are often taken out of context.  Opp. at 8.  Indeed, in some instances

20   Plaintiffs rely on alleged statements of "historical facts" that Defendants actually

21   made months apart from the statements in question.  *Compare, e.g.*, ¶117

22   (Plaintiffs' purported statement of historical fact made on February 9, 2011) *with*

23   ¶177 (generalized positive statement made on July 20, 2011).  Even when the

24   supposed statement of "historical fact" was at least made on the same day as the

25   generalized positive statement, it often did not immediately precede or follow the

26   statement and may not have even been made by the same individual.  *Compare*

27

28

---

[10]  Plaintiffs' failure to address these arguments concedes the weakness of their
claims against Ms. Lesjak.  *See, e.g.*, *Metawave*, 298 F. Supp. 2d at 1090.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

23

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   ¶128 (statement by Mr. Apotheker in a February 22 analyst call) *with* ¶130

2   (statement of alleged "historical fact" from Ms. Lesjak, which appears later in the

3   call).  Accordingly, such statements are not actionable under *South Ferry*, even if

4   its reasoning applied.

5         **2.**     **No Facts Show That Development Problems Contradicted**

6                **The Challenged Generalized Positive Statements**

7       The type of facts upon which Plaintiffs rely to show development problems

8   relate solely to the TouchPad, Opp. at 10, and thus do not create liability as to

9   optimistic statements about webOS overall.  Even as to the TouchPad alone, the

10   facts relate to a few development delays and opinions by CWs about flaws with the

11   product.  Opp. at 10-11.  As noted in § III(D), *supra*, the CWs' personal views are

12   not an adequate basis for imposing liability, and the CWs lack personal knowledge,

13   reliability and requisite facts for their criticisms of the TouchPad.

14       Moreover, for the reasons set forth above and in the Motions to Dismiss, the

15   alleged issues with the TouchPad do not show "insurmountable problems" with the

16   product at the time the positive statements were made.  The *Wozniak* court rejected

17   a claim that puffery was actionable because of CW allegations showing, *inter alia*,

18   negative feedback about an unreleased product, and an assertion that a CW

19   "personally informed [the CEO] that [the product] could not be launched" on the

20   timetable projected by the company – allegations very similar to the ones relied

21   upon by Plaintiffs here.  *Wozniak v. Align Tech., Inc*., No. C-09-3671, 2012 WL

22   368366, at *5-6 (N.D. Cal. Feb. 3, 2012).  Indeed, if the type of vague problems

23   described by Plaintiffs were sufficient to create liability as to products under

24   development, it would have a chilling impact on aspirational comments by all

25   companies.  *In re Siebel Sys., Inc. Sec. Litig*., No. C 04-0983, 2005 WL 3555718, at

26   *4 (N.D. Cal. Dec. 28, 2005), *aff'd sub nom*, *Wollrab v. Siebel Sys., Inc*., 261 F.

27   App'x 60 (9th Cir. 2007) ("That a new program has kinks does not make a positive

28   statement about the program false.  If that were the case, the federal securities laws

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

24

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   would prevent software companies from making any positive statements about new

2   software.").

3        Mr. Apotheker's statements, for example, that "we will not release a product

4   that isn't perfect," ¶106, and "webOS is ready for prime time," ¶161, are ***precisely***

5   the type of puffery that investors properly take with a grain of salt.  It is simply not

6   plausible to assert that when a CEO says a product will be "perfect," investors

7   believe he literally means without flaw of any kind.  To that end, as explained in the

8   moving papers, courts have rejected securities fraud claims based on strikingly

9   similar language.  Ind. Br. at 7-8.

10       Plaintiffs' citation of *In re Apple Computer Securities Litigation*, 886 F.2d

11  1109 (9th Cir. 1989), for the proposition that statements of optimism about a

12  forthcoming product can be actionable if the complaint identifies problems in

13  development of the product is likewise inapposite.  Opp. at 9-10.  *Apple* says

14  nothing about puffery, nor does it even provide any guidance about what must be

15  pled to survive a motion to dismiss under the PSLRA.  Rather, *Apple* was decided

16  on a summary judgment motion years before the passage of the PSLRA, which

17  substantially raised the pleading bar.  *Pittleman*, 2009 WL 648983, at *2.  To the

18  extent *Apple*'s analysis of the evidence on summary judgment has ***any*** relevance to

19  the arguments about puffery in this case, it supports Defendants' position that

20  positive statements about a product in development are only actionable if facts

21  demonstrate that "significant" problems affecting the product and its development

22  timeline existed at the time of the positive statements.  *Apple*, 886 F.2d at 1115.

23  Indeed, in another case on which Plaintiffs rely, *Allison*, cited in Opp. at 10, the

24  court granted the motion to dismiss because vague statements of optimism were not

25  actionable without facts showing that the company "had encountered any

26  insurmountable problems, or the problems were of such magnitude that Defendants

27  knew the projected release dates to be unrealistic, or any other fact that would

28  undermine the tentative and vague nature of these statements."  999 F. Supp. at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

25

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1348.  As noted, Plaintiffs fail to make such a showing.

**IV.    THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE BECAUSE THEY ARE FORWARD-LOOKING AND PLAINTIFFS DO NOT PLEAD THE REQUIRED SCIENTER, WHICH IS ACTUAL KNOWLEDGE OF FALSITY**

Even if Defendants had promised to put webOS on PCs and printers in 2011 – which they did not – and even if Plaintiffs adequately alleged facts showing any such promise was false when made – which they do not – the FAC should still be dismissed because Plaintiffs do not adequately allege that any such statement was *knowingly* false.

Under the PSLRA, for *each* forward-looking statement that Plaintiffs challenge – regardless of whether the statement is identified as forward-looking or accompanied by meaningful cautionary language – Plaintiffs must plead particularized facts showing Defendants had *actual knowledge* that the statement was false when made.  *Cutera*, 610 F.3d at 1112-13.  Plaintiffs do not dispute that this is the correct legal standard.  Instead, they seek to avoid its impact.

**A.    Plaintiffs' Claims Are Based On Forward-Looking Statements**

Plaintiffs argue that certain challenged statements are not forward-looking because they purportedly convey information about the present.  Opp. at 11-12.  As an initial matter, such an argument cannot apply to the statements about the timing for putting webOS on PCs and printers. Those comments unquestionably relate to future events.  Given that Plaintiffs portray those statements as their "core allegation," forward-looking statements plainly are at issue in this case.

Plaintiffs' contention that the other statements are not forward-looking is meritless because the statements' truth or falsity can only be determined at some time *after* the statements were made.  Indeed, present-tense, or even historical, statements can qualify as forward-looking "as long as the truth or falsity of the statement cannot be discerned until some point in time after the statement is made."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

26

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001); *see also In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1046 (N.D. Cal. 2007) (observing that historical statements can qualify as forward-looking if they are "presented as factors underlying a projection or economic forecast").

Thus, although Plaintiffs attack various aspirational statements of commitment – such as "[w]e're committed to helping build this ecosystem, from small to big, from local to global," ¶117; "HP is committed and continues to be committed to develop the full potential of webOS in the marketplace. . . . We're investing in the build out of this ecosystem, from small to big," ¶139; and "[d]evelopment teams across HP are working to bring webOS and the webOS experience to the Windows PCs," *id.*; as well as statements "regarding 'HP's intent to . . . create one [webOS] ecosystem,'" Opp. at 12 – those statements qualify as forward-looking regardless of their use of present-tense terms. *In re Dot Hill Sys. Corp. Sec. Litig.*, No. 06-CV-228, 2009 WL 734296, at *13 (S.D. Cal. Mar. 18, 2009) (finding to be forward-looking a company's statements concerning its commitment and plans to make its business relationship with another company successful); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1007 (N.D. Cal. 2008) (finding to be forward-looking statement that the company is "'preparing our commercial operations for the introduction' of Velac"); *In re Discovery Labs. Sec. Litig.*, No. 06-1820, 2006 WL 3227767, at *4, *7, *16 (E.D. Pa. Nov. 1, 2006) (finding to be forward-looking statements that "[o]ur organization *is committed* to the anticipated commercial launch of our first precision-engineered surfactant product in the first quarter of 2006" and the company "*is focusing* on preparing for the commercialization of Surfaxin . . . if approved"); *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 949 (C.D. Cal. 2003) ("[P]redictions of future events [do not] become actionable merely because they happen to have some basis in present facts."); *see also In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

27

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1080, 1090-91 (C.D. Cal. 2003).  Plaintiffs' "purely grammatical argument to the contrary . . . is unpersuasive."  *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999).  Nor can there be any doubt that these statements constitute "plans and objectives of management for future operations," which qualify for safe harbor protection.  15 U.S.C. § 78u-5(i)(1)(B).

Plaintiffs' reliance on *America West* is unavailing.  Opp. at 12.  There, the court found that alleged misstatements were not forward-looking because they concerned the "present effects" of a settlement on the company.  *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936-37 (9th Cir. 2003) ("Each is a disclosure of the fine imposed by the settlement agreement for past violations of FAA regulations and a description of the present effects of their imposition on the company.").  By contrast, the statements at issue here concerning "HP's intent to . . . create one [webOS] ecosystem" that would result in a "huge market," *see, e.g.*, ¶¶139, 143, 147, 153, 157, 161-63, 168, 173-74, 177, refer to HP's plans and hoped-for future performance, ***not*** any present effects on the Company.  Such statements fall squarely within the boundaries contemplated by the PSLRA's safe harbor.  *See, e.g.*, *Wozniak*, 2012 WL 368366, at *7 (finding statements concerning the company's product development goals, including "'extending the GP-focused ClinAdvisor product features and functionality,'" to be forward-looking); *In re Tibco Software, Inc.*, No. C 05-2146, 2006 WL 1469654, at *26 (N.D. Cal. May 25, 2006) (finding the statement that the company's opportunity to "bring Staffware to North America was 'huge'" was forward-looking).

**B.**      **Plaintiffs Fail To Plead Actual Knowledge, Which Is The Requisite Scienter**

The FAC should be dismissed because it fails adequately to allege actual

Morgan, Lewis & Bockius LLP
Attorneys at Law
Irvine

knowledge of falsity.[11]   None of the arguments offered in the Opposition saves Plaintiffs' claims.  Indeed, Plaintiffs acknowledge that Defendants lacked actual knowledge of falsity when they contend that "[w]hen it became apparent that reality could not catch up to their false pronouncements, Defendants were forced to disclose the truth."  Opp. at 41 n. 17.  If the "reality" was not "apparent" until the "truth" was disclosed on August 18, 2011, then the prior statements were not made with actual knowledge of falsity.

Even without this concession, Plaintiffs' position still fails.  First, Plaintiffs' reliance on their CWs to demonstrate scienter, Opp. at 38-39, ignores the fundamental problem that, even crediting everything the CWs allege, *not one* of them provides facts showing that *any* Individual Defendant – executives with oversight responsibility – was told that webOS problems were insurmountable, that TouchPad problems could not be overcome, or that webOS would not be available on PCs or printers in a timely fashion.   For example, although the Opposition suggests that this Court can somehow infer scienter from CW1's allegations that he met with Mr. Bradley "twice a day," leading up to the February 9 event, Opp. at 38, 44, Plaintiffs never point to specific allegations in the FAC that demonstrate that Mr. Bradley ever said or did anything at those meetings evincing a belief that his statements were false at the time they were made.  Nor does CW1 identify anything Mr. Bradley was supposedly told at these meetings that rendered his statements false when made.  Rather, CW1 merely suggests that developers had encountered technical "bugs" with the TouchPad and webOS software.  *Id.* at 25-26, 32.  Even if true, the existence of such "bugs" in February is hardly inconsistent with a belief

---

[11]  Although Plaintiffs mention the recklessness standard for scienter in a few places in their Opposition, Opp. at 3, 37, 38, 41 n.17, 48, it is always noted simply as an alternative to knowing conduct, and Plaintiffs never attempt to demonstrate how the facts on which they rely for scienter could show recklessness if they did not show actual knowledge.  To the extent Plaintiffs are contending recklessness applies, their argument fails for the same reasons they do not show actual knowledge.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

29

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

that HP could introduce webOS-based PCs by the end of 2011 or ultimately succeed in its long-term strategy. *Siebel*, 2005 WL 3555718, at *4 (plaintiffs failed to "allege any specific facts that give rise to a strong inference that the defendants . . . knew there were problems of such magnitude that it would make their positive statements false"); *NVE Corp.*, 551 F. Supp. 2d at 884 ("Knowledge that there were some obstacles to development that SMS was working to resolve or that engineers experienced frustration is not sufficient to show knowledge of falsity."). Plaintiffs have no cogent response to this and other arguments noting the deficiencies in the CW allegations. Therefore, because the CW statements in the FAC fail to demonstrate that Defendants actually knew their statements to be false at the time they were made, the CW allegations do not add to an inference of scienter. *Zucco*, 552 F.3d at 1000-01.

Second, Plaintiffs attempt to show actual knowledge as to undefined "late – class period" statements merely based on temporal arguments. Opp. at 39-40. Because this argument applies only to the "late-class period" statements, it is irrelevant to the February and March 2011 statements about timing for putting webOS on PCs and printers. Moreover, even as to "late-class period" statements (whatever that means), temporal proximity alone is not enough. *Ronconi*, 253 F.3d at 437 (temporal proximity of the allegedly fraudulent statement or omission to the later disclosure, without more, is insufficient to comply with the PSLRA); *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) ("We therefore conclude that because the complaint's remaining allegations do not comport with the requirements of Rule 9(b), the temporal proximity of the statements [] and the August 8th disclosure, in and of itself, is insufficient."); *In re Foundry Networks, Inc. Sec. Litig.*, No. C 00-4823, 2003 WL 22077729, at *13 (N.D. Cal. Aug. 29, 2003) (even assuming two-month separation of events is "proximate," such proximity can only be used to "bolster" the complaint; proximity alone "is not sufficient to satisfy the requirements of the PSLRA"). Moreover, the FAC itself

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

30

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

completely refutes Plaintiffs' temporal proximity argument as to Mr. Bradley when it cites to and explicitly relies upon an article stating that Mr. Bradley *did not learn of the decision to discontinue webOS until August 14, 2011 – long after his last challenged statement.* ¶93; Bagosy Decl. Ex. 1; Supp. RJN.  The article demonstrates that any inference to be drawn based on temporal proximity is unwarranted and far less compelling than the competing inference that Mr. Bradley did not know the statement was false when made.

Third, Plaintiffs argue that HP's costs related to the shutdown of webOS support a strong inference of scienter.  Opp. at 41-42.  In support, Plaintiffs cite to decisions where courts inferred scienter based on the magnitude of a restatement of past financials, not a situation (like this one) in which the costs resulted from a company's later discontinuation of a product or other unexpected business expenses.  These two factual scenarios are not comparable for purposes of inferring a strong inference of scienter.  The restatement cases on which Plaintiffs rely presume that the costs that were not disclosed initially and resulted in the financial restatement must have existed at some earlier time.  *Id*.  The same presumption does not apply where a decision to discontinue a line of business causes losses.  Further, the opinions cited by Plaintiffs all note that an announced financial restatement, in combination with allegations of insider trading or other claims of motive, was sufficient to infer scienter.  *Id*.  Here, Plaintiffs fail to identify a motive with respect to any Defendant that would support a strong inference of scienter based solely on the significant costs HP incurred when it decided to forego webOS development.  It simply cannot be the case that later losses suffered from a failed business decision (no matter how large) can suffice to establish that Defendants knew their statements about that business were false when made.

Fourth, lacking any other basis for scienter, Plaintiffs argue that the Defendants must have known about problems with webOS based on the core operations inference.  Opp. at 42-45.  This argument fails because, as this Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

31

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   recently recognized, attempts to infer scienter based on the core operations

2   inference must be "'made in conjunction with detailed and specific allegations

3   about management's exposure to [such] information.'" *Morris v. Smith Micro*

4   *Software*, No. SACV 11-976 AG (ANx), slip op. at 10 (C.D. Cal. May 21, 2012),

5   attached to Bagosy Decl. as Ex. 2; *see also Maiman v. Talbott*, No. SACV 09-0012,

6   2010 U.S. Dist. LEXIS 142712, at *16-17 (C.D. Cal. Aug. 9, 2010) (core

7   operations inference available only where facts about management's role and the

8   importance of the information were pled "in conjunction with ***detailed and specific***

9   ***allegations about management's exposure to factual information*** within the

10  company."). In *Morris*, this Court rejected an attempt to infer scienter because the

11  individual defendants played an active role in running the company and the

12  information allegedly misrepresented was "'crucial to [the company's] operations

13  and financial condition.'" *Morris,* slip op. at 10. Where plaintiffs did not explain

14  how the facts they alleged would show knowledge of the problems or plead with

15  particularity any discussions, such as who conducted them or what was disclosed,

16  this Court declined to infer scienter, finding that the inferences sought by plaintiffs

17  were "a bridge too far." *Id.*

18          The same analysis should apply here. As noted, the FAC lacks facts that

19  would show what each Individual Defendant supposedly knew about problems with

20  webOS. *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008),

21  on which Plaintiffs rely, Opp. at 43, is inapposite due to the lack of particularized

22  facts. In *South Ferry*, *S. Ferry*, 542 F.3d at 785, n.3 (9th Cir. 2008).the Ninth

23  Circuit distinguished *Berson* as one of the "exceedingly rare" instances where the

24  core operations inference applied, because the stop work orders from the

25  company's largest customer would have been obvious to the individuals running

26  the day to day operations.   The court noted that "[t]he first stop work order 'halted

27  between \$10 and \$15 million of work on the company's largest contract with one of

28  its most important customers,' and the second halted \$8 million of work," curtailing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

32

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

the source of 80% of the company's revenues. *Id.*  There are no similar allegations here. *Plumbers Union Local No. 12 Pension Fund v. Ambassadors Group*, 717 F. Supp. 2d 1170 (E.D. Wash. 2010) is also distinguishable because it involved a small company where management had to be aware of the loss of a list that accounted for 45% of its marketing leads.

Additionally, Plaintiffs' acknowledgement that "HP is among the world's largest information technology companies, with operations in more than 170 countries" ¶34, that "PSG was the largest of HP's business segments by revenue, generating nearly $40 billion annually," ¶3, and that the webOS GBU was but one division of many within the PSG business unit, ¶45, seriously undermines Plaintiffs' core operations theory.  These allegations of PSG's sheer size would tend to suggest that Defendants would be unlikely to know the details of webOS development.  Moreover, as to Mr. Bradley, the core operations inference is completely undercut by Plaintiffs' reliance on an August 19, 2011 news article stating that Mr. Bradley did not learn of the plans to discontinue webOS until a few days prior to the August 18, 2011 announcement.  ¶93.

Fifth, Plaintiffs briefly assert that Mr. Apotheker's termination on September 22, 2011, more than a month after HP announced its decision to discontinue webOS, supports a strong inference of scienter.  Opp. at 45.  Where, however, "there is no evidence that [a] defendant['s] termination was based on fraud," a termination is "not in and of [itself] evidence of scienter.  Most major stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions."  *In re Cornerstone Propane Partners, L.P., Sec. Litig.,* 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005); *see also In re Immersion Corp. Sec. Litig.*, No. C 09-4073, 2011 WL 6303389, at *8 (N.D. Cal. Dec. 16, 2011).  Indeed, those cases cited by Plaintiffs to support an inference of scienter based on senior executives leaving included allegations suggesting that the departures were "highly suspicious" or were coupled with other

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

33

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

highly suspicious facts.[12]  Contrary to Plaintiffs' cited decisions, the FAC here lacks similar allegations showing that Mr. Apotheker's termination was somehow related to alleged fraudulent conduct, and thus his termination alone cannot support a strong inference of scienter.

Lastly, Plaintiffs mischaracterize Defendants' position as one based solely on the introduction of the iPad 2 in an attempt to avoid the conclusion that the FAC states only a claim for fraud by hindsight.  Opp. at 45-46.  This distortion does not change the fundamental nature of Plaintiffs' allegations: namely, that because HP's webOS devices did not succeed, Defendants' earlier optimistic statements about those devices and webOS in general must have been knowingly false.  This is "a classic example of pleading fraud by hindsight – a type of pleading that the [PSLRA] was specifically enacted to eliminate."  *In re Silicon Storage Tech., Inc.*, No. C 05-0295, 2006 WL 648683, at *7 (N.D. Cal. Mar. 10, 2006), .  Thus, Plaintiffs' own allegations, not Defendants' reference to the iPad 2 release, provide the basis for the fraud by hindsight "defense."  Opp. at 45-46.

Accordingly, because Plaintiffs do not plead facts showing actual knowledge of falsity, the FAC should be dismissed.

---

[12] *See, e.g.*, *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 065-6863, 2008 WL 7084629, at *9 (C.D. Cal. July 10, 2008) (company's former CFO refused to cooperate with a Special Committee investigation into the same events that formed the basis of the complaint); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) (noting additional highly suspicious and unusual facts, including the resignations of executives that "although not sufficient in and of themselves" added to a finding of scienter); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000) (company announced that executives were dismissed "for cause" and were criticized by the new chairman for participation in "improprieties" and that company executives publicly linked these firings to the alleged underlying fraud).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

34

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

**V.      THE COMPETING INFERENCE THAT DEFENDANTS BELIEVED IN WEBOS AND WORKED TO DEVELOP IT BUT MADE A BUSINESS DECISION BASED ON MARKET FORCES IS MORE "COGENT AND COMPELLING" THAN PLAINTIFFS' IMPLAUSIBLE THEORY**

The Supreme Court has instructed that "to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs,* 551 U.S. at 314.   Thus, Plaintiffs are wrong to insist that this Court should not evaluate the rationality of their theory of liability.  Opp. at 3, 41 n.17.  The Supreme Court requires just that.

Plaintiffs also contend that this Court must draw only inferences in favor of their position.  To the contrary, under *Tellabs*, in assessing scienter "'the court must consider all reasonable inferences to be drawn from the allegations, ***including inferences unfavorable to the plaintiffs***.'"  *Metzler*, 540 F.3d at 1061; *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002) ("To accept plaintiffs' argument that the court is required to consider only inferences favorable to their position would be to eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum.").

Here, Plaintiffs' underlying theory is irrational.  Having conceded that HP was committed at least to the TouchPad, which was released to the market, Opp. at 24, they now argue that HP knowingly misled the market about the timing of putting webOS on PCs and printers in order to gain a competitive advantage.  That theory makes no sense.  Plaintiffs fail to identify any competitive advantage that could be gained, and any such advantage would at most have lasted but a few months until HP failed to meet the announced timetable.  *In re Citrix Sys., Inc. Sec. Litig.*, No. 00-6796, 2001 U.S. Dist. LEXIS 25351, at *12 (S.D. Fla. Sept. 28,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

35

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

2001) ("[A]llegations of misleading statements or omissions that lead to temporary inflation of stock price that run contrary to a defendant's 'informed economic self-interest,' have been held insufficient for scienter, even prior to the PSLRA."); *In re CDnow, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 642-43 (E.D. Pa. 2001) (rejecting as implausible plaintiff's scienter theory that defendants concealed the company's true financial condition in order to artificially inflate stock prices over a class period of less than two months; "a plaintiff must show concrete benefits that could be realized as a result of a defendant's deceptive practices").  "Absent some significant factual averment to the contrary, it is not reasonable to think that the defendants intentionally launched [the TouchPad] with what they recognized was a flawed [ecosystem], as if they were more interested in fooling the stock market in the short term than succeeding in the product market in the long run." *In re Praecis Pharm., Inc. Sec. Litig.*, No. 04-12581, 2007 WL 951695, at *12 (D. Mass. Mar. 28, 2007).

The only reasonable inference here is that HP had high hopes for the TouchPad until it learned post-release that it could not compete with the iPad 2. Only at that point did the Company decide to forego webOS and webOS products rather than continue to take on losses.

## VI.   FURTHER ARGUMENTS DEMONSTRATE THAT PLAINTIFFS FAIL ADEQUATELY TO PLEAD SCIENTER AS TO ANY OF THE INDIVIDUAL DEFENDANTS

Plaintiffs' attempt to satisfy their burden to plead specific facts to create a strong inference of scienter against all the Individual Defendants fails for the reasons set forth above.  But, as described below, certain flaws as to each Individual Defendant warrant particular emphasis.

### A.   There Is No Strong Inference Of Scienter As To Ms. Lesjak

Plaintiffs' failure to address a single scienter argument raised by Ms. Lesjak is telling.  They do not respond to the points – and therefore implicitly concede – that: (1) none of the CWs worked with Ms. Lesjak or can provide any insight into

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

36

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

her contemporaneous mental state; (2) the FAC provides no reason why Ms. Lesjak would have made the challenged statements had she known them to be false; and (3) from her perspective as CFO, HP had demonstrated its financial commitment to webOS.  Ind. Br. at 43-44.

Of the five scienter arguments offered by Plaintiffs, Opp. at 38, only two (Nos. 3 & 4) even arguably apply to Ms. Lesjak, and both of these fail because they rely upon an inapposite core operations inference.  And as each of Ms. Lesjak's statements was forward-looking (Plaintiffs do not even dispute this fact as to Ms. Lesjak's February statements), Plaintiffs bear the burden of showing she had "actual knowledge" that they were false.  *Id.* at 40.  Plaintiffs argue that the FAC contains the requisite "specific allegations" that Ms. Lesjak had "access to the disputed information that webOS . . . was not working."  *Id.* at 42-43.

But in fact the FAC does not reference a single internal report or email discussing development problems alleged to have been shown to Ms. Lesjak, and no CW is alleged to have had a single conversation with her.  *Id.* at 43.  The only specific allegation Plaintiffs reference with respect to Ms. Lesjak is CW3's claim that she attended a single meeting at which webOS was discussed.  Opp. at 45 citing ¶82.  Plaintiffs ignore, however, that the FAC contains no allegation that any problems with webOS were discussed at that meeting or that any deadline could not be met.  Ind. Br. at 41.  Unlike in *Maiman*, therefore, Plaintiffs lack "detailed and specific" allegations that Ms. Lesjak was "exposed to 'factual information within the company' contradicting Defendants' misleading statements'" or that Ms. Lesjak "played an active role in running" webOS.  *Maiman*, 2010 U.S. Dist. LEXIS 142712, at *17.

Plaintiffs cannot overcome these deficiencies by referencing Ms. Lesjak's remarks regarding "monitoring."  Opp. at 44 citing ¶108.  As even a perfunctory analysis reveals, the May 17 statement that "we actively monitor and evaluate all investments against key milestones" was not directed to webOS, and her August 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

37

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    statement referred to monitoring the financial performance of new products, not

2    their development.  Ind. Br. at 42-43.  Again, Plaintiffs fail to address these

3    arguments.  Since Ms. Lesjak never claimed that she was "involved in every detail

4    of the company" or that she personally monitored the data that were the subject of

5    the allegedly false statements about webOS, *In re Daou Systems, Inc.,* 411 F.3d

6    1006, 1022 (9th Cir. 2005) and *Nursing Home Pension Fund, Local 144 v. Oracle*

7    *Corp.,* 380 F.3d 1226, 1234 (9th Cir. 2004), are inapposite.  Opp. at 44.  Moreover,

8    unlike *Daou* and *Oracle*, this is not an accounting fraud case, and thus there is no

9    reason to assume a CFO's knowledge.  Ind. Br at 43; *In re Cadence Design Sys.,*

10    *Inc., Sec. Litig.,* 654 F. Supp. 2d 1037, 1048 (N.D. Cal. 2009) (inference not

11    applicable where complaint did not show defendant "was deeply involved in the

12    details").

13         Nor have Plaintiffs addressed their failure to show that the purported

14    problems with webOS were "of such prominence that it would be 'absurd'" to

15    suggest that HP's CFO was unaware of them.  *Zucco,* 552 F.3d at 1000.[13]  Plaintiffs

16    curiously cite to the Ninth Circuit's decisions in *Zucco* and *Glazer Capital* in

17    support of their argument, Opp. at 43, but these cases demonstrate precisely why

18    the core operations inference is not applicable to Ms. Lesjak.  In *Glazer Capital,* the

19    Ninth Circuit found that the core operations inference was inapplicable because it

20    "would not be 'absurd to suggest' that [the CEO] was unaware of the details of

21    payments made through foreign sales agents in Asia." *Glazer Capital Mgmt., L.P.*

22    *v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008).  Similarly, in *Zucco,* the core

23    

─────────────────────────────

24    [13]  Plaintiffs suggest that Ms. Lesjak would have been aware of the webOS issues
because of the billions spent to acquire Palm and ultimately written off relating to

25    webOS.  Opp. at 42-44.  The issue is not, however, whether Ms. Lesjak was aware
of webOS and its subsequent failure.  The issue is whether she believed HP was

26    committed to webOS at the time of her challenged statements.  Notably, a large part
of the write-down was due to expenses HP was pre-obligated to pay to suppliers,

27    which actually demonstrated HP's commitment to webOS.  Ind. Br. at 43.

28    

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

38                    CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    operations inference could not be applied because:

2         There is no indication that the differences between the 'preliminary

3         project' stage, the 'application development' stage, and the 'post-

4         implementation' stage of a software project would be operationally

5         visible to executives not  intimately connected with the development

6         process. . . .

7    552 F.3d at 1001.

8         The same is true here.  Ms. Lesjak was not "intimately connected with the

9    [webOS] development process."  *Id.*  She does not have a technical background.

10   There is no indication that the purported issues with webOS would have been

11   visible to Ms. Lesjak as CFO or that she would have realized that any such issues

12   were serious enough that her statements about HP's intentions for webOS were

13   false.  *See, e.g.*, *Berson,* 527 F.3d at 989 ("Where defendants make cheerful

14   predictions that do not come to pass, plaintiffs may not argue, based only on

15   defendants' prominent positions in the company, that they ought to have known

16   better.").

17        **B.      There Is No Strong Inference Of Scienter As To Mr. Apotheker**

18        As explained in the moving papers, Ind. Br. at 10-16, the allegations against

19   Mr. Apotheker fail to raise an inference of scienter anywhere close to as compelling

20   as the innocent contrary inference.  Mr. Apotheker's statements that the TouchPad

21   and webOS were outstanding products do not support an inference of scienter

22   because they are based entirely on the unreliable or implausible statements of CWs

23   and because the timing of the allegations does not demonstrate his knowledge of

24   their purported falsity.  Ind. Br. at 11-12.

25        Mr. Apotheker's statements about HP's commitment to webOS lead nowhere

26   for Plaintiffs either.  For example, as explained, the statement that Mr. Apotheker

27   would "shut down" the TouchPad if it was not working by the end of the year

28   makes more sense, in the context of an impending release of the iPad 2, as a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

39                     CASE NO. SACV11-01404 AG (RNBX)
                       OMNIBUS REPLY ISO MTNS TO DISMISS

motivational speech to employees than a sinister plot to defraud investors. Ind. Br. at 12-13.  Further, to the extent the CW's report of this statement can even be credited given the unreliability of the source, it is clearly described by the FAC as relating to the TouchPad, not webOS generally.  Given that Plaintiffs have now all but abandoned their TouchPad allegations, this comment simply has no relevance to, much less supports a compelling inference of, scienter with regard to statements about the overall future of webOS.  And his statements about the release of webOS on printers and PCs (including the "beta version" quote) cannot support an inference of scienter in light of the fact that Mr. Apotheker ultimately made clear that he expected no release before 2012 and that HP *did* have teams working to develop these products.  Ind. Br. at 13-15.

Importantly, Mr. Apotheker is not alleged to have received *any* personal or financial benefit from his purported wrongdoing.  In this context, the innocent inference of a business decision that failed to pan out rings far more true.  Whether or not "motive" is a strict requirement for demonstrating scienter under the PSLRA, Opp. at 38 n.15, the utter absence of a plausible story regarding why Mr. Apotheker would act with any intent to defraud leads to the inexorable conclusion that the only fair and logical inference is the innocent one.

### C.    There Is No Strong Inference Of Scienter As To Mr. Bradley

The moving papers, Ind. Br. at 29-30, challenged Plaintiffs to demonstrate why the relevant facts, considered in their entirety, support a cogent inference of fraud as to Mr. Bradley – let alone one as compelling as any opposing inference. *Tellabs*, 551 U.S. at 325-26; *Zucco*, 552 F.3d at 991-92.  The Opposition makes clear that Plaintiffs cannot meet that challenge.

As discussed above, *see* § III(D), *supra*, Plaintiffs are unable to show that the CWs have information demonstrating that Mr. Bradley knew that any of his statements were false when made. *Zucco*, 552 F.3d at 995.  Similarly, Plaintiffs' "temporal proximity" argument – designed to show that Mr. Bradley must have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

40

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1  known at the time of his July 2011 statements that HP was planning to discontinue

2  webOS, Opp. at 40-42 – is nothing but impermissible "fraud by hindsight"

3  unsupported by particularized facts, witnesses or documents.  *Ronconi*, 253 F.3d at

4  430, 437.  That conclusion is buttressed by the FAC itself, which relies on (and

5  quotes) an August 19, 2011 news article, ¶93, stating that, "until a few days ago . . .

6  ***Mr. Bradley knew nothing of these plans*** [to discontinue webOS]."  Bagosy Decl.

7  Ex. 1; Supp. RJN.  Thus, Plaintiffs' own pleading permits just one reasonable

8  inference: that Mr. Bradley honestly believed his statements were accurate when

9  made.

10      For the same reasons, Plaintiffs' perfunctory effort to invoke the "core

11  operations" inference as a basis for pleading scienter as to Mr. Bradley, Opp. at 42,

12  is futile.  *See* §IV(B), *supra*.  Not only are Plaintiffs unable to show that the

13  inference is applicable here, the allegations of the FAC – including reliance on the

14  August 19 article – are incompatible with the suggestion that Mr. Bradley "must

15  have known" that problems with webOS were so significant that the project was

16  somehow doomed to failure.  *Zucco*, 552 F.3d at 1001; *Glazer*, 549 F.3d at 746.

17      Additionally, an inference of scienter is further negated where – as here –

18  Mr. Bradley and the other Defendants are not alleged to have profited in any way

19  from the alleged misconduct.  *See, e.g.*, *Downey*, 2009 WL 2767670, at *14; *Tibco*,

20  2006 WL 1469654, at *21.  Tellingly, the Opposition ignores these authorities.  Nor

21  do Plaintiffs ever try to explain why Mr. Bradley would deliberately misrepresent

22  the status of webOS development if he knew (as the FAC suggests) that the truth

23  would inevitably be revealed.  *Cement Masons & Plasterers Joint Pension Trust v.*

24  *Equinix, Inc.,* No. C 11-01016, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012)

25  ("Plaintiffs' allegations of fraud are further undercut by the fact that the FAC does

26  not explain why Defendants would knowingly overstate their forecasts … only to

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

41

1  reveal the truth just ten weeks later.").[14]  Thus, the Opposition confirms that

2  Plaintiffs are unable to plead a strong inference – or, for that matter, even a weak

3  inference – of scienter as to Mr. Bradley.

4  **VII.  THERE CAN BE NO CLAIM BASED ON FORWARD-LOOKING**

5  **STATEMENTS THAT WERE IDENTIFIED AS SUCH AND**

6  **ACCOMPANIED BY MEANINGFUL CAUTIONARY LANGUAGE**

7  Even if Plaintiffs had alleged the existence of a material misrepresentation

8  made with actual knowledge, claims based on a number of challenged statements

9  still should be dismissed under the PSLRA's safe harbor because they were

10  identified as forward-looking and accompanied by meaningful cautionary language.

11  *Impac*, 554 F. Supp. 2d at 1098 citing 15 U.S.C. § 78u-5(c)(1)(A); Ind. Br. at 9, 24-

12  25, 38 (identifying challenged statements made on February 22, 2011, March 14,

13  2011, May 17, 2011 and June 8, 2011 as protected by the first prong of the safe

14  harbor).  As described previously, *see* § IV(A), *supra*, all of the challenged

15  statements are forward-looking.  Thus, the safe harbor applies to Defendants'

16  statements.  Plaintiffs seek to avoid this result by arguing that Defendants had

17  actual knowledge of falsity and that the challenged statements were neither

18  identified as forward-looking nor accompanied by meaningful cautionary language.

19  Contrary to Plaintiffs' assertion, Opp. at 15, "[t]he defendants' state of mind

20

21  _____

   [14]  Plaintiffs hypothesize that perhaps Defendants were motivated to make false

22  statements in order to "compete in the rapidly growing market for mobile, web-
   connected devices."  Opp. at 41 n.17.  Such speculation, offered without supporting

23  factual allegations, does not begin to meet Plaintiffs' burden under the PSLRA and
   *Tellabs*.  *See, e.g., In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

24  1155 (C.D. Cal. 2007).  In any event, it does not explain why Defendants would
   make false statements if they knew the truth would inevitably be revealed.  *Equinix*,

25  2012 WL 685344, at *8.  Interestingly, though, Plaintiffs pile on more speculation:
   they muse that perhaps Defendants disclosed the "truth" only after "it became

26  apparent that reality could not catch up to their false pronouncements."  Opp. at 41
   n.17.  Putting aside the absence of supporting facts, Plaintiffs' own conjecture

27  would actually ***eviscerate*** any claim that Defendants knew prior to August 2011
   that HP could not successfully develop webOS.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

42

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    is not relevant" to the first prong of the safe harbor, which examines only whether

2    forward-looking statements were identified as such and accompanied by

3    meaningful cautionary language. *Cutera*, 610 F.3d at 1113.

4           The contention that although the statements were forward-looking, they were

5    somehow not identified as such, Opp. at 13-14, is only directed toward the

6    statements on March 14, 2011 and May 17, 2011 (thus implicitly conceding that the

7    statements made on February 22, 2011 and June 8, 2011 were sufficiently

8    identified).  In any event, the argument is without merit.  The Opposition admits

9    that listeners were expressly advised at the outset of the March 14 Summit that Mr.

10    Apotheker's and Mr. Bradley's comments might include "forward looking

11    information that involves risk, uncertainties and assumptions" and that listeners

12    were directed to HP's March 11, 2011 10-Q for a discussion of relevant risks.

13    Plaintiffs insist, however, that the admonition was too "generic."  Opp. at 14.

14    Similarly, Plaintiffs admit that at the outset of the May 17 call, Defendants

15    provided investors with a similar warning that the "call may include forward-

16    looking statements."  Opp. at 13.  But Plaintiffs apparently contend this warning

17    was "boilerplate" as well.  Tellingly, Plaintiffs cite no statutory or case authority for

18    that proposition, and for good reason: there is none.  The statute merely provides

19    that statements be "identified as . . . forward-looking," without imposing any

20    further itemization or specification requirement.  15 U.S.C. § 78u-5(c)(1)(A)(i).

21    Indeed, courts apply the safe harbor where statements are "identified" in just this

22    way.  *See, e.g., Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust Fund v.*

23    *Clorox Co.*, 353 F.3d 1125, 1132-33 (9th Cir. 2004); *Desai v. Gen. Growth Props.,*

24    *Inc.*, 654 F. Supp. 2d 836, 846 (N.D. Ill. 2009); *Beaver Cnty.*, 2009 WL 806714, at

25    *11; *In re Copper Mountain Sec. Litig.,* 311 F. Supp. 2d 857, 880-81 (N.D. Cal.

26    2004).

27           Equally fruitless is Plaintiffs' contention that the cautionary language in the

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

43

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1    10-Qs and the May 17 call was not "meaningful." Opp. at 15-16.[15]  The Opposition

2    does not address the actual risk disclosures (indeed, it does not even identify any

3    relevant language from the May 17 call at all),[16] let alone demonstrate the

4    disclosures "'lacked meaning' or were not 'specific' enough." *Tibco*, 2006 WL

5    1469654, at *27.  Instead, Plaintiffs do little more than mention a few snippets of

6    the cautionary language before labeling it "boilerplate" without any supporting

7    analysis.  *Cutera*, 610 F.3d at 1112 (plaintiff may not rely on a "conclusory

8    allegation" that disclosures were not meaningful).  In fact, HP, among other things:

9    described specific risks related to the Palm business unit; warned of "quality or

10   other defects [that] may not be supported adequately by application software"; and

11   explained the possibility of "defects in . . . engineering, design and manufacturing."

12   Ind. Br. at 38-39.  Plaintiffs' own authority rejects their "cherry-picking" examples

13   of general language while "ignor[ing] a host of more particular cautionary

14   statements." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000

15   WL 1727377, at *11 (N.D. Cal. Sept. 29, 2000) (cited in Opp. at 13).

16       Further, contrary to Plaintiffs' suggestion, Opp. at 14, "the law does not

17   require specification of the particular factor that ultimately renders the forward-

18   looking statement incorrect." *In re Nuvelo, Inc., Sec. Litig.*, No. C 07-4056, 2008

19   WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008).  Rather, the cautionary language

20   must identify important factors of similar significance to those actually realized.

21   *Clorox*, 353 F.3d at 1133; *Equinix,* 2012 WL 685344, at *5; *Copper Mountain*, 311

22   F. Supp. 2d at 882.  As discussed in the moving papers, the detailed risk factors in

23   the March 11 and June 8, 2011 10-Qs and the 2010 10-K (RJN, Ex. 1 at 14, 15, 18

24   27; RJN, Ex. 3 at 113-29; RJN, Ex. 8 at 72-73), more than meet that standard.  Ind.

25
26   [15]  Again, the Opposition does not contend that there were any flaws with the
     cautionary language accompanying the February 22, 2011 statement.

27   [16]  Plaintiffs appear to have conflated the May 17 conference call transcript with the
     March 11 and June 8 10-Qs, identifying only the former but quoting only from the
28   latter.  Opp. at 16.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

44

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1   Br. at 9, 24-25, 38-39.  Accordingly, the safe harbor criteria are satisfied, and it

2   precludes liability for statements on February 22, 2011, March 14, 2011, May 17,

3   2011 and June 8, 2011.

4   **VIII.   THE FAC FAILS TO ALLEGE A SECTION 20(a) CLAIM**

5         Plaintiffs cannot state a Section 20(a) claim against the Individual

6   Defendants because they do not allege an underlying violation of the federal

7   securities laws.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th

8   Cir. 1999); *Pittleman*, 2009 WL 648983, at *4.  In addition, the Section 20(a)

9   claims against Ms. Lesjak and Mr. Bradley fail because Plaintiffs have not

10  demonstrated the necessary control.

11        **A.   Plaintiffs Have Not Shown That Ms. Lesjak Exercised The**

12             **Requisite Control**

13        Plaintiffs' boilerplate allegation regarding Ms. Lesjak's CFO title fails to

14  show that she had "actual power or control" over the aspects of HP's business at

15  issue (webOS), Mr. Apotheker (her boss), Mr. Bradley (who is not in Finance), or

16  thus, the allegedly false statements not directly attributed to her.  Ind. Br. at 44-45.

17  Plaintiffs do not address the several Central District of California cases cited by

18  Ms. Lesjak on this point.  *Id*. citing  *Downey*, 2009 WL 2767670, at *15; *In re

19  Toyota Motor Corp. Sec. Litig.*, No. CV 10-922, 2011 WL 2675395, at *5 (C.D.

20  Cal. July 7, 2011), and *Hansen Natural*, 527 F. Supp. 2d at 1163.  Indeed, other

21  recent cases from around this Circuit hold similarly.[17]

22

23

_____

24  [17]  *See, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C 07-6140, 2011 WL

25  1045120, at *16 (N.D. Cal. Mar. 22, 2011) (dismissing Section 20(a) claims against
    former CFO where supply chain controller's manual adjustments caused errors);

26  *Alberts v. Razor Audio, Inc.*, No. Civ. S-10-1215, 2012 WL 530427, at *6 (E.D.

27  Cal. Feb. 17, 2012) ("Alberts contends that Montgomery was a controlling person
    by virtue of his position as CFO and his relationship with other cross-defendants.

28  Alberts has failed to allege sufficient facts . . .").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

45

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

Instead of addressing this case law, Plaintiffs rely primarily on *Metawave,* 298 F. Supp. 2d 1056.  *Metawave,* however, demonstrates why Plaintiffs' control person claim fails as to Ms. Lesjak.  That court held:  "At the motion to dismiss stage, general allegations concerning an individual defendant's title and responsibilities are sufficient to establish control.  ***However, Liang's titles of President of World Trade and Vice President for Worldwide operations do not establish that Liang had control***."  *Metawave,* 298 F. Supp. 2d at 1091.  The allegations in *Metawave* involved misstatements concerning product demand and revenue recognition, and there was no indication that "Liang's position involved revenue recognition, inventory accounting, or the issuance of Metawave's financial statements."  *Id.*  Analogously, the allegation that Ms. Lesjak serves as HP's CFO fails to establish the requisite control because the FAC focuses not on financial statements, but on statements concerning product development.  The only other case cited by Plaintiffs on this subject – *Petrie v. Electronic Game Card Inc.,* No. SACV 10-00252, 2011 WL 165402 (C.D. Cal. Jan. 12, 2011) – does ***not*** state that a mere allegation of title is sufficient to state a control person claim; in fact, that court explicitly relied upon the fact that the company had "no more than ten employees."  *Id.* at *6; *compare* ¶34 ("HP is among the world's largest information technology companies, with operations in more than 170 countries and $127.2 billion in revenue . . . .").

Finally, Ms. Lesjak's May 17, 2011 statement that "***we*** actively monitor and evaluate all investments against key milestones" does not suggest that ***Ms. Lesjak herself*** "closely monitored the progress of webOS."  Opp. at 48.  Such linguistic alchemy should not be countenanced; "we" does not mean "I," particularly at a firm the size of HP. Moreover, as explained in § VI(A), *supra*, this statement did not even refer to webOS.

At its core, Plaintiffs would find control person liability for Ms. Lesjak based on her title – that is not the law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

46

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

**B.**    <u>**Plaintiffs Have Not Shown That Mr. Bradley Exercised The**</u>
<u>**Requisite Control**</u>

Just as Plaintiffs rely on boilerplate allegations and a title to show control as to Ms. Lesjak, they once again trot out their boilerplate assertions, arguing that Mr. Bradley "exercised actual power and control" over HP through his "position" as Executive Vice President, Personal Systems Group.  Opp. at 47-48.  However, as noted before, such conclusory assertions of Mr. Bradley's position are insufficient to state a claim under Section 20(a).  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).

Likewise, and contrary to Plaintiffs' assertion, the FAC provides no information from confidential witnesses, no documents, and no other particularized facts establishing that Mr. Bradley closely monitored webOS.  Rather, to the extent the FAC sheds any light on that subject, it actually says the opposite.  *See* § VI(C), *supra* (FAC quotes a news source indicating that Mr. Bradley knew nothing of the plans to discontinue webOS until a few days before the announcement was made).  Moreover, the Opposition has no response to Mr. Bradley's argument that the FAC alleges no facts establishing that he had authority over HP's SEC filings, press releases or conference calls, or that he had any ability to direct the activities of Mr. Apotheker or Ms. Lesjak.  Ind. Br. at 31 citing *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008).  Finally, Plaintiffs make no effort to square their conclusory averments of Mr. Bradley's purported control over HP (and the other Defendants) with their explicit reliance on the August 19, 2011 *All Things Digital* article stating that Mr. Bradley did not learn of the plan to discontinue webOS until a few days before the August 18, 2011 announcement.  ¶93; Bagosy Decl. Ex. 1; Supp. RJN.  Needless to say, alleging that Mr. Bradley learned of the decision a few days before its announcement is thoroughly inconsistent with the notion that he controlled or directed the "day-to-day affairs" of HP.  *Paracor*, 96 F.3d at 1163.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

47

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

IX.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motions to dismiss the FAC.

Dated:        July 11, 2012                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Robert E. Gooding, Jr.
ROBERT E. GOODING, JR.
JENNIFER R. BAGOSY
5 Park Plaza, Suite 1750
Irvine, CA  92614

MARC J. SONNENFELD (Admitted *Pro Hac Vice*)
KAREN PIESLAK POHLMANN (Admitted *Pro Hac Vice*)
1701 Market St.
Philadelphia, PA  19103-2921

MONIQUE E. CHO
300 South Grand Avenue
Los Angeles, CA  90071-3132

GIBSON, DUNN & CRUTCHER, LLP
DEAN J. KITCHENS
DANIEL S. FLOYD
DAVID HAN
333 South Grand Avenue
Los Angeles, CA 90071-3197

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

48

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

| | |
|---|---|
| 1 | Dated: July 11, 2012 |
| 2 | |

WILSON SONSINI GOODRICH & ROSATI, P.C.

By  /s/ Steven M. Schatz
STEVEN M. SCHATZ (SBN 118356)
BORIS FELDMAN (SBN 128838)
KATHERINE L. HENDERSON (SBN 242676)
BRIAN DANITZ (SBN 247403)
BRYAN J. KETROSER (SBN 239105)
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300
Fax: (650) 565-5100
E-mail: sschatz@wsgr.com
          bfeldman@wsgr.com
          khenderson@wsgr.com
          bketroser@wsgr.com
          bdanitz@wsgr.com

Attorneys for Defendant
CATHERINE A. LESJAK

Dated: July 11, 2012

MUNGER, TOLLES & OLSON LLP

By  /s/ Gregory J. Weingart
BRAD D. BRIAN (SBN 079001)
GREGORY J. WEINGART (SBN 157997)
LAURA D. SMOLOWE (SBN 263012)
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Tel: 213.683.9100
Fax: 213.593.2971
E-mail: brad.brian@mto.com
          gregory.weingart@mto.com
          laura.smolowe@mto.com

Attorneys for Defendant
LÉO APOTHEKER

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

49

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS

1

Dated: July 11, 2012

FENWICK & WEST LLP

2

3

By /s/ Kevin P. Muck

KEVIN P. MUCK (SBN 120918)
MARIE C. BAFUS (SBN 258417)
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415.875.2384
Fax: 415.281.1350
E-mail: kmuck@fenwick.com
    mbafus@fenwick.com

4

5

6

7

Attorneys for Defendant
R. TODD BRADLEY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

50

CASE NO. SACV11-01404 AG (RNBX)
OMNIBUS REPLY ISO MTNS TO DISMISS